IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIRECTV, LLC, a California limited liability company | ) ) ) | Case No.: 1:15-cv-00104-JMS-TAB |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| VICTOR A. SPINA, JR., WILLIAM SPINA, MARTINSVILLE CORRAL, INC. d/b/a TEXAS CORRAL a/k/a SHELBYVILLE TEXAS CORRAL, | ) ) ) ) ) | |
| Defendants. | ) | |

**ANSWER OF DEFENDANT MARTINSVILLE CORRAL, INC.
TO FIRST AMENDED COMPLAINT,
<u>AFFIRMATIVE DEFENSES AND COUNTERCLAIM</u>**

Defendant MARTINSVILLE CORRAL, INC. ("MCI"), answers the allegations in the Amended Complaint as follows:

1. Plaintiff, DIRECTV, LLC sues VICTOR A. SPINA, a/k/a VICTOR A. SPINA, JR. and WILLIAM SPINA, a/k/a WILLIAM ANTHONY SPINA, JR., Individually, and as officers, directors, shareholders, principals, managers and/or members of MARTINSVILLE CORRAL, INC., d/b/a TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL, and MARTINSVILLE CORRAL, INC., d/b/a TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL, (referred to hereinafter as "Defendants"), and states as follows:

ANSWER: No response required.

2. This lawsuit is brought pursuant to the Cable Communications Policy Act of 1984, 47 U.S.C. § 521, *et seq.* (The "Act"), as an action for declaratory and injunctive relief and damages for the improper receipt, transmission, and exhibition of satellite programming signals in violation of the Act. This Court has jurisdiction of the subject matter to this action under 28 U.S.C. §1331, pursuant to which the United States District Courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

ANSWER: No response required.

3. This Court has personal jurisdiction over the parties in this action. Defendants to this action had or have an agent or agents who had or have independently transacted business in the State of Indiana and certain activities of Defendants giving rise to this action took place in the State of Indiana; more particularly, Defendants' acts of violating federal laws and the proprietary rights of DIRECTV, LLC, as distributor of the satellite programming transmission signals, took place within the State of Indiana. Moreover, upon information and belief, Defendants have their principal place of business within the State of Indiana; thus, this Court has personal jurisdiction over Defendants.

ANSWER: Admitted that MCI is in Indiana; the remaining allegations are denied.

I. **VENUE**

4. Venue is proper in this judicial district under 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claim occurred within Shelby County, which is within the Southern District of Indiana [28 U.S.C. § 94(b)(1)].

ANSWER: Admitted that Shelby County is in the Southern District of Indiana; the remaining allegations are denied.

**II.    PARTIES**

5.      Plaintiff, DIRECTV, LLC (referred to hereinafter as "DIRECTV"), is at all times relevant hereto a limited liability company under the laws of the State of California.  DIRECTV is a major distributor of satellite programming doing business throughout the United States. Through its operations, DIRECTV provides interstate direct broadcast satellite programming to subscribers with specialized satellite receiving equipment who pay for programming via a subscription fee and obtain a programming license from DIRECTV in return for a subscription. The obvious result of a user subscription is that users can then watch programs on their televisions and/or listen to certain high quality audio programs communicated electronically by DIRECTV via satellite (referred to hereinafter as the "Satellite Programming").  DIRECTV holds proprietary rights to the Satellite Programming it transmits and DIRECTV is the owner of and/or a lawfully designated distribution agent for such Satellite Programming.

ANSWER: Admitted that DirecTV offers satellite-based PayTV subscriptions; MCI lacks sufficient knowledge to admit or deny the remaining allegations, so the are therefore denied.

6.      Upon information and belief, TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL is the premises name located at 2103 Intelliplex Drive, Shelbyville, IN 46176 (the "Establishment").

ANSWER: Admitted that a restaurant known as Texas Corral has operated at the address indicated, the remainder of the allegation is denied,

7.      Upon information and belief, Defendants, VICTOR A. SPINA, a/k/a VICTOR A. SPINA, JR. and WILLIIAM SPINA, a/k/a WILLIAM ANTHONY SPINA, JR., are officers, directors, shareholders, principals, managers and/or members of MARTINSVILLE CORRAL, INC., d/b/a TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL, for the premises located at 2103 Intelliplex Drive, Shelbyville, IN 46176.

ANSWER: Admitted that Victor A. Spina, Jr. is a partial owner of MCI; and that restaurant d/b/a Texas Corral exists at the listed address; the remaining allegations are denied.

8. Upon information and belief, Defendant, MARTINSVILLE CORRAL, INC., is a domestic corporation having a principal place of business at 2103 Intelliplex Drive, Shelbyville, IN 46176.

ANSWER: Denied.

9. The Registered Agent for MARTINSVILLE CORRAL, INC. is VICTOR A. SPINA located at 1365 N. Lincoln Hill Road, Martinsville, IN 46151.

ANSWER: Admitted.

10. Upon information and belief, Defendant, MARTINSVILLE CORRAL, INC., d/b/a TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL, is located and doing business at 2103 Intelliplex Drive, Shelbyville, IN 46176, as a commercial establishment.

ANSWER: Admitted.

11. Upon information and belief, Defendant, VICTOR A. SPINA, a/k/a VICTOR A. SPINA, JR., resides at 3300 Clear Creek Boulevard, Martinsville, IN 46151.

ANSWER: Denied.

12. Upon information and belief, Defendant, WILLIAM SPINA, a/k/a WILLIAM ANTHONY SPINA, JR., resides at 1365 Lincoln Hill Road, Martinsville, IN 46151.

ANSWER: Denied that there is a William Spina a/k/a William Anthony Spina, Jr. who resides at 1365 Lincoln Hill Road, Martinsville, IN 46151.

13. Upon information and belief, Defendants, VICTOR A. SPINA, a/k/a VICTOR A. SPINA, JR. and WILLIAM SPINA, a/k/a WILLIAM ANTHONY SPINA, JR., were the individuals with supervisory capacity and control over the activities occurring within the Establishment known as TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL on June 4, 2014.

ANSWER: Due the ambiguity of allegations, MCI is unable to admit or deny them, and therefore denies them.

14. Upon information and belief, Defendants, VICTOR A. SPINA, a/k/a VICTOR A. SPINA, JR., WILLIAM SPINA, a/k/a WILLIAM ANTHONY SPINA, JR. and MARTINSVILLE CORRAL, INC., received a financial benefit from the operations of MARTINSVILLE CORRAL, INC., d/b/a TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL on June 4, 2014.

ANSWER: Due the ambiguity of allegations, MCI is unable to admit or deny them, and therefore denies them.

15. Upon information and belief, Defendants, VICTOR A. SPINA, a/k/a VICTOR A. SPINA, JR. and WILLIAM SPINA, a/k/a WILLIAM ANTHONY SPINA, JR., were the individuals with close control over the internal operating procedures and employment practices of MARTINSVILLE CORRAL, INC., d/b/a TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL on June 4, 2014.

ANSWER: Due the ambiguity of allegations, MCI is unable to admit or deny them, and therefore denies them.

III. **FACTS**

16. DIRECTV incorporates and realleges by reference allegations within paragraphs 1 through 15 of this complaint as if fully set forth herein.

ANSWER: No response needed.

17. By way of further allegation, DIRECTV alleges that to prevent unauthorized entities and persons from viewing its Satellite Programming, DIRECTV encrypts the satellite transmissions. Upon payment of the appropriate subscription or license fees, DIRECTV authorizes and enables the subscriber to unscramble and receive the Satellite Programming.

ANSWER: MCI lacks knowledge of the allegations, and therefore denies them.

18. DIRECTV provides services to homes based on residential rates and to commercial establishments under commercial rates. Because equipment used with DIRECTV services can be moved from residential locations to commercial establishments without DIRECTV's knowledge, owners of commercial establishments wishing to use DIRECTV's programming for their own commercial gain, at the lower residential rates can surreptitiously gain access to DIRECTV programming without proper authorization by subscribing to DIRECTV services under a residential account and then installing/moving the equipment to their businesses and utilizing those services in a commercial environment.

ANSWER: MCI lacks knowledge of the allegations, and therefore denies them.

19. On or about June 4, 2014, Defendants did not have a valid commercial account with DIRECTV at the establishment known as TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL located at 2103 Intelliplex Drive, Shelbyville, IN 46176.

ANSWER: Denied.

20. On or about June 4, 2014, Defendants, without obtaining valid commercial exhibition rights, willfully received and displayed DIRECTV Satellite Programming to the public and for commercial benefit or financial gain, at their commercial establishment, TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL, located at 2103 Intelliplex Drive, Shelbyville, IN 46176. Such Satellite Programming was displayed without authorization from DIRECTV to exhibit in that location.

ANSWER: Denied.

21. Defendants, without entitlement, without prior permission or authorization from DIRECTV, and without having paid DIRECTV for the right to receive, broadcast, use or display DIRECTV's Satellite Programming in the commercial establishment known as TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL, located at 2103 Intelliplex Drive, Shelbyville, IN 46176, have received, assisted in receiving, transmitted, assisted in transmitting, divulged, published and displayed the content and substance of DIRECTV Satellite Programming at such Defendants' place of business, TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL. Without authorization, Defendants displayed and/or published such Satellite Programming to their customers and others. Defendants' conduct violates several federal statutes, including 18 U.S.C. §§2511 and 2512, and 47 U.S.C. §605, and laws of the State of Indiana. Moreover, Defendants' acts were unauthorized, willful, and for purposes of direct or indirect commercial advantage or private financial gain.

ANSWER: Denied.

22. DIRECTV has been damaged by Defendants in that (a) DIRECTV has been denied subscription fees for commercial use of its Satellite Programming; (b) DIRECTV's sales revenues have been reduced through Defendants' unfair competition; and (c) DIRECTV's proprietary rights in the Satellite Programming have been impaired. In addition, Defendants profited and gained commercial advantage from the unauthorized and willful use of DIRECTV's Satellite Programming.

ANSWER: Denied.

23. DIRECTV has been required to retain attorneys to prevent Defendants' wrongful acts and to prosecute this action. Due to Defendants' statutory violations, DIRECTV is entitled to recover the reasonable attorney's fees and expenses incurred in prosecution of this action under federal law.

ANSWER: Denied.

IV. CAUSES OF ACTION

### Count 1 - Damages for Violations of Cable Communications Policy Act
[47 U.S.C. §605(e)(3(C)]

24. DIRECTV realleges the allegations contained in the foregoing paragraphs of this Complaint and incorporates such allegations as if fully set forth herein.

ANSWER: No response required.

25. DIRECTV alleges on information and belief, that Defendants effected unauthorized interception and receipt of Satellite Programming by ordering programming for residential use and subsequently displaying the programming in a commercial establishment for commercial gain without authorization, or by such other means which are unknown to DIRECTV and known only to Defendants.

ANSWER: Denied.

26. Each of the Defendants' acts violates federal law. Defendants, illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception or exhibition of Satellite Programming transmitted by DIRECTV. Moreover, Defendants divulged or published the existence, contents, substance, purport, effect or meaning of such satellite communications. Further, Defendants used such communications for their own benefit or for the benefit of others who were not entitled to such communications. Each of these acts is a practice prohibited by 47 U.S.C. §605(a).

ANSWER: Denied.

27. DIRECTV is a person aggrieved by Defendants' violations of 47 U.S.C. §605 and is authorized to institute this action against Defendants pursuant to 47 U.S.C. §605(e)(3)(A).

ANSWER: Denied.

28. Defendants' violations of 47 U.S.C. §605 have injured DIRECTV's ability to maximize the revenues which it seeks to derive from the Satellite Programming, as DIRECTV has been deprived of the benefit of subscribers to the Satellite Programming. As a further result of such violations, DIRECTV's goodwill and reputation have been usurped by Defendants while Defendants gained and will continue to gain unjust profits and undeserved goodwill. DIRECTV is entitled to costs, reasonable attorney's fees, actual damages suffered and profits obtained by Defendants attributable to their illegal conduct.

ANSWER: Denied.

29. Alternatively, DIRECTV is entitled to statutory damages in an amount not less than $1,000 nor more than $10,000 for each violation of 47 U.S.C. §605(a).

ANSWER: Denied.

30. DIRECTV will further show that Defendants' conduct in violation of 47 U.S.C. §605(a) was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain.

ANSWER: Denied.

31. Due to Defendants' willful conduct, DIRECTV is entitled to statutory damages in an amount not less than $10,000 and up to $100,000 for each willful violation of 47 U.S.C. §605(a).

ANSWER: Denied.

### Count 2 - Damages for Violations of 18 U.S.C. §2511

32. DIRECTV realleges the allegations contained in the foregoing paragraphs of this Complaint and incorporates such allegations as if fully set forth herein.

ANSWER: No response required.

33. For a further cause of action, DIRECTV alleges that Defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV. Defendants further disclosed or endeavored to disclose to others the contents of electronic communications, knowing or having a reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. §2511. Defendants further intentionally used or endeavored to use the contents of electronic communications, knowing or having reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. §2511.

ANSWER: Denied.

34. DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C. §2511.

ANSWER: Denied.

35. Due to Defendants' wrongful conduct, DIRECTV is entitled, under 18 U.S.C. §2520, to the greater of the sum of (1) actual damages suffered by DIRECTV and the profits made by the Defendants as a result of their conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendants acted in violation of 18 U.S.C. §2511.

ANSWER: Denied.

### Count 3 - Civil Conversion

36. DIRECTV realleges the allegations contained in the foregoing paragraphs of this Complaint and incorporates such allegations as if fully set forth herein.

ANSWER: No response required.

37. By virtue of the conduct set forth above, Defendants have unlawfully converted DIRECTV's property for their own commercial use and benefit.

ANSWER: Denied.

38. Such conversion was done intentionally and wrongfully by Defendants to deprive DIRECTV of its proprietary interests, and for Defendants' direct commercial benefit and advantage.

ANSWER: Denied.

39. Due to Defendants' wrongful conversion of DIRECTV Satellite Programming, DIRECTV suffered damages.

ANSWER: Denied.

## V. REQUEST FOR INUNCTIVE RELIEF

40. DIRECTV realleges the allegations contained in the foregoing paragraphs of this Complaint and incorporates such allegations as if fully set forth herein.

ANSWER: No response required.

41. DIRECTV further alleges that unless restrained by this Court, Defendants will continue to receive, intercept, transmit, and exhibit its Satellite Programming, illegally and without authorization, in violation of 47 U.S.C. §605.

ANSWER: Denied.

42. The violations of 47 U.S.C. §605 set forth above have caused and will continue to cause DIRECTV irreparable harm.

ANSWER: Denied.

43. DIRECTV cannot practicably determine the loss of subscribers and lost revenues resulting from Defendants' unlawful conduct. In addition to diminishing DIRECTV's revenues, Defendants' unlawful conduct injures DIRECTV's reputation and goodwill as well as its ability to attract and finance the future acquisition, production, and distribution of quality programming, thereby impairing DIRECTV's ability to enhance its future growth and profitability.

ANSWER: Denied.

44. DIRECTV has no adequate remedy at law to redress the violations set forth above.

ANSWER: Denied.

## VI. AFFIRMATIVE DEFENSES

### First Affirmative Defense – Accord and Satisfaction

DirecTV received subscription fees for all electronic communications it alleges to have been intercepted.

### Second Affirmative Defense - Estoppel

DirecTV is estopped from asserting its claims because it installed, activated its equipment, and accepted subscription payments therefor. MCI reasonably relied on these actions to its detriment by retaining the DirecTV system and subscription.

### Third Affirmative Defense - Third

DirecTV has known about the reception of DirecTV signals at the Texas Corral restaurant in Shelbyville since 2011. DirecTV's delay in filing this suit was inexcusable and has prejudiced MCI, in part because the damages DirecTV seeks are based on a "per day" basis, and because MCI's access to witness Craig Spencer has been impaired as he has moved out of State.

### Fourth Affirmative Defense - License

DirecTV authorized the reception of its DirecTV signals that it now claims to have been intercepted by granting Defendants access thereto as evidenced by DirecTV's installation and activation of the DirecTV systems, and its continuous receipt of subscription fees therefore.

### Fifth Affirmative Defense - Payment

By receiving subscription fees for DirecTV subscriptions, DirecTV has received payment for all activities of MCI that the Complaint alleges to be actionable by DirecTV.

### Sixth Affirmative Defense – Statue of Limitations

DirecTV's claims are barred by the statute of limitations.

**Seventh Affirmative Defense – Waiver**

To the extent DirecTV has had any right to assert its claims, it waived those rights because it knew of them at least as early as when it installed its system in the Texas Corral restaurant. DirecTV intended to relinquish or surrender its claims as evidenced by its acceptance of subscription fees related to those restaurants.

## VII. COUNTERCLAIMS

MCI hereby counterclaims against DirecTV as follows:

### ALLEGATIONS APPLICABLE TO ALL CLAIMS

1. The Court has jurisdiction of this Counterclaim because it is a compulsory counterclaim, arising out of the same series of transactions as those alleged in the Complaint in this matter, and therefore falls within this Court's supplemental jurisdiction.

### FIRST CAUSE OF ACTION
#### BREACH OF CONTRACT

2. The preceding paragraphs are incorporated by reference as if set forth fully herein.
3. DirecTV agreed with MCI that DirecTV would make its TV Programming available to MCI.
4. MCI paid DirecTV monthly in exchange for DirecTV making TV Programming available to MCI.
5. DirecTV breached its agreement with MCI be failing to make its TV Programming available to MCI.
6. DirecTV's breach was willful, malicious and in bad faith.
7. MCI has been damaged by DirecTV's breach.

### SECOND CAUSE OF ACTION
#### INTERFERENCE WITH ECONOMIC RELATIONSHIPS

8. The preceding paragraphs are incorporated by reference as if set forth fully herein.

15

9. In Indiana, an action for tortious interference with business relationships has five elements: the existence of a valid business relationship; the defendant's knowledge of the existence of the relationship; the defendant's intentional interference in the relationship; the absence of any justification; and, damages resulting from the defendant's interference. Flintridge Station Associates v. American Fletcher Mortgage Co. (7th Cir. 1985), 761 F.2d 434, 440 (applying Indiana law)."

10. MCI had valid business relationships with its customers.

11. Those relationships were in part based on the availability of TV Programming supplied by DirecTV.

12. DirecTV knew of the relationships between MCI and its customers, in part because DirecTV installed and activated the equipment in MCI's restaurant for receiving DirecTV programming, and DirecTV received monthly subscription payments from MCI.

13. DirecTV was intentionally interfered in the relationships between MCI and its customers by terminating TV Programming to MCI.

14. DirecTV had no justification for its actions.

15. MCI has been damaged by DirecTV's interference.

### THIRD CAUSE OF ACTION
#### ABUSE OF PROCESS

16. The preceding paragraphs are incorporated by reference as if set forth fully herein.

17. Abuse of process and malicious prosecution claims are governed by the law of the state where the proceeding complained of occurred. S*ee* Restatement (Second) of Conflict of Law § 155 (providing that "[t]he rights and liabilities of the parties for malicious prosecution or abuse of process are determined by the local law of the state where the proceeding complained of occurred"). Under Indiana law, the tort of abuse of process consists of two elements: (1) ulterior motive and (2) use of process that would not be proper in the normal prosecution of the case. *Watters v. Dinn,* 633 N.E.2d 280, 288 (Ind.

App. 1994); *see Conner v. Howe*, 344 F. Supp. 2d 1164, 1175 (S.D. Ind. 2004) ("Under Indiana law, in order to prevail, the plaintiff must have some evidence tending to show that the defendant used process for an end other than that for which it was designed.").

18. DirecTV knew that the claims it asserts in its Complaint are frivolous because DirecTV itself installed and activated the TV equipment in MCI's restaurant and charged MCI subscription fees for DirecTV's programming.

19. With regard to DirecTV's "conversion" claim, DirecTV has long known that a conversion claim is not viable as applied to its "satellite programming," as such programming is not tangible property capable of being "converted," nor has DirecTV been deprived of any ability to use its "satellite programming." DIRECTV, INC, Plaintiff, v. DAVID CASHE, AMBER COWAN, CHARLES BOWLIN, SAMUEL BROWN, TOBY BROWN, DOUGALS CARENDER, RICK CLARK, TOPHER CONGDON, KIM COX, JOHN DAGUE, <u>Order</u> Dismissing Conversion Claim; No. 1:03-cv-00310-DFH-WTL, CASE NOS: 1:03-cv-0310, 1:03-cv-0312, 1:03-cv-0322, 1:03-cv-0323, 1:03-cv-0324, 1:03-cv-0778, 1:03-cv-0779, 1:03-cv-0780, 1:03-cv-0781, 1:03-cv-0782, 1:03-cv-0783, 1:03-cv-0785, 1:03-cv-0786, 1:03-cv-1086, 1:03-cv-1315, 1:03-cv-1320, 1:03-cv-1493, 1:03-cv-1617, 1:03-cv-1618, 1:03-cv-1620, 1:03-cv-1622, 1:03-cv-1751, 1:03-cv-1754, 1:03-cv-1762, 1:03-cv-1767, 1:03-cv-1856, 1:03-cv-1871, 1:03-cv-1873, 1:03-cv-1874, 1:03-cv-1884, 1:03-cv-1885, 1:03-cv-1909, 1:03-cv-1910, 1:03-cv-1943, 1:04-cv-0237, 1:04-cv-0253, 1:04-cv-0260, 1:04-cv-0247. (S.D. Ind. Jun 07, 2004).

20. In addition, in June 2014, about seven months before this suit was filed, DirecTV contacted MCI to inquire about the TV Programming at MCI's restaurant. In response to that inquiry, MCI reminded DirecTV that DirecTV itself had installed and activated the accused system, and had even received subscription fees for such programming, and provided facts to allow DirecTV to verify for itself that DirecTV had authorized MCI to receive DirecTV programming.

17

21. Upon information and belief, following this notification, DirecTV failed to contact its employees or representatives who had installed and activated the DirecTV system to verify that DirecTV had, in fact, itself installed and activated the accused system at MCI's restaurant.

22. Despite this notification, DirecTV engaged the firm of Lonstein Law Offices, who upon information and belief works on a contingent fee basis, and authorized it to demand that MCI pay it $30,000 to avoid being sued, despite the complete absence of facts to support the allegation that MCI was not authorized to receive DirecTV programming.

23. In response to DirecTV's actions, MCI began obtaining service from a DirecTV competitor, DISH.

24. When MCI refused DirecTV's extortionate demand DirecTV filed the present suit, and not for a proper motive, but for the ulterior motives of: (a) causing MCI to cease doing business with its competitor, DISH; and (b) asserting a frivolous legal claim in an effort to extract an extortionate settlement from MCI to avoid the cost of defending DirecTV's frivolous suit.

25. Upon filing the present suit, DirecTV used process, namely: (a) obtaining a summons for this case with knowledge that its claims were frivolous; and (b) causing said summons to be served upon MCI with knowledge that its claims were frivolous and in an attempt to induce MCI to switch from DISH to DirecTV. Neither of these uses of summons would be proper in the normal prosecution of a case because DirecTV's case is frivolous, and because MCI has no legal obligation to get its TV programming from DISH as opposed to DirecTV.

26. MCI has been damaged by DirecTV's abuse of process.

VIII. **PRAYER FOR RELIEF ON COUNTERCLAIM**

**MCI prays that this Court grant it the following relief:**

1. Award MCI its damages, attorney's fees and costs

2. For other relief as this Court determines to be just and appropriate.

IX. **DEMAND FOR JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, MCI hereby demands a trial by jury in this action of all issues so triable.

Respectfully submitted,

By: /s/ Paul B. Overhauser
Paul B. Overhauser
**OVERHAUSER LAW OFFICES LLC**
740 W. Green Meadows Dr., Suite 300
Greenfield, IN 46140-4019
Phone: 317-891-1500
Fax: 866-283-8549
Attorneys for William A. Spina, Jr., Victor A. Spina, Jr., and Martinsville Corral, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing is being filed electronically, and notice hereof will automatically be sent to all counsel of record that participate in electronic filing, by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Paul B. Overhauser
Paul B. Overhauser