IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIRECTV, LLC, a California limited | ) | Case No.:  1:15-cv-00104-JMS-TAB |
| liability company | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VICTOR A. SPINA, JR., MARTINSVILLE | ) | |
| CORRAL, INC., and WILLIAM SPINA | ) | |
| Defendants. | ) | |

**DEFENDANT MARTINSVILLE CORRAL, INC.'S
OPPOSITION TO MOTION TO STRIKE [#56]**

Defendant Martinsville Corral, Inc. hereby opposes the Motion to Strike and for

Sanctions of Plaintiff DirecTV, LLC [#56].

**I.    INTRODUCTION.**

DirecTV's Motion to Strike is a desperate attempt to conceal these critical facts from the

Court:

- A DirecTV insider, Craig Spencer ("Spencer"), has become a whistleblower.  He admits

   that "DirecTV itself authorized the DirecTV receivers at the Texas Corral restaurants in

   Martinsville and Shelbyville to receive and display DirecTV Programming to persons in

   the restaurants.  DirecTV has no basis for claiming that it did not authorize the receipt or

   display of DirecTV programming at those restaurants."  (11/16/15 Spencer Declaration, ¶

   8; Exhibit 3; Spencer Depo, p. 10:1-5; Exhibit 4).  Consequently, DirecTV's

   "interception" claims are frivolous.

- Five months before DirecTV filed this suit, Defendants asked DirecTV's counsel to

   confer with Mr. Spencer as a part of its Rule 11 pre-suit investigation. (Overhauser

   Declaration ¶ 3, Exhibit 5).  DirecTV's counsel did not do so.

1

- DirecTV did not contact Spencer about this suit until long after it was filed.  When he finally was contacted, he reminded DirecTV that *it* had authorized the reception of its signals at the restaurants.  (Spencer Depo., p. 22:7-16; 9/25/15 (Exhibit 4); Spencer Declaration, ¶¶ 18-19).

- To cover up the fact that DirecTV had, in fact, authorized the receipt of its signals, DirecTV's counsel prepared an egregiously misleading declaration for Spencer to sign. It stated that neither Spencer "personally" nor any of his "employees" installed the DirecTV systems at a "commercial establishment" for the Spinas.  (6/4/15 Spencer Declaration, ¶¶ 7,11; Exhibit 1).  This was only "technically correct" because Spencer used a "subcontractor" for the installations, and because DirecTV authorized the systems *before* the restaurants opened for business, so they were *not yet* "commercial establishments." However, DirecTV authorized the systems knowing that the restaurants would open soon. (9/25/15 Spencer Declaration, ¶¶ 19-36; Exhibit 2). The apparent intent of the Declaration was to dissuade Defendants from contacting Spencer.

- When Mr. Spencer balked at signing the declaration, DirecTV's counsel told him that it was "technically correct."  When he continued to hesitate, DirecTV fraudulently told Mr. Spencer that the Defendants William and Victor Spina had sued him (which was a lie), then "threatened [him] with legal action if [he] did not sign" the misleading declaration, and then told him that signing was the best way to "make everything go away."  Spencer signed.  (Spencer Depo. p: 22:19-23:8 (Exhibit 4); 9/25/15 Spencer Declaration, ¶¶ 23, 35, 36; Exhibit 2).

- Later, laden with guilt, Mr. Spencer "gladly" agreed to "be deposed voluntarily without even being served with a subpoena," where he revealed these facts.  (11/16/15 Spencer

Declaration, ¶¶ 2, 4; Exhibit 3.  Moreover, Spencer did not produce any documents

pursuant to a subpoena.  (Overhauser Declaration ¶ 2, Exhibit 5).

It is not surprising that DirecTV fights hard to conceal these facts from the Court.  The

facts not only doom its claims, but raise serious Rule 11 issues.  DirecTV's strategy to "strike"

the deposition, while strategically understandable, has no legal or factual basis.

In its Memorandum, DirecTV spins itself as the valiant protector of the poor Mr.

Spencer, and claims he was "unrepresented by counsel" and thus "deprived of notice and an

opportunity to respond to the improper subpoena by way of a motion to quash."  However,

Spencer "had not received a subpoena when [he] told Mr. Overhauser that [he] was willing to be

deposed in Greenfield, Indiana, or, when [he] proposed the specific date of September 25, 2015.

[He ] was always willing to be deposed voluntarily without even being served with a subpoena."

Spencer "was never coerced or pressured in any way to show up for [his] deposition by anyone.

[He] did not incur any travel expenses for appearing for [his] deposition since [he] was travelling

right by Greenfield anyway."  (11/16/15 Spencer Declaration, ¶¶  2, 4, 6; Exhibit 3).

Moreover, DirecTV had notice of the deposition, appeared at it, and cross examined Mr.

Spencer.  DirecTV was not *prejudiced* by its failure to receive a copy of a subpoena sent to

Spencer -- it was just *doomed* by his truthful testimony.

The subpoena served on Mr. Spencer did not have any geographic infirmities because he

regularly transacts business in Carmel, Indiana, which is less than 100 miles from where the

deposition took place. (11/16/15 Spencer Declaration, ¶ 9; Exhibit 3).

The undersigned concedes that he apparently neglected to staple Spencer's subpoena to

the Notice of Deposition that was served on DirecTV.   This was an inadvertent oversight for

which the undersigned apologizes.   However, DirecTV was not prejudiced by that oversight, and it does not justify jettisoning critical evidence that the Court needs to resolve this case.

## II.   FACTS.

### 1.   The Claims and Defenses in This Case.

DirecTV claims that it did not "authorize" Defendants to receive DirecTV programming, so their receipt of that programing was "interception," entitling DirecTV to damages exceeding $100,000 for each of Defendants' two restaurants.[1]  DirecTV claims that "interception" occurred because its database mistakenly indicates that the restaurants are "residences."

Defendants know nothing about the inner workings of DirecTV's database, but claim that DirecTV "authorized" the receipt of its signals when it installed and authorized the satellite equipment in Defendants' restaurants.  Craig Spencer ("Spencer") is the DirecTV representative that oversaw the installation and activation, and the person who Defendants paid for the installation work.  Since 2009, DirecTV mailed all of its subscription invoices to Defendants' restaurants, and all those invoices were timely paid.

### 2.   Spencer's Testimony.

Spencer's testimony is especially critical; he is a DirecTV representative, yet he contradicts the allegations in DirecTV's Complaints.  Spencer confirms that DirecTV authorized Defendants to receive DirecTV programming.  In fact, DirecTV even paid Spencer "monthly residual payments for the DirecTV subscription" at the restaurants. (11/16/15 Spencer Declaration, ¶ 7, 8; Exhibit 3).

As noted above, five months before this suit was filed, Defendants' counsel specifically asked DirecTV to contact Spencer as part of its Rule 11 pre-suit investigation.  DirecTV did not contact Spencer until after suit was filed.  (Spencer Depo., p. 22:7-16).  When Spencer confirmed

---

[1] Amended Complaint, Prayer for Relief § d [#007].

4

that DirecTV had authorized the reception at Defendants' restaurants, DirecTV's counsel prepared an egregiously misleading declaration for Spencer to sign. It stated that neither Spencer "personally" nor any of his "employees" installed the DirecTV systems at a "commercial establishment" for the Spinas. (6/4/15 Spencer Declaration, ¶¶ 7,11; Exhibit 1). This was only "technically correct" because Spencer used a "subcontractor" for the installations, and because DirecTV authorized the systems *before* the restaurants opened for business, so they were *not yet* "commercial establishments." However, DirecTV authorized the systems knowing that the restaurants would open soon. (9/25/15 Spencer Declaration, ¶¶ 19-36; Exhibit 2).

When Mr. Spencer balked at signing the declaration, DirecTV's counsel told him how and why it was "technically correct." When he continued to hesitate, DirecTV fraudulently told Mr. Spencer that the Defendants William and Victor Spina had sued him (which was a lie), "threatened [him] with legal action if [he] did not sign" the misleading declaration, and told him that signing was the best way to "make everything go away." (9/25/15 Spencer Declaration, ¶¶ 23, 35, 36; Exhibit 2).

Upon receipt of Spencer's Declaration from DirecTV, Defendants' undersigned counsel tried contacting him to schedule a deposition. At first, he did not return voicemails and he appeared to be "blowing him off." However, when they finally spoke, Spencer "gladly and voluntarily" agreed to appear for a deposition. He suggested the date and location (in Greenfield) and Defendants' counsel agreed. The undersigned prepared a <u>Notice of Deposition</u> and subpoena to Spencer. At the same time, Defendants' counsel was finalizing a 73-page supplementation of eleven sets of discovery responses that DirecTV had demanded to be

provided by September 9, 2015.[2]  On that day, the responses were served on DirecTV along with the Notice of Deposition for Spencer's deposition.  The undersigned's standard practice when a deposition subpoena *decus tecum* is served is to attach it to the Notice of Deposition,[3] but the undersigned's records cannot confirm whether or not this was done in this case.  Because DirecTV's counsel claims it was not attached to the Notice, the undersigned assumes that it was not attached.  This failure was inadvertent, and the undersigned sincerely apologizes to DirecTV, its counsel and the Court.  Although Spencer's subpoena sought documents, he did not produce any at his deposition on September 25, 2015 or in response to the subpoena. (Overhauser Decl, ¶¶ 5-6; Exhibit 5).

Spencer "gladly and voluntarily appeared at [his] deposition in Greenfield Indiana on September 25, 2015."  He "had not received a subpoena when [he] told Mr. Overhauser that [he] was willing to be deposed in Greenfield, Indiana, or, when [he] proposed the specific date of September 25, 2015.  [He ] was always willing to be deposed voluntarily without even being served with a subpoena."  Spencer "was never coerced or pressured in any way to show up for [his] deposition by anyone.  [He] did not incur any travel expenses for appearing for [his] deposition since [he] was travelling right by Greenfield anyway."  (11/16/15 Spencer Declaration, ¶¶  2, 4, 6; Exhibit 3).  Moreover, Spencer "regularly transacts business [in Carmel, Indiana] in person," and Carmel is less than 100 miles from Greenfield, Indiana. (11/16/15 Spencer Declaration, ¶ 9; Exhibit 3).

---

[2] In these consolidated cases, DirecTV has served 120 Interrogatories, 111 Requests for production, and 74 Requests for Admission in 123 pages of discovery requests.  After clarifying / revision most of its requests, DirecTV demanded supplementation of 73 pages of those requests by September 9, 2015.  (Overhauser Decl., ¶ 4; Exhibit 5).

[3] Subpoenas for deposition testimony *only* do not have to be served on other parties; it is only when a subpoena seeks *documents* that the subpoena must be served on parties.  Rule 45(a)(4) "*If the subpoena commands the production of documents*, . . .  then . . . a copy of the subpoena must be served on each party."

3.    DirecTV Misstates the September 29, 2015 Phone Call.

Counsel and the court held an informal phone conference on September 2015 which was not recorded.  DirecTV's Memorandum alleges that the undersigned made various statements during that call, but the undersigned denies them.  Specifically, the undersigned denies that he issued the subpoena "knowing that it was invalid due to the geographical limitations imposed by Rule 45."  As noted above, the subpoena complied with the geographical limitations because Spencer regularly transacts business in person in Carmel, Indiana, which is within 100 miles of Greenfield, Indiana where the deposition occurred.   DirecTV's Memorandum also alleges that Judge Baker "held that a violation of Rule 45(a)(4) had taken place and that he would award attorney's fees against Overhauser should Plaintiff choose to bring a motion for sanctions." (Memo. [#57], p. 4).  However, the Court's post-conference Order does not make any such "holding."  [#48].  DirecTV also alleges that during the call, the undersigned stated that he sent a subpoena because Spencer was "blowing him off."  This is not correct.  When the undersigned initially attempted to call Spencer, multiple voicemails were not returned.  However, when we later were able to talk, he was cooperative and gladly volunteered to travel to Greenfield for his deposition without the requirement of a subpoena.

III.    **ARGUMENT.**

A.    **The Subpoena Complied With Geographic Requirements, and Spencer Voluntarily Appeared.**

DirecTV speculates that if, in addition to having been served with the Notice of Deposition, it had *also* been served with a copy of Spencer's subpoena, that "this Court would have been required by Rule 45(d)(3)(A)(ii) to quash the subpoena due to its non-compliance with the100 mile geographical limitation set forth in Rule 45(c)."  This is wrong for two reasons.   First, because Spencer "regularly transact business [in Carmel, Indiana] in person," and Carmel is less than 100

miles from Greenfield, Indiana, his subpoena could not be quashed due to any "geographical limitations."  Second, Spencer "gladly and voluntarily" agreed to be deposed without a subpoena, and to do so in Greenfield "since [he] was travelling right by Greenfield anyway."  He was "never coerced or pressured in any way to show up for [his] deposition by anyone." (11/16/15 Spencer Declaration, ¶ 6; Exhibit 3).

The subpoena was irrelevant to Spencer's appearance for his deposition.  DirecTV's speculation that the deposition would not have occurred but for the subpoena is misplaced. Moreover, even if Spencer had grounds to object to the subpoena (and he did not), DirecTV does not even have standing to object to a subpoena to a non-party.[4]  To the extent DirecTV claims it is prejudiced because the subpoena called for documents to be produced, DirecTV is not prejudiced because Spencer did not produce any documents.

## B.      The Federal Rules do not Provide  for a Deposition to be "Stricken."

DirecTV's Motion should also be summarily denied because as a matter of procedure, the Rules do not allow a deposition to be stricken, as it is not a "pleading."  *Capital Mach. Co.  v. Miller Veneers, Inc*. Order Denying Motion to Strike, Case 1:09-cv-00702-JMS-DML (S.D. Ind., May 2, 2011) ("First, as a matter of procedure, Rule 12(f) only authorizes the Court to strike matter "from a pleading." Fed. R. Civ. Pro. 12(f). A brief is not a pleading. See Fed. R. Civ. Pro. 7(a) (listing the only recognized pleadings).").  Likewise, a deposition is not a pleading

---

[4] A subpoena to a nonparty imposes no burden on the party to whom the records sought relate, since the party is not required to produce documents or take other action in response to the subpoena. *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 80 Fed. Rules Serv. 3d 1435 (D. Mass 2011) (subpoena to nonparty ISP seeking subscriber information for alleged copyright infringers to whom ISP provided service imposed no burden on alleged infringers); *Voltage Pictures, LLC v. Does 1-5,000*, 79 Fed. Rules Serv. 3d. 891 (D.D.C. 2011) (subpoena to nonparty ISP seeking information about putative Doe defendants did not impose undue burden on putative defendants by requiring them to litigate in forum where they should not be subject to personal jurisdiction, since putative defendants not required to respond to subpoena); *CineTel Films v. Does 1-1052*, 82 Fed. Rules Serv. 3d 28 (D. Md. 2012).

recognized in Fed. R. Civ. Pro. 7(a).  Accordingly, the Rules do not authorize Spencer's Deposition to be stricken.

If DirecTV believed that the deposition caused it unreasonable annoyance, embarrassment or oppression, its remedy was to move to terminate or limit the deposition as provided in Rule 30(d)(3)(A).[5]  It did not do so, even though it had ample opportunity.  DirecTV does not cite *any* Rule or case authorizing the "striking" of a deposition, let alone a deposition that was never objected to or the subject of a motion to terminate or limit.

### C.    The High Relevance of Spencer's Testimony Outweighs any Prejudice to DirecTV.

To the extent the Court believes there may be legal grounds for "striking" Spencer's deposition, the Court should weigh that remedy against the prejudice Defendants would suffer. Courts favor resolution of cases on the merits.  Spencer's testimony is highly relevant.

Moreover, it is not clear exactly what it means to "strike" the deposition.  Would *both* parties be excluded from relying on Spencer's deposition?  Could Spencer simply be re-deposed again?  That would seem to be a waste of time; there is no reason to believe his testimony would change.  Could his deposition be used for impeachment purposes?  To authenticate documents? At a minimum, because no one knows the context in which the court might find his testimony to be helpful, the deposition should not be stricken.  One option would be to deny DirecTV's motion, but note that, as with any proposed evidence, it may file a motion in liminie at the appropriate time.

---

[5] "(A) Grounds. At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order."

**D.** **Sanctions Should Not Be Assessed.**

DirecTV's rationale for an award of attorney's fees is its belief that:

> Judge Baker held that a violation of Rule 45(a)(4) had taken place and that he would award attorney's fees against Overhauser should Plaintiff choose to bring a motion for sanctions
>
> Memorandum [#057], p. 4

In other words, DirecTV believes this court already granted this motion before it was drafted, and that it will be awarded however much in attorney's fees it took to draft this motion.

DirecTV's view that the court already "held" that DirecTV was entitled to relief is mistaken. To the contrary, DiecTV has not shown that the subpoena violated "geographic limitations" or that it has been prejudiced. Moreover, it would not be sound policy for a court to essentially say, "go ahead and run up attorney's fees to write a motion for fees, and I'll award you however much if fees you incur in doing so."

The legal grounds DirecTV cites for attorney's fees are Rules 30(d) and 45.

**1.** **DirecTV is not Entitled to Attorney's Fess Under Rule 30(d).**

Rule 30(d)(2) permits a sanction which may include "reasonable expenses and attorney's fees incurred by any party" but only against a person who "impedes, delays, or frustrates the fair examination of the deponent." DirecTV's examination of Spencer was not "impede[d], delay[ed], or frustrate[ed]." DirecTV's counsel asked Spencer all the questions he had. In fact, Defendants bent over backwards; Defendants allowed DirecTV's attorney Chis Hufnagel to ask questions, even though he had not even appeared in the case. Spencer Depo. p: 65:2-68:24 (Exhibit 4). Moreover, DirecTV cannot claim its examination was not "impede[d], delay[ed], or frustrate[ed]" where it did not move under Rule 30(d)(3) to adjourn the deposition. DirecTV complains that because it chose to appear telephonically, it could not actually see the witness or exhibits. However, DirecTV could have appeared in person, it simply chose not to. DirecTV

could have asked for break and asked the undersigned to email him any exhibits, but it did not do so.   The only thing that *really* prejudiced DirecTV about Spencer's deposition was his *truthful testimony*. The Rules do not entitle DirecTV to recover attorney's fees just because Spencer's testimony was unfavorable to it.

2. <u>DirecTV is not Entitled to Attorney's Fess Under Rule 45.</u>

Rule 45(d)(1) permits a sanction which may include "reasonable attorney's' fees" when an attorney serving a subpoena fails to "take reasonable steps to avoid imposing undue burden or expense *on a person subject to the subpoena*." DirecTV is not entitled to attorney's fees under Rule 45 because it is not "a person subject to the subpoena."  *Spencer* was the "person subject to the subpoena," and he "gladly and voluntarily" appeared.

**IV.**   <u>C**ONCLUSION**</u>

For the reasons stated above, DirecTV's Motion should be denied.

Respectfully submitted,


By:  ___s/Paul B. Overhauser_____
        Paul B. Overhauser
**OVERHAUSER LAW OFFICES LLC**
740 W. Green Meadows Dr., Suite 300
Greenfield, IN  46140-4019
Phone: 317-467-9100
poverhauser@overhauser.com
Attorneys for Defendants

**EXHIBITS**

| | |
|---|---|
| 1 | 6/4/2015 Spencer Declaration |
| 2 | 9/25/2015 Spencer Declaration |
| 3 | 11/16/2015 Spencer Declaration |
| 4 | Spencer Deposition |
| 5 | Overhauser Declaration |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing is being filed electronically via the Court's ECF system and that all parties hereto will be served through such system.

By:    s/Paul B. Overhauser   
             Paul B. Overhauser