Exhibit 2

## DECLARATION OF CRAIG SPENCER

I, Craig Spencer, declare and affirm under penalties of perjury of South Carolina, as follows:

1. I have personal knowledge of the following facts, and can testify to them.

2. I am the owner and president of a business known as "Superior Antenna Systems" or "SAS Digital," of Martinsville, Indiana ("SAS").

3. The SAS business began in 1994. In 1998, Randall Maxwell and I incorporated the business as Maxwell – Spencer Enterprises, Inc. Mr. Maxwell assisted with the business until 2005, when he left to pursue other endeavors. After he left, the corporation was "administratively dissolved" in July 2010. This is confirmed by the following information from the Indiana Secretary of State:



After the corporate dissolution, I continued the "SAS Digital" business, but just did so in my own name as a sole proprietorship. There was no change in the day-to-day operations of the business or its interactions with DirecTV or SAS's customers. In fact, to this very day DirecTV continues to pay me residuals for all the DirecTV systems I or Maxwell – Spencer Enterprises, Inc. installed.

1

4. SAS has been an authorized retailer for DirecTV since 1995.  Since then it has been authorized by DirecTV to install DirecTV equipment and to sign up DirecTV residential and commercial subscribers.  Persons viewing DirecTV programming on a DirecTV receiver that has been activated by DirecTV through SAS are authorized to view that programming.

5. SAS's DirecTV dealer number is 1311782.

6. While I have personally done some installations of DirecTV systems, in the past 10 years SAS often used independent subcontractors to install systems.

7. SAS gives its dealer number to its independent subcontractors.  They can use this number to request DirecTV to activate receivers at the end of the installation process.  By activating a receiver, DirecTV authorizes the receipt and display DirecTV programming through the activated receiver.

8. I have known Bill and Victor Spina for over 30 years, as we went to high school together.  We have all known about our respective businesses, and they knew I ran SAS and that it was an authorized DirecTV retailer.   In the 2000's the Spinas owned and operated a Damon's Restaurant at 610 Birk Rd., Martinsville, Indiana 46151.  This restaurant went out of business in the mid 2000's.

9. In about June 2009, one of my subcontractors was contacted by either Bill Spina or Victor Spina and asked to install a DirecTV system with multiple televisions at 610 Birk Rd., Martinsville, Indiana 46151, where the Damon's Restaurant used to be.  At the time, the Spinas were remodeling the restaurant to open it as a Texas Corral restaurant.

10. When we got the request from the Spinas I assigned one of my independent subcontractors to work on the DirecTV installation at 610 Birk Rd., Martinsville, Indiana 46151.   SAS supplied all of the DirecTV equipment for this installation including the antenna and receivers, and delivered the equipment to this address.  The subcontractor completed this installation and then provided subscription information to DirecTV for all of the DirecTV receivers we had installed.  After DirecTV received information about the installed receivers, it activated those receivers so they could be used to receive, decrypt and display DirecTV programming.  Sometime later, the restaurant opened for business under the name Texas Corral.

11. This is an invoice dated 6/7/2009 I personally issued on behalf of SAS for installation work at 610 Birk Rd., Martinsville, Indiana 46151:

2

> **Superior Antenna Systems**
>
> 413 Main St.
> ~~1300 Morton Ave.~~
> Martinsville, IN 46151
> 765-342-7981
> 800-699-7981
>
> Name: TEXAS CORRAL
> Install Date: 6-7-09
> Sales Rep: CRAIG
>
> Description: INSTALL 4 LCD TVS AND MOUNTS
> 3 MAN X 20⁰⁰ = $4HR
> Amount: 300.⁰⁰
>
> TOTAL: 300.⁰⁰
>
> ALL SALES ARE FINAL    NO REFUNDS

12. Because all of the receivers installed by SAS at 610 Birk Rd., Martinsville, Indiana 46151 were activated by DirecTV, persons were authorized to view DirecTV programming through those receivers, and I confirmed this with the Spinas. I never gave Bill Spina, Victor Spina or anyone else any reason to believe that receipt or display of DirecTV programming on the receivers DirecTV activated at 610 Birk Rd., Martinsville, Indiana 46151 was unauthorized.

13. In about October 2011, I was contacted by either Bill Spina or Victor Spina and asked to install a DirecTV system at the address 2103 Intelliplex Dr., Shelbyville, IN 45176. The building at this address used to be a restaurant, but it had been shut down. It was being remodeled to be opened as another Texas Corral restaurant.

14. I assigned one of my independent subcontractors to perform the DirecTV installation and activation at 2103 Intelliplex Dr., Shelbyville, IN 45176. SAS supplied all of the DirecTV equipment, and delivery of the equipment to this address. The subcontractor completed this installation and then provided subscription information to DirecTV for all of the DirecTV receivers we had installed. When DirecTV received information about the installed receivers, DirecTV activated those receivers so they could be used to receive, decrypt and display DirecTV programming. Sometime later, the restaurant opened for business under the name Texas Corral.

15. This is an undated invoice for $598.13 I issued for this work on behalf of SAS:

3



16. This is a cancelled check no 4819 dated 11/01/2011 issued by Martinsville Corral, Inc. and made payable to me and endorsed by me for the above invoice.

17. Because all of the receivers installed by SAS at 2103 Intelliplex Dr., Shelbyville, IN 45176 were activated by DirecTV, persons were authorized to view DirecTV programming through those receivers. I never gave Bill Spina, Victor Spina or

4

    anyone else any reason to believe that receipt or display of DirecTV programming on the receivers DirecTV activated at 2103 Intelliplex Dr., Shelbyville, IN 45176 was unauthorized.

18. In April 2015, I received an email from Jose Cruz, who identified himself as a DirecTV employee. He said that he was calling about the Spina's and he asked me to speak with Julie Lonstein and Chris Hufnagel who were attorneys for DirecTV. I agreed to do so. Shortly thereafter, I participated in a telephone conference call with Mr. Cruz, Ms. Lonstein and Mr. Hufnagel.

19. Ms. Lonstein began by telling me that they called me because I had been sued by Bill and Victor Spina. I was shocked to hear this. Later I found out that this was not true. They inquired about the installation of the DirecTV systems at the above two Texas Corral restaurants. I told them the facts stated above. Julie Lonstein repeatedly tried to get me to say that the DirecTV receivers had actually been installed at the residence of Victor Spina, but that he must have moved them to the two restaurant locations. I told them that this was not true, and that SAS had originally delivered and installed the receivers at the two restaurant locations. I also told them Bill Spina and Victor Spina would not have had any reason to believe that they were not authorized to display DirecTV programing at the restaurants, and that, in fact, they were authorized because DirecTV itself had activated the receivers.

20. At this point there was a long pause in the conversation. It was clear that this was not what DirecTV was expecting to hear. Julie Lonstein then began interrogating me about the specifics of the installations. During that conversation, I mentioned that SAS used independent subcontractors for installations. DirecTV's attorney's became enthusiastic when I mentioned this. In particular, we discussed the difference between me personally doing work and one of my independent subcontractors doing the work.

21. At the conclusion of the conversation, Chris Hufnagel, who identified himself as working for Ms. Lonstein, said he would send me a declaration to sign.

22. On April 29, 2015, I received an email from Chris Hufnagle with an attached declaration. I read through the declaration but I refused to sign it at the time because it appeared to have numerous inaccuracies.

23. On Friday, May 29 2015, I received a voicemail from a person who identified himself as a Vice President of Operations for DirecTV. He told me that DirecTV had not received back the signed declaration that Mr. Hufnagle had sent me. The voicemail said that it would be in my "best interest" to sign the declaration because the Spinas had sued both me and DirecTV, and that signing the declaration was the best way to "make everything go away." (I later learned that the statement that the Spinas had sued me was untrue.) Over the weekend of May

5

30-31, 2015, I re-read the declaration Mr. Hufnagle had sent me, and realized that while it was misleading, it was technically accurate.

24. On Monday, June 1, 2015, I called Mr. Cruz at DirecTV, who had been on the conference call in April.  We discussed the voicemail that had been left on the previous Friday, and Mr. Cruz reiterated what DireTV's Director of Operations had been said in the voicemail.   I asked him to tell DirecTV's Vice President of Operations that I would go ahead and sign the declaration, and I asked him for Mr. Hufnagle's fax number.  Mr. Cruz called me back later that day and gave me Mr. Hufnagle's fax number.  On Thursday June 4, 2015, I signed the declaration and faxed it to Mr. Hufnagle.

25. The respects in which the Declaration is misleading, or at least unclear, are as follows.

26. On June 4, 2015, I signed a Declaration stating the following:

> 3.   In 2009, neither I nor SAS Digital, nor any SAS Digital employee was authorized by DIRECTV, LLC to solicit commercial subscriptions and install satellite equipment for commercial programming services.

The above statement, while technically correct, is misleading because in 2009, the "SAS Digital" business was conducted by the corporation, Maxwell – Spencer Enterprises, Inc.  Thus, it was this corporation that at the time was authorized by DirecTV to "solicit commercial subscriptions," (as well as residential subscriptions), but not "I nor SAS Digital."   I believe that DirecTV knew this clause was misleading, because this section mentions "In 2009," whereas the subsequent paragraphs mention "At no time in 2009, nor before or thereafter." Thus, DirecTV knew that in prior to and during 2009, the corporation Maxwell – Spencer Enterprises, Inc. could "solicit commercial subscriptions," and that when this corporation was later dissolved, that I could do so personally.

27. On June 4, 2015, I signed a Declaration stating the following:

> 5.   At no time in 2009, nor before or thereafter, did I meet with either Victor or William Spina regarding establishing an account with DIRECTV to display or exhibit DIRECTV satellite programming in the commercial establishment known as Martinsville Texas Corral, located at 610 Birk Rd., Martinsville, IN 46151.

The above statement is misleading for two reasons.  First, as with most of my customers, I did business with the Spinas over the phone; I did not "meet" with them in person in 2009 to discuss "establishing an account."  Second, when I did

6

discuss the installation at the Martinsville Texas Corral with the Spinas, it had not yet opened for business, so it was not *yet* a "commercial establishment." However, I was already familiar with the building at this address as I had visited it frequently when it was a Damon's restaurant. It was obvious that the building was for a business and not a residence, and I understood that the Spinas planned to open a Texas Corral restaurant there after the DirecTV system was installed and activated.

28. On June 4, 2015, I signed a Declaration stating the following:

> 6.   At no time, in 2009 nor before or thereafter, did I visit or inspect the commercial location of 610 Birk Rd., Martinsville, IN 46151 to establish a quote for DIRECTV satellite services to be used at said location.

The above statement is misleading. Although Maxwell – Spencer Enterprises, Inc. installed the DirecTV equipment at this address and asked DirecTV to activate and authorize the DirecTV receivers, I never "established a quote" for this work. I had known Bill and Victor Spina for over thirty years we trusted each other. They never asked me for a quote, they just asked me to get the system installed.

29. On June 4, 2015, I signed a Declaration stating the following:

> 7.   At no time, in 2009 or ever, did I personally install, nor did I authorize any employee of SAS Digital to install DIRECTV receivers or satellite dishes at the commercial establishment known as Martinsville Texas Corral located at 610 Birk Rd., Martinsville, IN 46151.

The above statement is misleading for two reasons. First, while I did not "*personally*" install any "DIRECTV receivers or satellite dishes" at this address or have any "employee" do so, I did have one of my *subcontractors* do the installation. After the installation, the subcontractor contacted DirecTV and asked it to activate and authorize the installed receivers at the specified address, which it did. Second, at the time of the installation, the restaurant had not yet opened for business, so it was not *yet* a "commercial establishment." However, I understood that the Spinas planned to open a Texas Corral restaurant there after the DirecTV system was installed.

30. On June 4, 2015, I signed a Declaration stating the following:

7

> 8. At no time in 2009, and at no time prior or thereafter, did I represent to Victor or William Spina that a residential account was appropriate and suitable for use inside a restaurant/commercial establishment. The Spinas were never authorized by myself nor SAS Digital to use residential services and accounts for the public display of DIRECTV satellite programming in commercial locations.

31. The above statement is misleading for two reasons.  First, it implies that I represented to Victor or William Spina that they were getting a "residential account" in the first place, and I never told them that; we all understood that the DirecTV systems were installed at to-be-opened public restaurants. Second, the statement assumes that "I or SAS Digital" "authorized" the receivers for "residential services and accounts" at the restaurants.   In fact, it is *DirecTV* that "authorizes" use of a DirecTV receiver when it "activates" the receiver.  The DirecTV receivers installed at the restaurants were owned by, activated by and authorized *by DirecTV*.

32. On June 4, 2015, I signed a Declaration stating the following:

> 9. At no time in 2011, neither before nor thereafter, did I meet with either Victor or William Spina regarding establishing an account with DIRECTV to display DIRECTV satellite programming in the commercial establishment known as Shelbyville Texas Corral, located at 2103 Intelliplex Dr., Shelbyville, IN 46176.

The above statement is misleading for two reasons.  First, as with most of my customers, I did business with the Spinas over the phone; I did not "meet" with them in 2011 to discuss "establishing an account."  In fact, the account had already been opened earlier.  Second, the Shelbyville Texas Corral had not yet opened for business, so it was not *yet* a "commercial establishment."  Nevertheless, it was obvious the building at this address was a business and not a residence, and I understood that the Spinas planned to open a Texas Corral restaurant there after the DirecTV system was installed.

33. On June 4, 2015, I signed a Declaration stating the following:

> 10. At no time, in 2011 or ever, did I visit or inspect the commercial location of 2103 Intelliplex Dr., Shelbyville, IN 46176 to establish a quote for DIRECTV satellite services to be used at said location.

    The above statement is misleading. Although I had one of my subcontractors install DirecTV equipment at this address and he had DirecTV activate and authorize the DirecTV receivers, I never "established a quote" for this work. I had known Bill and Victor Spina for over thirty years we trusted each other. They never asked me for a quote, they just asked me to install the system.

34. On June 4, 2015, I signed a Declaration stating the following:

> 11. At no time, in 2011 or ever, did I personally install, nor did I authorize any employee of SAS Digital to install DIRECTV receivers or satellite dish at the commercial location known as Shelbyville Texas Corral located at 2103 Intelliplex Dr., Shelbyville, IN 46176.

    The above statement is misleading for two reasons. First, while I did not "*personally*" install "DIRECTV receivers or satellite dishes" at this address or have any "employee" do so, I did have one of my *subcontractors* do the installation. After the installation, the subcontractor contacted DirecTV and asked it to activate and authorize the installed receivers at the specified address. Second, at the time of the installation, the restaurant had not yet opened for business, so it was not *yet* a "commercial establishment." However, I understood that the Spinas planned to open a Texas Corral restaurant there after the DirecTV system was installed.

35. On June 4, 2015, I signed a Declaration stating the following:

> 13. The first time I heard about the claims of DIRECTV, LLC against the commercial establishments known as Martinsville Texas Corral and Shelbyville Texas Corral was in September 2014, when I was contacted by William Spina via telephone. I have known the Spina family since high school and therefore was not surprised to receive a call from William until I heard what William was alleging. During that phone call, William Spina stated to me that he was aware that a technician had installed satellite dishes and receivers at the two business locations and that he paid the installer to do that work. This phone call was the first time I had any knowledge of any receivers being installed at either of the business locations or being utilized at either of the business locations owned by the Spinas.

    The above statement is misleading and has a mistake. It says that I "was contacted by William Spina via telephone in "September 2014." In fact, after checking my records, I have confirmed that William Spina first contacted me

9

not in September 2014, but on April 27, 2015 after I was contacted by DirecTV. Moreover, William Spina only called me after I sent him the following text messages asking him to call me.



The second text message says "Directv tells me your naming me in a lawsuit." That is what DirecTV told me.  However, I no longer believe this, because William Spina denies that he sued me, and I have never been served with a summons and complaint.

This statement also says "This phone call was the first time I had any knowledge of any receivers being installed at either of the *business* locations or being utilized at either of the *business* locations owed by the Spinas."  This statement is misleading for the same reasons mentioned above; specifically, the receivers were installed and activated before the restaurants opened, so technically they were not yet "business" locations at the time of installation.  Again, this misleading wording was drafted by DirecTV or its attorneys.   I initially refused to sign the Declaration, but after Chris Hufnagle explained how it was technically correct and threatened me with legal action if I did not sign it, I went ahead and signed it.

36. On June 4, 2015, I signed a Declaration stating the following:

> 14.    I did not perform any installations at 610 Birk Rd., Martinsville, IN 46151 or at 2103 Intelliplex Dr., Shelbyville, IN 46176 nor did I authorize or direct my employees to install receivers for DIRECTV satellite programming at the commercial establishments known as Martinsville Texas Corral and/or Shelbyville Texas Corral.

10

    The above statement is misleading. While I did not *personally* "authorize or direct my employees to install receivers for DIRECTV satellite programming," I did authorize and direct one of my *subcontractors* to do so. As DirecTV attorney Chris Hufnagle explained to me, a subcontractor is not technically an "employee," so the statement was not literally false. During my conference call with DirecTV and its attorneys, I remember that Ms. Lonstein got excited when I told her that I usually use subcontractors for installations. Mr. Hufnagle sent me the Declaration, and this wording of this section explains the excitement.

37. I am extremely disappointed to learn that DirecTV terminated its service at the Texas Corral restaurants and is suing it and the Spinas for over $100,000. I have known the Spinas since high school and had many dealings with them. I know them to be honest and honorable. DirecTV made a mistake when it designated the accounts as "residential" accounts in its system.

38. I also understand the DirecTV's Complaint makes the following accusation:

> "Because equipment used with DIRECTV services can be moved from residential locations to commercial establishments without DIRECTV's knowledge, owners of commercial establishments wishing to use DIRECTV's programming for their own commercial gain, at the lower residential rates can surreptitiously gain access to DIRECTV programming without proper authorization by subscribing to DIRECTV services under a residential account and then installing/moving the equipment to their businesses and utilizing those services in a commercial environment."

39. The allegation that the Spinas signed up for a residential account or moved "the equipment to their businesses" is not true, and I told DirecTV this during my conference call with them. If DirecTV's records show that the receivers at the Spinas' two restaurants are "residential," DirecTV's records are not correct. The receivers that were installed at these restaurants came from me, and I have always been an authorized DirecTV retailer. Moreover, DirecTV itself activated those and thereby authorized them to receive DirecTV signals.

40. All DirecTV receivers remain the property of DirecTV even after they are installed; they are never sold. When a DirecTV subscription ends, the subscriber is supposed to return the receiver to DirecTV.

41. DirecTV signals are encrypted before they are transmitted from a ground based satellite, and they are only decrypted by a DirecTV-owned receiver that DirecTV has "activated." Persons viewing decrypted DirecTV programming from a receiver that has been activated by DirecTV are authorized to receive the DirecTV programming. DirecTV continuously maintains control over DirecTV receivers.

    Each receiver has a unique address, and DirecTV is able to remotely activate or deactivate DirecTV receivers.

42. The TV signal that is output from an activated DirecTV receiver is not encrypted; it can be input into any conventional television for display.

_____    _____
DATED                                                                   CRAIG SPENCER

    BEFORE ME, personally appeared CRAIG SPENCER, known to me to be the person described herein; who executed this document; and acknowledged that he signed the same.

    SUBSCRIBED AND SWORN TO on this _____ day of June, 2015.

                                                         _____
                                                         Notary Public, State of South Carolina

My Commission Expires: