# Exhibit H

Plaintiff's Affidavit in Support of Motion for Summary Judgment

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

DIRECTV, LLC, a California limited liability company,

                Plaintiff,

v.

VICTOR A. SPINA, a/k/a VICTOR A. SPINA, JR. and WILLIAM SPINA, a/k/a WILLIAM ANTHONY SPINA, JR., Individually, and as officers, directors, shareholders, principals, managers and/or members of MARTINSVILLE CORRAL, INC., d/b/a TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL,

and

MARTINSVILLE CORRAL, INC., d/b/a TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL,

                Defendants.

---

**PLAINTIFF'S AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Civil Action No.: 1:15-CV-00104-JMS-TAB

STATE OF CALIFORNIA   }
                              }ss}
COUNTY OF LOS ANGELES  }

KENT P. MADER, being duly sworn, deposes and states the following:

      1.    I am a Vice President of Risk Management for Plaintiff, DIRECTV, LLC ("DIRECTV"), and, as such, I am fully familiar with the facts, circumstances and proceedings heretofore had herein.

      2.    I make this Affidavit in support of Plaintiff's Motion for Summary Judgment against Defendants VICTOR A. SPINA, a/k/a VICTOR A. SPINA, JR. and WILLIAM SPINA, a/k/a WILLIAM ANTHONY SPINA, JR., Individually, and as officers, directors, shareholders, principals, managers and/or members of MARTINSVILLE CORRAL, INC., d/b/a TEXAS

1

CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL and d/b/a TEXAS CORRAL, a/k/a MARTINSVILLE TEXAS CORRAL, and MARTINSVILLE CORRAL, INC., d/b/a TEXAS CORRAL, a/k/a SHELBYVILLE TEXAS CORRAL d/b/a TEXAS CORRAL, a/k/a MARTINSVILLE TEXAS CORRAL.

3. DIRECTV is the United States' leading direct broadcast satellite service, delivering more than 225 channels of television and other programming to more than 20 million customers in the United States. DIRECTV satellite programming currently includes major cable networks, local stations, studio movies and special events programming, as well as a variety of sports and other special interest programming. DIRECTV has invested billions of dollars to develop its direct broadcast satellite programming.

4. DIRECTV offers its television programming to residential and business customers on a subscription and pay-per-view basis only. In order to receive and view DIRECTV satellite programming, each customer is required to obtain DIRECTV satellite hardware (including a small satellite dish and DIRECTV integrated receiver/decoder ["IRD"] with DIRECTV Access Card) and is required to establish an account with DIRECTV. DIRECTV sells and distributes DIRECTV satellite equipment necessary to receive DIRECTV programming. Upon activation of the Access Card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed or otherwise made arrangements to purchase from DIRECTV. Certain DIRECTV satellite programming is also accessible via the internet for residential use.

5. DIRECTV offers several different satellite television packages as well as 40 premium movie channels, including several Home Box Office, Showtime, Cinemax, Movie Channel, and Encore channels, the Family Pack™ and local channels for many markets throughout the United States. DIRECTV also markets to individuals interested in specialized sports packages.

DIRECTV offers subscriptions to specialized sporting packages, including NFL Sunday Ticket™, NBA League Pass™, NHL Center Ice™, MLB Extra Innings™, ESPN Game Plan™, ESPN Full Court™, MLS Direct Kick™, and Mega March Madness™. DIRECTV also offers specialized one-time viewing movies and events in the form of pay-per-view channels, including countless pay-per view boxing and special event matches. Furthermore, DIRECTV's revenues are principally derived from subscription fees related to its programming services. Thus, DIRECTV has significant interests, commercial and otherwise, in maintaining and securing the integrity of its programming and in prohibiting unauthorized reception of its satellite broadcast transmissions. For the above reasons, DIRECTV diligently protects its distribution rights.

6. DIRECTV charges subscription fees for both residential and commercial programming, however, commercial programming subscriptions are generally more expensive since the programming will be displayed for public viewing.

7. DIRECTV's residential and commercial subscribers use the same satellite receiving equipment to receive DIRECTV programming signals. Consequently, commercial establishments interested in receiving commercial programming at residential pricing may surreptitiously move satellite hardware listed on a residential account to their commercial establishment without the knowledge of DIRECTV, or they may display or use illegally DIRECTV satellite programming accessible via the internet without proper authorization. It is also possible for a commercial establishment to intentionally and fraudulently establish a residential DIRECTV account and then use that account to receive residential programming for use in a commercial establishment in violation of their agreement with DIRECTV. Misappropriating residential DIRECTV programming for use in a commercial establishment, allows commercial establishment owners to publicly exhibit DIRECTV programming at substantially lower cost.

8. In order to combat commercial misuse of its programming signals, DIRECTV

engages investigators and auditors who assist with identifying establishments that unlawfully exhibit DIRECTV residential programming in a commercial setting.

9. The Defendants named above did not have the right to exhibit DIRECTV Satellite Programming in their commercial establishments on June 3 and June 4, 2014.

10. On June 3, 2014, at approximately 3:42 p.m., auditor Kevin Karlak observed six (6) television sets in the Defendants' establishment, Martinsville Texas Corral, located and doing business at 610 Birk Road, Martinsville, IN 46151. Four of the televisions observed by Mr. Karlak were exhibiting DIRECTV Satellite Programming for public viewing. Specifically, Mr. Karlak observed NFL Network programming on DIRECTV channel 212. He also observed a DIRECTV receiver behind a television, a DIRECTV remote control, a DIRECTV information banner described at a black banner at the top of the screen, and a DIRECTV receiver ID number (029417397394). Martinsville Texas Corral has an estimated fire code occupancy of 101 to 200 persons. The auditor's affidavit attesting to these facts is attached to Plaintiff's Motion for Summary Judgment as Exhibit "A." Also attached as Exhibits "B" and "C", to Plaintiff's Motion for Summary Judgment, respectively, are a video of the audit and photographs taken by auditor Kevin Karlak.

11. On June 4, 2014, at approximately 2:31 p.m., auditor Kevin Karlak observed two (2) television sets in the Defendants' establishment, Shelbyville Texas Corral, located and doing business at 2103 Intelliplex Dr. Shelbyville, IN 46176. One (1) of those television sets was exhibiting DIRECTV Satellite Programming for public viewing. Specifically, Mr. Karlak observed ESPN programming (Sports Center) on DIRECTV channel 206, a DIRECTV receiver under a television, a partial DIRECTV receiver ID number (247171), and the black DIRECTV information banner at the top of the screen. Shelbyville Texas Corral has an estimated fire code occupancy of 101 to 200 persons. The auditor's affidavit attesting to these facts is attached to Plaintiff's Motion for Summary Judgment as Exhibit "D." Also attached as Exhibits "E" and "F" to

Plaintiff's Motion for Summary Judgment, respectively, are a video of the audit and photographs taken by auditor Kevin Karlak.

12. After receiving the auditor's reports, DIRECTV conducted a search of its records and determined that there were no DIRECTV *commercial* accounts for either Martinsville Texas Corral, located and doing business at 610 Birk Road, Martinsville, IN 46151, or Shelbyville Texas Corral, located and doing business at 2103 Intelliplex Dr. Shelbyville, IN 46176, authorized to receive DIRECTV's commercial programming.

13. The DIRECTV receiver in use at Martinsville Texas Coral, receiver ID number 029417397394, and the DIRECTV receiver in use at Shelbyville Texas Coral, partial receiver ID number 247171, as observed by Mr. Karlak, are associated with DIRECTV residential account number 045448353. This residential account in the name of Victor Spina, an owner of both Martinsville Texas Corral and Shelbyville Texas Coral, for service located at the residential address of 785 E. Timber Dr., Martinsville, IN 46151, was initially activated on May 31, 2009. The account records for account number 045448353 verify DIRECTV Satellite Programming was purchased at a residential rate. As a Vice President of Risk Management, I have personal knowledge that the DIRECTV account records for DIRECTV account number 045448353 in the name of Victor Spina are authentic and accurately reflect account information for DIRECTV account number 045448353. Attached to Plaintiff's Motion for Summary Judgment and made a part hereof as Exhibit "G" is a copy of the account records from DIRECTV for the residential account in the name of Victor Spina, an owner of both the Martinsville Texas Corral and the Shelbyville Texas Coral, for service located at the residential address of 785 E. Timber Dr., Martinsville, IN 46151.

14. On June 30, 2014, programming service for residential account number 045448353 was disconnected by DIRECTV's Risk Management Department.

5

15. The unauthorized use of DIRECTV programming through fraudulent conduct has a negative effect upon DIRECTV and lawful commercial customers. Furthermore, commercial misappropriation of DIRECTV residential programming results in significant loss of revenue and places legitimate commercial subscribers at a disadvantage by having to compete with businesses like Martinsville Texas Coral and Shelbyville Texas Coral who unlawfully acquire DIRECTV Satellite Programming without paying the commercial rates.

Dated: __JAN 6__, 2016
El Segundo, California

KENT P. MADER
for Plaintiff, DIRECTV, LLC

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of __Los Angeles__

Subscribed and sworn to (or affirmed) before me on this __6th__ day of __January__, 20__16__, by __Kent Mader__, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(Seal) 

MARIE B. WOODS
Commission # 2066665
Notary Public - California
Los Angeles County
My Comm. Expires May 2, 2018

Signature