UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIRECTV, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00104-JMS-TAB |
| | ) | |
| VICTOR A. SPINA, *individually, and as officer, director, shareholder, principal, manager, and/or member of Martinsville Corral, Inc. a/k/a Victor A. Spina, Jr.*, MARTINSVILLE CORRAL, INC. *d/b/a Texas Corral a/k/a Shelbyville Texas Corral*, and WILLIAM SPINA *a/k/a William Anthony Spina, Jr.*, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Presently pending in this case brought under the Federal Communications Act, 47 U.S.C. § 605, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511, are: (1) a Motion for Summary Judgment filed by Plaintiff DirecTV, LLC ("DirecTV"), [Filing No. 79]; (2) a Cross-Motion for Summary Judgment filed by Defendants Victor Spina, William Spina, and Martinsville Corral, Inc. ("MCI"), [Filing No. 106]; and (3) a Motion for Sanctions filed by Defendants Victor Spina, William Spina, and MCI, [Filing No. 103].

This litigation involves claims by DirecTV that Defendants displayed DirecTV programming in two commercial establishments without proper authorization, through a residential account associated with one of the Defendants. It has been contentious from the start, and the Motion for Sanctions demonstrates that this pattern has continued. Because the Motion for Sanctions requests that the Court sanction DirecTV by entering judgment in favor of Defendants, the Court will address that motion at the outset.

- 1 -

# I.
## MOTION FOR SANCTIONS

### A.  Background

Before discussing the substance of Defendants' Motion for Sanctions, it is necessary to set forth certain background information which illustrates how the parties have reached this point.

The Motion for Sanctions relates to Defendants' efforts to depose DirecTV's Rule 30(b)(6) corporate representative.  After the parties were unable to reach an agreement regarding when the representative's deposition would take place, the Magistrate Judge ordered that it take place on December 15, 2015.  [Filing No. 67.]  At the December 15, 2015 deposition, Defendants' counsel questioned the representative, and subsequently claimed that the representative was not properly prepared to answer questions and requested that DirecTV voluntarily produce another corporate representative for questioning.  [Filing No. 107-1 at 22.]  During a January 26, 2016 telephonic status conference, the Magistrate Judge ordered DirecTV to "produce another representative for a follow-up Rule 30(b)(6) deposition due to numerous deficiencies in the responses provided by the first Rule 30(b)(6) deponent."  [Filing No. 85.]  The Magistrate Judge ordered that the deposition of the second Rule 30(b)(6) deponent be completed by February 16, 2016.  [Filing No. 85.]

Subsequently, the following correspondence took place between Defendants' counsel and counsel for DirecTV regarding the deposition of DirecTV's second Rule 30(b)(6) representative:

- On January 27, 2016, Defendants' counsel emailed counsel for DirecTV asking whether DirecTV's second Rule 30(b)(6) representative would be available to resume the deposition on February 10, 2016.

- On January 28, 2016, counsel for DirecTV responded by advising that the employee who was to be the second Rule 30(b)(6) witness would be leaving the employ of DirecTV, that "we are unsure of who else DIRECTV could produce as a 30(b)(6) witness without reproducing [the first 30(b)(6) representative]," and that "I would propose that we first attempt to nail down the specific questions you seek answers on by agreeing to a deposition by written questions pursuant to Fed R Civ P 31(a)(4) and 30(b)(6)."  DirecTV's counsel stated that this

would "allow DIRECTV to gather the information and answers from the sources or individuals at DIRECTV that actually do have the answers…. If you are not satisfied with the answers to the written questions, we would of course revisit who we would produce for an in-person deposition in Indianapolis."

- Later on January 28, 2016, Defendants' counsel responded by asking when the second Rule 30(b)(6) representative was leaving the employ of DirecTV, and DirecTV's counsel responded that he was "uncertain as to the exact departure date, but I believe in March."

- Also on January 28, 2016, Defendants' counsel responded to DirecTV's counsel by stating "It is unfortunate that the questions [the first Rule 30(b)(6) representative] was unable to answer included some related to the types of damages DirecTV seeks to recover. Had those questions been answered the way I had expected, this litigation would have concluded last month. I will not know whether DirecTV depos in the state cases will be needed until after the upcoming Federal deposition concludes.[1] BTW, DirecTV could, if [it] wanted to, still respond to the discovery I served on it in December, but which I later withdrew. That may also be a way to bring this case to a quicker resolution."

- Finally, on January 28, 2016, Defendants' counsel sent and emailed a Renewed Notice of 30(b)(6) Deposition on DirecTV for a deposition on February 10, 2016. Defendants' counsel had not received confirmation from DirecTV's counsel that the representative or counsel would be available that day. The Renewed Notice of Deposition was also served on counsel involved in two state court cases.

- The next day, DirecTV's counsel in the state court cases emailed Defendants' counsel to express his frustration regarding the Renewed Notice of Deposition. He noted that Defendants' counsel had not made "any attempt to coordinate calendars with the witness or counsel of record," and that he was not available on the date for which the deposition was noticed. Defendants' counsel responded that he was "endeavoring to determine a date that works for everyone," but "[g]iven that the local rule requires a 14 day notice, and that I am required to serve a notice [of] deposition in order to preserve a right [to] move to compel, I have to serve the notice first, and then try to work out a final date second."

- On January 31, 2016, Defendants' counsel emailed counsel for DirecTV asking that he identify dates he would be available for the deposition of the second Rule 30(b)(6) representative. Counsel for DirecTV responded by stating that DirecTV did not want the deposition to be part of the state court cases as well, and that "we understand you are seeking answers that may some way help your

---

[1] Defendants are involved in state court litigation related to insurance coverage for the events underlying this lawsuit.

client trigger coverage however our interests in the Federal case are not aligned with those of the state cases.  As such I am very concerned that we will simply repeat the confusing events of December when you improperly combined depositions without consent or appropriate Court order."

- On February 6, 2016, Defendants' counsel emailed DirecTV's counsel and stated "I've not received a response from you to my below offer to alter the date or time of the February 10 deposition of DirecTV's 30(b)(6) representative. Therefore, the deposition will proceed at the date and time originally noticed."

- DirecTV's counsel emailed Defendants' counsel on February 8, 2016, noting that the February 10 date for the renewed deposition did not work for most of the individuals involved, and addressing the substance of the deposition notice as well as some other matters.

- Later on February 8, 2016, Defendants' counsel emailed DirecTV's counsel stating that he expected the February 10 deposition to go forward because DirecTV had not responded to his requests for alternate dates, and addressing other matters.

- On February 10, 2016, DirecTV's counsel emailed Defendants' counsel and stated "I'd like to discuss the written interrogatories in lieu of a deposition with you, as we have been working toward the last two days between you, myself and [additional counsel for DirecTV]."  The email also reiterated that the February 10 deposition date did not work for either DirecTV or its counsel, and proposed several additional dates in February and March.

- Also on February 10, 2016, DirecTV's counsel emailed Defendants' counsel stating "We need to hear back from you as soon as possible regarding the attached interrogatories that you sent to our office yesterday.  If we are not able to come to an agreement re: written interrogatories in lieu of deposition testimony, please let us know your availability tomorrow and Friday for a call with Judge Baker to address [several matters]."  The email again proposed some dates for the renewed deposition.

- On February 11, 2016, Defendants' counsel sent a third set of interrogatories to counsel for DirecTV, "per our conversation."

- On February 18, 2016, counsel for DirecTV emailed Defendants' counsel and stated "Prior to our serving [interrogatory responses] on your office, please provide confirmation, in writing, that said interrogatories were served by your office and answered by our client outside of discovery, by agreement of the parties in lieu of the continued deposition of a representative of DIRECTV, LLC in person in Indianapolis in an effort to conserve attorney's costs and fees.  Although Judge Baker ordered that DIRECTV, LLC produce another representative for a follow-up Rule 30(b)(6) deposition in Indianapolis in his Order of

February 2, 2016, Judge Baker also discussed the possibility of written inter-rogatories in lieu of deposition testimony during the January 26, 2016 tele-phonic status conference."

- Later on February 18, 2016, Defendants' counsel responded to DirecTV's coun-sel that he did not "see a reason for a need for a confirmation" that the interrog-atories were served outside of discovery, and that he "never agreed" that the responses would be in lieu of a deposition. Defendants' counsel stated that he was not "going to agree to anything until I have the sworn answers in hand."

- DirecTV's counsel then responded stating "let's not complicate things 1 we will answer the Interrogatories 2 they are untimely 3 the deposition scheduled for prior to 2/16 is not proceeding and 4 you can move for a stay we take no posi-tion." Defendants' counsel responded "[s]o does that mean you are overnight-ing the answers to me?" DirecTV's counsel emailed and sent the interrogatory responses to Defendants' counsel the same day, with a cover letter stating that "four stipulations were identified" in DirecTV's counsel's February 18, 2016 email to Defendants' counsel, which Defendants agreed to, including "(1) DI-RECTV, LLC's agreement to answer the third set of interrogatories; (2) the fact that the interrogatories are untimely; [(3)] the parties' agreement that the depo-sition scheduled for prior to February 16, 2016 is not proceeding; and (4) that you can move for a stay as Plaintiff, DIRECTV, LLC takes no position as to same…."

- On February 21, 2016, Defendants' counsel emailed DirecTV's counsel stating that he "do[es] not agree with your 'four stipulations.'"

- On February 26, 2016, counsel for DirecTV emailed Defendants' counsel stat-ing that he had called Judge Baker's chambers that morning to "advise that the deposition of DIRECTV did not occur prior to February 16, 2016, as the parties had worked out an agreement regarding written interrogatories in lieu of same," and that he "was attempting to have you patched in when I was advised that the Judge would like us to prepare a short stipulation and get it on ECF as soon as possible." The email included an attached stipulation for Defendants' counsel's review. Defendants' counsel responded via email the same day, stating "I do not agree that 'the parties had worked out an agreement regarding written inter-rogatories in lieu of' the deposition," and that he "would be willing to agree not to oppose a motion to stay this action for 180 days so we can see if a settlement can be reached." DirecTV's counsel responded that the only issue at that point was the proposed stipulation, and that "[i]f you believe the language contained in the attached stipulation is not reflective of your understanding, then please provide proposed language."

- Having not received a response, DirecTV's counsel sent a follow-up email on March 10, 2016 asking for proposed revisions to the stipulation or permission to file it. On March 11, 2016, Defendants' counsel emailed DirecTV's counsel

offering to stipulate to only two facts: (1) "[t]hat Defendants properly noticed DTV for a deposition on 2-10-16"; and (2) "[t]hat DTV failed to appear at the deposition."

- DirecTV's counsel responded to Defendants' counsel's email later on March 11, 2016, stating "I am shocked that you are unwilling to simply put the parties' agreement of DIRECTV answering untimely interrogatories in lieu of the continued deposition of its representative into a stipulation, even at the direction of Judge Baker," and that "[t]he emails exchanged between my office and yourself clearly evidence this agreement and it is illogical to believe that DIRECTV would agree to answer interrogatories served out of time for any reason other than in lieu of an in-person deposition in Indianapolis; especially when this was the only outstanding issue in the case at the time and was suggested by Judge Baker during our call with the Court on January 26, 2016.  It's clear you are making this into a discovery dispute and denying the existence of the agreement that was clearly in place between the parties.  Therefore, please advise your availability for a call with Judge Baker next week."

- On March 18, 2016, Defendants' counsel emailed DirecTV's counsel advising that he intended to file "a Rule 37 motion based on DirecTV's failure to appear for its 30(b)(6) deposition as ordered by the Court."  DirecTV's counsel responded the same day that "our records reflect your position to be not only inaccurate but also patently false.  So for purposes of your motion please understand our position is we will oppose it vigorously should you even get leave of the Court to file same."

- On June 17, 2016, DirecTV's counsel emailed Defendants' counsel to memorialize a phone conversation they had that day, and to reiterate DirecTV's position that its agreement to answer the interrogatories outside of the discovery period was in lieu of the deposition.  Defendants' counsel responded "I never withdrew or agreed [to] withdraw the Notice of Deposition for the February 10, 2016 30(b)(6) deposition of DirecTV," and "I am confident that if you had any evidence to the contrary, you would have attached it to your email."  Defendants filed the Motion for Sanctions that same day.

[Filing No. 107-1 at 14-162.]

### B.  Standard of Review

A district court may only impose sanctions "where a party displays willfulness, bad faith, or fault."  *Am. Nat. Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc'y of the U.S.*, 406 F.3d 867, 877 (7th Cir. 2005).  "A district 'court [does not] possess[] unfettered discretion to impose sanctions upon a recalcitrant party.'…  Accordingly, the method for arriving at the sanction

- 6 -

must be fair…. The upshot is that, under the abuse of discretion standard, we will reverse a dis-

covery sanction if its imposition 'strikes us as 'fundamentally wrong,' or is 'clearly unreasonable,

arbitrary, or fanciful.'" *Id.* at 878 (citations omitted). "A dismissal with prejudice is a harsh

sanction which should usually be employed only in extreme situations, when there is a clear record

of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing."

*Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983). When the sanction is dismissal, "[m]is-

conduct may exhibit such flagrant contempt for the court and its processes that to allow the of-

fending party to continue to invoke the judicial mechanism for its own benefit would raise concerns

about the integrity and credibility of the civil justice system that transcend the interests of the

parties immediately before the court." *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir.

1993). Sanctions for discovery misconduct must be proportionate to the misconduct. *See Salgado

by Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998) (explaining that "the sanc-

tion selected [for discovery misconduct] must be one that a reasonable jurist, apprised of all the

circumstances, would have chosen as proportionate to the infraction").

Fed. R. Civ. P. 37(b) provides the Court with authority to sanction a party for failure to

comply with a Court order. Under Rule 37(b)(2), if a party disobeys a discovery order, the Court

can issue an order: (1) providing that "the matters embraced in the order or other designated facts

be taken as established for purposes of the action"; (2) "prohibiting the disobedient party from

supporting or opposing designated claims or defenses"; (3) "striking pleadings in whole or in part";

(4) staying proceedings until the order is obeyed; (5) dismissing the action or rendering a judgment

by default against the disobedient party; and (6) treating the disobedient party's failure to obey the

Court's order as a contempt of court. In addition, pursuant to Rule 37(b)(2)(C), the Court must

order the disobedient party, his attorney, or both, to pay the reasonable expenses, including attorneys' fees, caused by the failure.  Discovery sanctions under Rule 37 serve not only to penalize misconduct, but also to "deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

Under Fed. R. Civ. P. 30(d)(2), "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent."  "The ability to sanction a party…falls squarely within the discretion of the district court, which 'is in the best position to…settle any discovery disputes' that arise in litigation." *Ball v. Versar, Inc.*, 2005 WL 4881102, *2 (S.D. Ind. 2005) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996)).  It is well established that "district courts have 'wide latitude in fashioning appropriate sanctions.'" *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) (quoting *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999)).

Finally, the Court may exercise its "inherent power to fashion an appropriate sanction for conduct which abuses the judicial process." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) (citation and quotations omitted).  A Court's inherent authority to impose sanctions is used "when the situation is grave enough to call for [sanctions] and the misconduct has somehow slipped through the cracks of the statutes and rules covering the usual situations." *Claiborne v. Wisdom*, 414 F.3d 715, 724 (7th Cir. 2005).

## C.  Discussion

In support of their Motion for Sanctions, Defendants argue that they have been prejudiced by DirecTV's unwillingness to produce a 30(b)(6) representative as the Magistrate Judge ordered

because they are "unable to discover facts that [they] expect[] will show that it is undisputed that DirecTV authorized the receipt of the TV Programming it now alleges to have been 'intercepted.'" [Filing No. 103 at 11.]  They assert that entering judgment against DirecTV is an appropriate sanction, pursuant to either Fed. R. Civ. P. 37 or the Court's inherent authority, because DirecTV "did not object to the [discovery] order, serve any objection to the Notice of Deposition, or file a motion for protective order." [Filing No. 103 at 12.]  Defendants argue that DirecTV chose to ignore the Magistrate Judge's order to produce a witness, and that the Court should not allow DirecTV "to flaunt the rules and disrespect the Court…." [Filing No. 103 at 14.]  Defendants contend that they complied with Local Rule 37-1, and point to the numerous emails between their counsel and DirecTV's counsel. [Filing No. 103 at 15-16.]  They seek their attorneys' fees in connection with the Motion for Sanctions. [Filing No. 103 at 14-15.]

In response, DirecTV argues that Defendants are not prejudice by the lack of a deposition because Defendants' counsel had ample opportunity to question the first 30(b)(6) witness, and DirecTV also answered the third set of interrogatories "which were carefully chosen and drafted by Defendants' counsel." [Filing No. 107 at 9.]  DirecTV notes that the Magistrate Judge suggested the second deposition could be completed via interrogatories so that the questions could be drafted carefully, and that when DirecTV's counsel notified the Magistrate Judge's chambers that the parties had agreed to use interrogatories instead of a deposition, the Magistrate Judge "was fine" with that. [Filing No. 107 at 9-10.]  DirecTV asserts that the parties had agreed that it would answer interrogatories outside of the discovery period in lieu of a deposition, and that Defendants have used some of the interrogatory answers in their Cross-Motion for Summary Judgment. [Filing No. 107 at 10.]  It also notes that Defendants' counsel last brought up DirecTV's supposed failure to produce a corporate representative for the deposition on March 24, 2016, and did not file

the pending Motion for Sanctions until June 17, 2016 – three months after that last contact and just two weeks before Defendants' Motion for Summary Judgment was due.  [Filing No. 107 at 10.] DirecTV argues that entering judgment against it is not a proper sanction under either Rule 30 or Rule 37.  Specifically, it asserts that dismissal under Rule 30 is inappropriate because the Magistrate Judge suggested that DirecTV could answer interrogatories outside of the discovery period in lieu of a deposition, and that dismissal under Rule 37 is improper because it did not act willfully or in bad faith.  [Filing No. 107 at 11-14.]  DirecTV also argues that Defendants did not comply with Local Rule 37-1 because they failed to adequately raise the issue with the Court before filing the Motion for Sanctions, and because the only effort their counsel made to "meet and confer" was a June 17, 2016 phone call which took place on the same day the Motion for Sanctions was filed. [Filing No. 107 at 15-16.]

On reply, Defendants deny that they failed to confer with DirecTV's counsel regarding deposition dates.  [Filing No. 110 at 2.]  They also "vigorously deny" that any agreement was reached regarding DirecTV responding to interrogatories in lieu of the deposition, and note that DirecTV's counsel has not produced an email or letter memorializing such an agreement.  [Filing No. 110 at 3-4.] Defendants argue that their counsel raised the issue of filing a motion for sanctions during a March 24, 2016 telephonic conference with the Magistrate Judge.  [Filing No. 110 at 4-5.] Defendants also argue that they requested deposition dates from DirecTV numerous times, and eventually noticed the deposition for February 10 because it had to be completed by February 16 and Defendants had to give DirecTV fourteen days' notice.  [Filing No. 110 at 6.]  They assert that they need not show prejudice, but claim they did suffer prejudice because the interrogatories did not cover all of the topics that would have been addressed at a deposition.  [Filing No. 110 at 7.]

They reiterate their arguments that entering judgment against DirecTV is an appropriate sanction, and that they are entitled to their attorneys' fees. [Filing No. 110 at 8-9.]

The Court first considers whether Defendants satisfied their obligations under Local Rule 37-1 before filing the Motion for Sanctions. Local Rule 37-1 provides:

> **(a) Required Actions Prior to Court Involvement.** Prior to involving the court in any discovery dispute, including disputes involving depositions, counsel must confer in a good faith attempt to resolve the dispute. If any such dispute cannot be resolved in this manner, counsel are encouraged to contact the chambers of the assigned Magistrate Judge to determine whether the Magistrate Judge is available to resolve the discovery dispute by way of a telephone conference or other proceeding prior to counsel filing a formal discovery motion….
>
> **(b) Requirements of Motion to Compel.** In the event that the discovery dispute is not resolved at the conference, counsel may file a motion to compel or other motion raising the dispute. Any motion raising a discovery dispute must contain a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties. The court may deny any motion raising a discovery dispute that does not contain such a statement.

Defendants primarily rely upon the March 24, 2016 telephone conference with the Magistrate Judge to support its argument that it complied with Local Rule 37-1, arguing that their counsel emailed the Magistrate Judge's chambers before the conference and advised that "the Defendants desire to file a Rule 37 Motion due to DirecTV's failure to appear at its deposition," that the ECF entry references discussion of "related matters," and that their counsel's declaration confirms that a Motion for Sanctions was discussed during the telephone conference. [Filing No. 110 at 9-10.] But the Magistrate Judge's March 24, 2016 Order regarding the telephone conference states "Discussion held regarding settlement and related matters." [Filing No. 93.] It does not mention any specific discussion of a motion for sanctions related to the 30(b)(6) deposition. The Court is familiar with Magistrate Judge Baker's practices and procedures, and finds that if the parties had discussed a motion for sanctions at the telephonic conference, Magistrate Judge Baker would have

reflected that discussion in his entry from the conference.  In short, the record does not support Defendants' version of events and the Court finds that Defendants failed to comply with the letter and spirit of Local Rule 37-1.

While the Court could deny the Motion for Sanctions on that basis alone, it will also consider the substance of Defendants' motion.  This litigation has been very contentious, as further reflected by the nearly 150 pages in emails related to the second 30(b)(6) deposition.  After reviewing the lengthy exhibits related to the motion, the Court summarizes the events that led up to this motion as follows:

- Defendants' counsel unilaterally noticed the second 30(b)(6) deposition for February 10, 2016, without getting a response from DirecTV's counsel regarding availability;

- Defendants never formally withdrew the deposition notice, but suggested other dates for the deposition when it became clear that neither the witness nor all involved counsel were available;

- The parties began discussing the possibility of DirecTV answering a third set of interrogatories in lieu of the 30(b)(6) deposition, and DirecTV provided alternative dates for the deposition should it be necessary;

- Defendants served interrogatories on DirecTV, and DirecTV served responses to the interrogatories with the understanding that the responses were in lieu of the deposition; and

- After receiving the responses, Defendants' counsel refused to agree that the interrogatory responses were in lieu of a deposition, began pushing the idea of the deposition again, and eventually filed the pending motion nearly three months after counsels' last correspondence with each other regarding the deposition.

These events do not support the award of sanctions under Rule 37, Rule 30, or the Court's inherent authority.

First, Rule 37 contemplates sanctions where a party has violated a prior order.  Fed. R. Civ. P. 37(b)(2)(B) (providing for the award of sanctions when a party fails to comply with a court order relating to producing an individual for a deposition).  Here, the Magistrate Judge specifically

contemplated that a deposition might be avoided if DirecTV agreed to answer additional interrogatories. [*See* Filing No. 107-1 at 3-4 (DirecTV's counsel stating in his Declaration that "[a]lthough Judge Baker ordered that DIRECTV produce a 30(b)(6) witness within 21 days, he also indicated during the call that perhaps this dispute could be resolved by written interrogatories in lieu of a second deposition"; Defendants have not disputed that this occurred).] Moreover, Defendants' counsel himself brought up the possibility of interrogatory responses in lieu of a deposition in an email to DirecTV's counsel. [*See* Filing No. 107-1 at 40 (Defendants' counsel stating in an email to DirecTV's counsel "BTW, DirecTV could, if [it] wanted to, still respond to the discovery I served on it in December, but which I later withdrew. That may also be a way to bring this case to a quicker resolution").] The circumstances here do not indicate that DirecTV violated a Court order.

Second, Rule 30(d)(2) provides that the Court may impose sanctions "on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). The communications between the parties indicate to the Court that DirecTV's counsel believed Defendants' counsel had agreed to accept interrogatory responses in lieu of conducting another deposition. Further, communications also indicate that DirecTV's counsel advised Defendants' counsel that neither the witness nor all involved counsel were available for a deposition on February 10, and provided some alternate dates. These events do not support the notion that DirecTV somehow impeded, delayed, or frustrated the fair examination of the 30(b)(6) witness.

Finally, the Court declines to award sanctions under its inherent authority. As discussed above, the Court finds that DirecTV had a good faith belief – based on discussions among counsel – that Defendants were willing to forego the 30(b)(6) deposition in lieu of responses to interrogatories served outside of the discovery deadline. Additionally, Defendants' counsel's conduct was

- 13 -

not stellar, beginning with unilaterally setting the deposition before obtaining input from Di-
recTV's counsel regarding witness and counsel availability, and ending with filing the pending
motion nearly three months after last discussing the issue with DirecTV's counsel, and without
complying with Local Rule 37-1.

Put simply, the circumstances indicate at best a misunderstanding between counsel regard-
ing the significance of the interrogatory responses and, at worst, Defendants' counsel's use of the
pending motion as a defense tactic. The Court does not find any sanctionable conduct on the part
of DirecTV or its counsel, and the Motion for Sanctions is **DENIED** in its entirety.

## II.
### CROSS-MOTIONS FOR SUMMARY JUDGMENT

DirecTV has moved for summary judgment against all Defendants only on Count I of the
Amended Complaint, for violations of 47 U.S.C. § 605, and only as to liability. [*See* Filing No.
80 at 17-18.] Defendants have cross-moved for summary judgment on all of DirecTV's claims.
[*See* Filing No. 106 at 4.]

### A. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because
there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment
as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear,
whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the
asserted fact by citing to particular parts of the record, including depositions, documents, or affi-
davits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials
cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot
produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or decla-
rations must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. Hampton v. Ford Motor Co., 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. Harper v. Vigilant Ins. Co., 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. Johnson v. Cambridge Indus., 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. Nelson v. Miller, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. Darst v. Interstate Brands Corp., 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. O'Leary v. Accretive Health, Inc., 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to

the summary judgment motion before them," *Johnson*, 325 F.3d at 898.  Any doubt as to the ex-

istence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension*

*Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not, however, imply that there

are no genuine issues of material fact."  *R.J. Corman Derailment Servs., LLC v. Int'l Union of*

*Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003).  Specifically, "[p]arties have different

burdens of proof with respect to particular facts; different legal theories will have an effect on

which facts are material; and the process of taking the facts in the light most favorable to the non-

movant, first for one side and then for the other, may highlight the point that neither side has

enough to prevail without a trial."  *Id.* at 648.

### B.  Evidentiary Issues

The parties have raised several evidentiary issues in their briefs and, because the outcome

of those issues may effect which facts the Court will consider in connection with the cross-motions

for summary judgment, the Court must consider and resolve those issues at the outset.  Specifi-

cally, Defendants object to the consideration of the Affidavit of Kent Mader and the Affidavit of

Julie Lonstein, and DirecTV objects to the consideration of the Declaration of Craig Spencer.  The

Court will address each objection in turn.

#### 1.  *Affidavit of Kent Mader*

Kent Mader is the Vice President of Risk Management for DirecTV, [Filing No. 79-9 at

2], and was the corporate representative that DirecTV initially produced as its 30(b)(6) witness –

and who the Magistrate Judge found to have provided deficient responses in his deposition, [Filing

No. 85].  Defendants argue that the Affidavit "purports to proffer testimony on topics for which

DirecTV failed to produce a prepared Rule 30(b)(6) corporate representative."  [Filing No. 106 at

6.]  Defendants reference their Motion for Sanctions, addressed above, and argue that the Court could impose the lesser sanction of barring DirecTV from relying on Mr. Mader's testimony, but still allowing Defendants to do so.  [Filing No. 106 at 6.]

DirecTV responds by incorporating the arguments it set forth in response to Defendants' Motion for Sanctions, and by arguing that even if the Court were to disregard Mr. Mader's Affidavit, the remaining evidence would still show that DirecTV is entitled to summary judgment as to liability on its claim under 47 U.S.C. § 605.  [Filing No. 112 at 4.]

On reply, Defendants argue that DirecTV's response is inadequate, and that the Motion for Sanctions "should logically…be decided before ruling on the summary judgment motions."  [Filing No. 114 at 4.]

As discussed above, the Court has found that DirecTV did not engage in any sanctionable conduct related to Mr. Mader – either in connection with his first deposition, or regarding a second deposition of a 30(b)(6) representative.  Defendants have not set forth any other valid reason for excluding Mr. Mader's Affidavit, and the Court will consider it when evaluating the Cross-Motions for Summary Judgment.

### 2.  *Affidavit of Julie Lonstein*

Julie Lonstein is counsel for DirecTV, and submitted an Affidavit which summarizes the events that have taken place in this litigation.  [Filing No. 79-10.]  Defendants argue that the Court should not consider Ms. Lonstein's Affidavit because it does not qualify as a sworn declaration under 28 U.S.C. § 1746 since it does not recite that its contents are "true and correct" or state the date on which it was executed, and that it does not have a handwritten notary signature as required by Local Rule 5-7 and New York Executive Law § 137.  [Filing No.106 at 6-7.]  Defendants cite

a case from the Western District of Louisiana where the court found that a similar affidavit submitted by Ms. Lonstein was "incompetent summary judgment evidence." [Filing No. 106 at 7.]

DirecTV responds that Ms. Lonstein's Affidavit is a sworn statement, so she need not recite that its contents are true and correct or state the date on which it was executed because 28 U.S.C. § 1746 only applies to unsworn declarations. [Filing No. 112 at 5.] DirecTV also notes that the Affidavit does reflect the date on which it was signed. [Filing No. 112 at 5.] DirecTV argues that Local Rule 5-7 allows for electronic signatures for documents relating to a pleading, motion, brief, or notice filed electronically so the notary's signature need not be handwritten, and that the signature complies with New York Executive Law § 137. [Filing No. 112 at 5.]

On reply, Defendants argue that New York law requires a "handwritten" notary signature, which does not appear on Ms. Lonstein's Affidavit, so the Affidavit is not properly notarized. [Filing No. 114 at 5.]

The parties appear to agree that the Lonstein Affidavit is a sworn declaration, so is not subject to 28 U.S.C. § 1746. [*See* Filing No. 112 at 5; Filing No. 114 at 5 ("[Defendants] agree[] with DirecTV's concession that the Lonstein affidavit was 'not within the parameters of' 28 U.S.C. § 1746").] The Court notes that Local Rule 5-7 does not specifically address whether the signature of a notary on a document filed electronically under an attorney's ECF log-in and password (as the Lonstein Affidavit was) must be handwritten. But the Court need not decide whether the Lonstein Affidavit complies with Local Rule 5-7, or with New York Executive Law § 137. The Affidavit simply sets forth the procedural history of this case, and the Court suspects that submitting such an affidavit may be a requirement in some jurisdictions when a party moves for summary judgment. It is not a requirement in this District, however, and the Court need not and will not consider it. Accordingly, Defendants' objections to the Lonstein Affidavit are moot.

### 3. Declaration of Craig Spencer

Craig Spencer is the owner and president of Superior Antenna Systems ("Superior"), which is an authorized DirecTV dealer. [Filing No. 111-1 at 1-2.] Mr. Spencer assigned the subcontractors that installed the DirecTV systems at Defendants' properties that are the subject of this litigation. [Filing No. 111-1 at 2-3.] DirecTV objects to the admissibility of Mr. Spencer's June 20, 2016 Declaration, [Filing No. 105-4], arguing that: (1) it is "virtually a carbon copy" of Mr. Spencer's September 25, 2015 Declaration that Defendants' counsel drafted and had Mr. Spencer sign immediately after his deposition – which has now been stricken because the parties could not stipulate to the admissibility of portions of the transcript; and (2) it contradicts prior sworn testimony and "was introduced as a sham declaration in Defendants' attempt to create an issue of fact." [Filing No. 112 at 6.] DirecTV further requests that if the Court does not strike the entire Declaration, it disregard or strike the portions that are hearsay or are inconsistent with Mr. Spencer's earlier deposition. [Filing No. 112 at 6.] DirecTV goes on to detail what it claims are inconsistencies between the Spencer Declaration and Mr. Spencer's deposition testimony. [Filing No. 112 at 7-13.] DirecTV argues that a party cannot create "sham" issues of fact with affidavits that contradict their prior depositions. [Filing No. 112 at 13.]

Defendants respond by arguing that although they submitted the Spencer Declaration in support of their response and Cross-Motion for Summary Judgment, all citations to Mr. Spencer's statements are to his deposition testimony, and not to his June 20, 2016 Declaration. [Filing No. 114 at 5.] Defendants assert that DirecTV's objections to the Spencer Declaration are "moot as that Declaration was not cited or relied upon by MCI." [Filing No. 114 at 5.]

Defendants have conceded that the Spencer Declaration is "superfluous," and that they are not relying upon it in connection with their response to DirecTV's Motion for Summary Judgment

or their Cross-Motion for Summary Judgment.  [Filing No. 114 at 5.]  Accordingly, the Court will

not address the inconsistencies that DirecTV sets forth, but rather will simply exclude the Spencer

Declaration from consideration as it is not cited in Defendants' briefs.

    With these evidentiary issues resolved, the Court goes on to address the substance of the

Cross-Motions for Summary Judgment.

## C.  Statement of Facts

    The following statement of facts was evaluated pursuant to the standards set forth above

and in light of the Court's evidentiary rulings.[2]

### 1.  DirecTV's Business

    DirecTV is a direct broadcast satellite service, offering more than 225 channels of televi-

sion and other programming to more than 20 million customers throughout the United States.  [Fil-

ing No. 79-9 at 3.]  The satellite programming DirecTV offers includes major cable networks, local

stations, studio movies, special events programming, and a variety of sports and other special in-

terest programming.  [Filing No. 79-9 at 3.]  DirecTV offers its television programming to resi-

dential and business customers on a subscription and pay-per-view basis only, and in order to

receive the programming, each customer must obtain DirecTV satellite hardware which includes

---

[2] Defendants argue that DirecTV did not include a section labeled "Statement of Material Facts in
Dispute" in its response to Defendants' Cross-Motion for Summary Judgment.  [Filing No. 114 at
3-4.]  The Court notes, however, that DirecTV included a section in its response titled "Defend-
ants' Alleged 'Facts,'" which responds to each of the facts Defendants set forth in their Cross-
Motion for Summary Judgment.  [See Filing No. 112 at 14-19; see also Filing No. 112 at 21-25
(responding to other factual allegations in Defendants' response/cross-motion brief).]  This sec-
tion, for all intents and purposes, is DirecTV's "Statement of Material Facts in Dispute," although
it is not labeled as such.  Defendants also argue that DirecTV has not cited to evidence for each
fact it has set forth in the fact and argument sections of its brief.  [Filing No. 114 at 3.]  The Court
notes that all of the parties must support the facts they assert with citations to admissible, record
evidence, Fed. R. Civ. P. 56(c)(1)(A), and the Court will only set forth and consider facts which
are supported by such citations.

a small satellite dish and a DirecTV integrated receiver/decoder with a DirecTV Access Card. [Filing No. 79-9 at 3.] Each customer must also establish an account with DirecTV. [Filing No. 79-9 at 3.] DirecTV sells and distributes the satellite equipment necessary to receive DirecTV programming and, upon activation of the Access Card by DirecTV, the customer can receive and view the channels to which the customer has subscribed. [Filing No. 79-9 at 3.]

DirecTV charges subscription fees for both residential and commercial programming, and commercial programming subscriptions are generally more expensive than residential subscriptions. [Filing No. 79-9 at 4.] Residential and commercial subscribers use the same satellite receiving equipment, however, which can lead to commercial establishments moving satellite receiving equipment from a residence to a commercial establishment in order to receive commercial programming at the lower residential programming rate. [Filing No. 79-9 at 4.] In order to combat commercial misuse of its programming signals, DirecTV uses investigators and auditors who help to identify commercial establishments that are unlawfully exhibiting DirecTV residential programming in a commercial setting. [Filing No. 79-9 at 4-5.]

### 2. The Spinas' Involvement With MCI

Defendants Victor Spina and William Spina are brothers and co-owners of MCI. [Filing No. 105-2 at 1.] Victor is the President of MCI, and William is the Vice President or Secretary. [Filing No. 79-20 at 2-3.] The only shareholders in MCI are Victor and William Spina. [Filing No. 79-20 at 3.] MCI is a franchisee of Texas Corral. [Filing No. 79-20 at 5.]

In 2009, MCI opened Martinsville Texas Corral, a Texas Corral franchise and commercial bar/restaurant located at 610 Birk Road in Martinsville, Indiana. [Filing No. 105-1 at 1.] MCI opened a second Texas Corral franchise, Shelbyville Texas Corral, in 2011. [Filing No. 105-1 at 2.] Shelbyville Texas Corral was located at 2103 Intelliplex Drive in Shelbyville, Indiana. [Filing

No. 105-1 at 2.]  Both Martinsville Texas Corral and Shelbyville Texas Corral (collectively, the "Restaurants") were located in buildings that had previously been restaurants.  [Filing No. 105-1 at 1-2.]  Neither Victor nor William managed the Restaurants.  [Filing No. 105-1 at 5.]  Rather, each restaurant has its own general manager.  [Filing No. 105-1 at 5.]  When MCI hired managers for the Restaurants, William made the hiring decisions.  [Filing No. 79-20 at 7.]

### 3.  DirecTV Installation at the Restaurants

When MCI opened the Martinsville Texas Corral in 2009, it wanted televisions in the restaurant so William contacted DirecTV's local office.  [Filing No. 105-1 at 1.]  DirecTV's representative at the local office was Craig Spencer, who installed DirecTV through his business, Superior.  [Filing No. 105-1 at 1.]  Superior is an authorized agent for DirecTV.  [Filing No. 105-6 at 5-6.]  Mr. Spencer and the Spinas went to school together, and have known each other for at least thirty years.  [Filing No. 105-6 at 8; Filing No. 105-6 at 11.]  Mr. Spencer agreed to outfit Martinsville Texas Corral with a DirecTV antenna and DirecTV receivers, and to set up a DirecTV subscription.  [Filing No. 105-1 at 1.]  Superior, through a subcontractor, completed the installation at Martinsville Texas Corral before the restaurant opened for business, and set up a subscription service.  [Filing No. 105-1 at 1.]  Mr. Spencer told William that "the subscription package he signed us up for was proper and appropriate for the restaurant, and that we were authorized to receive and display to the public the DirecTV signals at the restaurant…."  [Filing No. 105-1 at 1.]

In 2011, when MCI opened the Shelbyville Texas Corral, it again contacted Mr. Spencer to have DirecTV installed at the restaurant.  [Filing No. 105-1 at 2.]  Again, Superior had a subcontractor go to Shelbyville Texas Corral to install the DirecTV receivers before the restaurant opened for business.  [Filing No. 105-1 at 2.]

After the installations at the Restaurants were complete, MCI was using ten DirecTV receivers total:  seven at Martinsville Texas Corral (six used for television, and one for music only); and three at Shelbyville Texas Corral (two used for television, and one for music only).  [Filing No. 105-1 at 2.]

### 4.  *DirecTV Investigates Usage of DirecTV Programming at the Restaurants and Discontinues Service*

In mid-2014, DirecTV engaged the services of an auditor, Kevin Karlak, to determine whether DirecTV satellite programming was properly being displayed at the Restaurants.  [Filing No. 79-9 at 4-5.]  On June 3, 2014, Mr. Karlak visited Martinsville Texas Corral and observed six television sets, with four of them exhibiting DirecTV satellite programming for public viewing.  [Filing No. 79-9 at 5.]  The four televisions were displaying DirecTV channel 212 – NFL Network programming – and Mr. Karlak also observed a DirecTV receiver behind a television, a DirecTV remote control, a DirecTV information banner or black banner at the top of the screen, and a DirecTV receiver with identification number 029417397394.  [Filing No. 79-9 at 5.]  At the time of Mr. Karlak's visit, there were other individuals (either customers or employees) in the restaurant.  [Filing No. 79-3 at 00:37 seconds.][3]

On June 4, 2014, Mr. Karlak visited Shelbyville Texas Corral and observed two television sets, with one of them displaying DirecTV satellite programming for public viewing.  [Filing No. 79-9 at 5.]  The television was displaying DirecTV channel 206 – ESPN programming – and Mr. Karlak also observed a DirecTV receiver under a television, a partial DirecTV receiver with identification number 247171, and the black DirecTV information banner at the top of the screen.

---

[3] Filing No. 79-3 is a video disc that was manually filed with the Court.

[Filing No. 79-9 at 5.]  At the time of Mr. Karlak's visit, there were other individuals (either customers or employees) in the restaurant.  [Filing No. 79-6 at 00:24 and 00:33 seconds.][4]

When DirecTV received the auditor's reports, it searched its records to determine whether the Restaurants had DirecTV commercial accounts and learned that they did not.  [Filing No. 79-9 at 6.]  DirecTV determined, however, that the receivers used in the Restaurants were associated with DirecTV residential account number 045448353, which is under the name Victor Spina for service at a residential address located at 785 East Timber Drive in Martinsville.  [Filing No. 79-9 at 6.]  Account number 045448353 was purchased at a residential rate.  [Filing No. 79-9 at 6.]

The invoices that DirecTV provided for account number 045448353 were addressed to Victor Spina, "For Service at: 785 E. Timber Dr. Martinsville, IN 46151-8391."  [Filing No. 105-1 at 3.]  The invoices do not indicate whether the account is "residential" or "commercial" and, for the June 21, 2014 invoice, indicated that service was for ten televisions and totaled approximately $162 for monthly service.

DirecTV's billing records also indicate that account number 045448353 was in Victor Spina's name, and list the address as 785 E. Timber Dr., Martinsville, IN.  [Filing No. 79-8 at 2.]  DirecTV's records list the following locations for the DirecTV receivers that are associated with account number 045448353: "living rm, office, kids rm, master bed, garage, basement, guest bed, kids rm, garage, and loft."  [Filing No. 79-8 at 11-16.]  Neither the invoices nor DirecTV's billing records list MCI as the account holder, or list the addresses of either of the Restaurants.  [*See* Filing No. 105-1 at 3; Filing No. 79-8.]

On June 30, 2014, DirecTV discontinued programming service for account number 045448353.  [Filing No. 79-9 at 6.]

---

[4] Filing No. 79-6 is a video disc that was manually filed with the Court.

### 5.  *The Lawsuit*

DirecTV initiated this action on January 26, 2015, [Filing No. 1],[5] and filed the operative First Amended Complaint on February 6, 2015, [Filing No. 7].  In the Amended Complaint, DirecTV alleges claims against MCI and the Spinas for: (1) violations of the Federal Communications Act, 47 U.S.C. § 605(e)(3)(C); and (2) violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511.[6]  [Filing No. 7 at 7-9.]  DirecTV seeks a declaration that Defendants violated 47 U.S.C. § 605 and 18 U.S.C. § 2511; an injunction preventing Defendants from interfering with DirecTV's proprietary rights, intercepting, receiving, divulging, or displaying DirecTV's satellite programming without prior written consent of DirecTV, and further violations; statutory or actual damages; punitive damages; and attorneys' fees.  [Filing No. 7 at 11.]

## D.  Discussion

### 1.  *Violation of 47 U.S.C. § 605*

DirecTV moves for summary judgment only as to liability for § 605 violations.  [*See* Filing No. 80 at 17-18.]  Defendants cross-move for summary judgment on DirecTV's § 605 claim, arguing that they are not liable for § 605 violations, nor is DirecTV entitled to damages.  [*See* Filing No. 106 at 4-5.]

47 U.S.C. § 605 addresses several types of unauthorized practices related to the use of electronic communications.  As one court has explained:

---

[5] DirecTV originally filed this lawsuit only as to the auditor's investigation at Shelbyville Texas Corral, and filed a separate lawsuit, 1:15-cv-00105-TWP-TAB, related to the auditor's investigation at Martinsville Texas Corral.  The two lawsuits were consolidated under this case number on July 6, 2015.  [Filing No. 33.]

[6] DirecTV also asserted a claim for civil conversion in the Amended Complaint, but the Court adopted the Magistrate Judge's Report and Recommendation which recommended granting Defendants' Motion to Dismiss as it related to the conversion claim.  [Filing No. 43.]

The Act lists several types of unauthorized publication or use of electronic communications, setting forth separate prohibitions in each sentence. 47 U.S.C. § 605(a). The first sentence states:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception…to any person other than the addressee, his agent, or attorney….

The second sentence of § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.

The third sentence provides:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Finally, the fourth sentence provides:

> No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

*Joe Hand Promotions, Inc. v. That Place, LLC*, 2012 WL 2525653 (E.D. Wis. 2012) (citations omitted). 47 U.S.C. § 605(e)(3) provides a private right of action under the statute for "[a]ny person aggrieved by any violation of subsection (a)…." 47 U.S.C. § 605(e)(3). § 605(d)(6) defines "any person aggrieved" as "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming…." 47 U.S.C. § 605(d)(6).

It is not entirely clear which sentence of § 605 DirecTV is relying on to support its claim, however it discusses sentence one in the most detail. [*See* Filing No. 112 at 20 (DirecTV relying on the first sentence of § 605 to argue that "even if the Court accepts as true that Defendants' initial receipt of the DIRECTV satellite programming [was authorized], the fact that said programming was divulged constitutes a violation of this section").] Further, MCI addresses DirecTV's § 605 claim as if it is brought under sentence one. [Filing No. 114 at 12 (MCI arguing that DirecTV relies only upon sentence one of § 605).]

Under sentence one of § 605, a plaintiff need not show that the defendant was not authorized to receive the transmission, but need only show that the divulgence of the transmission was unauthorized. *That Place, LLC*, 2012 WL 2525653 at *2-3 ("While the second and fourth sentences of § 605(a) require both an unauthorized 'interception' and a divulgence of the transmission in order to establish liability under the Act, the first and third sentences of § 605(a) do not similarly require an 'interception' and simply proscribe the unauthorized divulgence or use of communications which have been 'received' legally for certain purposes...."). Additionally, a plaintiff need not show that the defendant knew he was violating sentence one of § 605. *Id.* ("Although sentence four of the Act requires knowledge of the interception, sentences one, two, and three of the Act do not require a knowing violation... In other words, there is no *mens rea* or *scienter* element for violations of sentences one, two and three of the Act.... Therefore, intent is immaterial to liability[; ]...the statute imposes liability even when 'the violator was not aware and had no reason to believe that his acts constituted a violation.'... As such, knowledge is relevant to a party's damages, not his liability....") (citations omitted) (emphasis in original). The plaintiff has the burden of proving that a defendant has violated § 605. *See Joe Hand Promotions, Inc. v. Scarborough*, 2014 WL 2475980, *1 (N.D. Tex. 2014) (plaintiff had burden of proof on a § 605 claim and "to obtain

summary judgment it 'must establish 'beyond peradventure all of the essential elements of the claim''").

The Court will first address DirecTV's claim that MCI violated § 605, then it will discuss the claim that the Spinas are vicariously liable for MCI's § 605 violations.[7]

### a.  MCI's Direct Liability[8]

MCI sets forth four main arguments to support its contention that it did not violate § 605: (1) that DirecTV does not have a private right of action under the statute because it has not presented evidence that it is a "person aggrieved"; (2) that MCI was authorized to receive DirecTV's programming through account number 045448353; (3) that DirecTV has not presented evidence that its programming was actually divulged to the public on June 3 or June 4, 2014; and (4) that, in any event, it was authorized to divulge that programming.  The Court considers each argument in turn.

### i.    "Person Aggrieved"

In opposition to DirecTV's Motion for Summary Judgment and in support of its Cross-Motion, MCI argues that DirecTV has not presented any evidence that it was aggrieved by any violation of § 605, and that in fact it was not because all invoices for the receivers located at the Restaurants were paid in full.  [Filing No. 106 at 13; Filing No. 106 at 18-19.]

---

[7] The Court prefaces its discussion by noting that the parties' briefs were organized in a somewhat haphazard way, often addressing elements of a § 605 violation in connection with DirecTV's Motion for Summary Judgment, and then addressing those same elements later in their briefs in connection with Defendants' Cross-Motion for Summary Judgment.  This organization made the Court's review of the pending motions unnecessarily cumbersome, and the Court has done its best to match up each party's arguments with the appropriate counter-arguments.

[8] DirecTV refers to "Defendants" when it initially discusses its § 605 claim, and then goes on to address the Spinas' vicarious liability for § 605 violations.  [See Filing No. 80 at 10-17.]  Based on DirecTV's arguments, the Court assumes that DirecTV is alleging a direct claim against MCI for § 605 violations, and a vicarious liability claim against the Spinas based on MCI's violations.

DirecTV responds that it is aggrieved because Defendants paid for one residential account, and should have paid for two more-expensive commercial accounts.  [Filing No. 112 at 32-33.] DirecTV also argues that its "proprietary rights" in its programming have been impaired.  [Filing No. 112 at 33.]

In its reply, MCI reiterates its argument that DirecTV has not presented any evidence that it is aggrieved.  [Filing No. 114 at 10.]

The Court finds that DirecTV has adequately shown that it is a "person aggrieved" under § 605.  DirecTV's Vice President of Risk Management, Kent Mader, summarized in his Affidavit the nature of DirecTV's programming (*e.g.*, that customers must pay for the right to view that programming), and stated that "[t]he unauthorized use of DIRECTV programming through fraudulent conduct has a negative effect upon DIRECTV and lawful commercial customers.  Furthermore, commercial misappropriation of DIRECTV residential programming results in significant loss of revenue and places legitimate commercial subscribers at a disadvantage by having to compete with businesses like Martinsville Texas Corral and Shelbyville Texas Corral who unlawfully acquire DIRECTV Satellite Programming without paying the commercial rates."  [Filing No. 79-9 at 7.]  MCI has not disputed these statements, and the Court finds that they are sufficient to establish the DirecTV is a "person aggrieved" under § 605.  *See Directv, Inc. v. Barczewski*, 604 F.3d 1004, 1005 (7th Cir. 2010) ("DIRECTV is a 'person aggrieved' entitled to sue under § 605"); *DirecTV, Inc. v. Randy Borow*, 2005 WL 43261, *4 (N.D. Ill. 2005) ("The loss of revenue alone is enough to classify [DirecTV] as an aggrieved party").

ii.     Unauthorized Receipt

In support of its Motion for Summary Judgment, DirecTV argues that § 605 is a strict liability statute, and MCI "did not receive proper authorization from DIRECTV for the right to

exhibit DIRECTV Satellite Programming in a commercial establishment." [Filing No. 80 at 13.] DirecTV asserts that § 605 does not require a knowing violation but, in any event, MCI willfully and knowingly violated § 605 because there was no DirecTV commercial account for the Restaurants, and the services associated with account number 045448353 were purchased at a residential rate. [Filing No. 80 at 13-14.] DirecTV argues that "using equipment activated on a residential account within commercial establishments was intentional and done for commercial gain, and required scheming and overt acts, justifying the imposition of the maximum statutory damages under the Communications Act." [Filing No. 80 at 14.]

MCI responds by arguing that DirecTV has not produced any evidence that MCI used an "unauthorized channel of reception" to receive DirecTV programming or that, at the very least, such fact is disputed. [Filing No. 106 at 10-13; Filing No. 106 at 16-18.] MCI contends that it received DirecTV programming through receivers that DirecTV owned, installed, and authorized. [Filing No. 106 at 17.] MCI also asserts in support of its Cross-Motion for Summary Judgment that neither it nor the Spinas intentionally intercepted DirecTV programming, because they were told by the DirecTV representatives that performed the installation that "the receipt and display of DirecTV communications on the televisions connected to DirecTV receivers at the restaurants was authorized." [Filing No. 106 at 14.]

On reply and in response to Defendants' Cross-Motion for Summary Judgment, DirecTV argues that Defendants did not receive proper authorization from DirecTV for the right to exhibit DirecTV programming at a commercial establishment, but rather that the account was a residential one allowing Victor Spina to receive DirecTV satellite programming at the service address on the invoice. [Filing No. 112 at 20-21.]

In its reply in support of its Cross-Motion for Summary Judgment, MCI argues that Di-recTV has not established that it violated § 605 because not having an "account" is not an element of a § 605 violation – what is relevant is whether receipt of DirecTV's programming was author-ized, and it was because DirecTV's "system installer" told MCI that the receipt and display of DirecTV programming on the receivers they installed at the Restaurants was authorized.  [Filing No. 114 at 7.]  MCI asserts that DirecTV has not presented any evidence that having a commercial account is the exclusive method by which it was authorized to receive and publicly display Di-recTV programming.  [Filing No. 114 at 16.]  MCI also contends that DirecTV has not detailed what records it searched to determine whether MCI was authorized to receive DirecTV program-ming, how the search was done, whether the search would have uncovered closed or just current accounts, and whether DirecTV creates an account every time it authorizes others to view or dis-play its programming.  [Filing No. 114 at 7.]  MCI argues that MCI's address of 1925 PO Box, Martinsville, IN appears on a document provided by DirecTV.  [Filing No. 114 at 10 (citing Filing No. 105-8 at 1.]  It acknowledges that "[n]either party has been able to find any signed agreement between DirecTV and MCI," but argues that such an agreement would only support a possible breach of contract claim, not a claim under § 605.  [Filing No. 114 at 12.]

DirecTV need not show that MCI was not authorized to receive its programming, or some-how intercepted it, to prevail on a claim under sentence one of § 605.  *See That Place, LLC*, 2012 WL 2525653 at *2-3 ("the first and third sentences of § 605(e) do not…require an 'interception' and simply proscribe the unauthorized divulgence or use of communications which have been 'received' legally for certain purposes").  However, because it is a bit unclear which sentence of § 605 DirecTV is proceeding under, and since a sentence two violation does require an unauthorized receipt, *id.*, the Court will discuss this issue.

Here, the undisputed facts indicate that MCI did not have a commercial account with DirecTV, let alone any type of account.  Account number 045448353, which the parties agree is the account associated with the DirecTV receivers located within the Restaurants, was associated with Victor Spina, for services at a residential address.  [*See* Filing No. 79-9 at 6.][9]  Accordingly, MCI was not "authorized" to receive DirecTV programming at the Restaurants through account number 045448353 – the only account Defendants rely on to support their argument.  *See DirecTV, LLC v. Kaser*, 2014 WL 3735237, *2 (E.D. Mich. 2014) (defendant company which had a residential account in owner's name but displayed DirecTV programming at commercial establishment was not authorized to receive communication and was liable under § 605); *J&J Sports Productions, Inc. v. Dabrowski*, 2015 WL 9304347, *3 (N.D. Ill. 2015) (where defendant allegedly had only a residential account but displayed programming in commercial establishment, court stated "[w]hichever method obtained the broadcast of the Program, it is undisputed that [the defendant restaurant] displayed the Program and failed to pay the proper fee for commercial use of the broadcast.  This fact alone is enough for summary judgment in favor of [plaintiff]").  The Court finds that MCI was not authorized to receive DirecTV programming.  MCI did not have an account with DirecTV, and the account listed under Victor Spina's name was a residential account which was not associated with the Restaurants.

---

[9] The Court does not find it relevant that the invoice may have been sent to MCI's post office box.  [*See* Filing No. 105-8 at 1 (DirecTV billing record reflecting "Billing address" as a post office box associated with MCI).]  The same document that lists MCI's address as the billing address also lists the "Service address" as the residence located at 785 E. Timber Dr., Martinsville, IN.  [Filing No. 105-8 at 1.]  Where service is supposedly being provided is the significant fact – not where the invoice is being sent.

iii.   Divulgence to the Public

MCI argues that there is no evidence that the DirecTV programming the auditor observed on June 3 and June 4, 2014 was ever divulged or published to anyone, and that the auditor was the only individual who saw the programming and was authorized to do so because he was hired by DirecTV.  [Filing No. 106 at 5; Filing No. 106 at 15.]

DirecTV responds that it has submitted video evidence that patrons and employees were present in the Restaurants when the auditor observed DirecTV programming being played.  [Filing No. 112 at 29-30.]

On reply, MCI argues DirecTV has not presented evidence that its programming was actually divulged to the public because even though patrons and employees may have been present on June 3 and June 4 when the auditor witnessed the programming, that does not show that the programming was divulged or exhibited to them, or "that any TV displaying DirecTV signals was even in a location visible to whomever was present."  [Filing No. 114 at 14.]

The Court has reviewed the video evidence submitted by DirecTV, and both discs show that at least one other person was present when the auditor viewed the DirecTV programming.  [Filing No. 79-3 at 00:37 seconds; Filing No. 79-6 at 00:24 seconds and 00:33 seconds.]  Moreover, the Spinas stated in their Declarations that they were not present at the Restaurants on either June 3 or June 4, 2014.  [Filing No. 105-1 at 5; Filing No. 105-2 at 1.]  Presumably at least one

employee must have been present at the Restaurants when the auditor was there, since the Restaurants were open for business.[10]  DirecTV has sufficiently established that its programming was divulged to the public during the auditor's visits on June 3 and June 4, 2014.

iv.      Unauthorized Divulgence

Finally, MCI argues that, in any event, even if it divulged DirecTV programming to the public, it was authorized to do so because it was authorized to receive that programming.

DirecTV contends that even if the residential account was associated with the addresses of the Restaurants, authorizing them to receive the DirecTV programming there, they still did not have the right to divulge that programming.  [Filing No. 112 at 21.]  DirecTV reiterates its arguments related to unauthorized receipt, emphasizing that MCI "at no point had an account with DIRECTV, either residential, or commercial."  [Filing No. 112 at 30-31.]

On reply, MCI focuses on its argument that it was authorized to receive DirecTV programming, and that the DirecTV installer represented that was the case.  [Filing No. 114 at 7.]  It argues that as long as the receipt of the programming was authorized, the divulgence of that programming was authorized as well.  [Filing No. 114 at 11.]

Other courts that have considered this issue in a similar factual setting, where the programming was obtained through a residential account and then divulged in a commercial setting, have found that a violation of § 605 occurred regardless of the defendant's intent or knowledge.  *See Kaser*, 2014 WL 3735237, *2 (where bar was using residential account billed to bar owner's residence, court found it violated § 605 and stated "it is undisputed that Defendants received Plaintiff's

---

[10] Additionally, at least one district court has held that DirecTV programming was divulged to the public even when only the auditor was present, without any patrons, because "the auditor entered the [commercial establishment] as a member of the public…."  *DIRECTV, LLC v. Perugini*, 28 F.Supp.3d 351, 355 (M.D. Pa. 2014).

interstate communication and divulged the contents thereof to people other than the addressee without the proper authorization to do so.  That is, Defendants used the account on which Hal Kaser was the addressee for the purposes of displaying the communications transmitted to that account to the customers of the Bar"; Court also noted that the fact that DirecTV installer told defendant it could pay the lower residential rate because it was a small business was irrelevant to the issue of whether defendants were liable); *Joe Hand Promotions, Inc. v. Zani*, 2013 WL 5526524 (N.D. Ill. 2013) (where DirecTV mistakenly set up residential account for commercial establishment, and sent bills directly to commercial establishment, defendant was liable for § 605 violation because the statute "essentially provides for strict liability," defendant "did not pay the proper fee for commercial use of the broadcast," and "[p]ublication of the broadcast to patrons in the bar was thus unauthorized, resulting in a violation of § 605(a)"); *That Place, LLC*, 2012 WL 2525653 at *4 (where defendant lived in apartment above tavern he owned, purchased DirecTV services for the building, and was charged residential rate, he was liable under § 605 because "[e]ven accepting there was no unauthorized 'interception' because [defendant] was authorized to receive the Broadcast, the defendants have still violated the Act because they were not authorized to 'divulge or publish' the Broadcast to the patrons of a commercial establishment…."); *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 916 (6th Cir. 2001) ("even though [defendant] did not intercept the communication in question, it nonetheless divulged the telecast of the event to an unauthorized addressee in violation of the first sentence of § 605(a)").

As these cases have recognized, what Mr. Spencer or the subcontractor who installed the DirecTV receivers at the Restaurants told MCI or the Spinas is irrelevant.  It is undisputed that MCI did not have a commercial account – or any account – with DirecTV, and that MCI was

displaying DirecTV programming at the two restaurants on June 3 and June 4, 2014. Accordingly, MCI is liable as a matter of law under § 605.

### b. The Spinas' Vicarious Liability

DirecTV argues in support of its Motion for Summary Judgment that the Spinas are vicariously liable for MCI's violations of § 605 because they are co-owners and principals of the Restaurants, are the only individuals who hold a financial interest in those entities, hired managerial staff and defined managerial roles, and "had the right to supervise and control the infringing activities and a financial stake in the businesses." [Filing No. 80 at 17.] DirecTV points to discovery responses from the Spinas, and also their deposition testimony, to support its arguments.

The Spinas respond that DirecTV did not identify a claim for vicarious liability in its Statement of Claims, so cannot now pursue such a claim. [Filing No. 106 at 22.] They also contend that § 605 does not provide for vicarious liability and because it is a "criminal statute" it must be "strictly construed, and any ambiguity must be resolved in favor of lenity." [Filing No. 106 at 22-23.] The Spinas assert that vicarious liability "has never been found to be applicable to claims under [§ 605] by any precedential court." [Filing No. 106 at 23.]

On reply, DirecTV again argues that the Spinas are the only individuals who have an ownership interest in the Restaurants, and also the only individuals who make the major decisions, including the hiring of general managers. [Filing No. 112 at 34-35.]

In its reply, the Spinas argue that DirecTV did not respond to their arguments that a claim for vicarious liability was not identified in the Statement of Claims, and that vicarious liability has not been recognized under § 605. [Filing No. 114 at 19.]

It does not appear that the Seventh Circuit Court of Appeals has addressed a vicarious liability claim under § 605, or set forth the standard for determining whether an individual defendant is vicariously liable for a § 605 violation. Several district courts within the Seventh Circuit and other Circuit Courts of Appeal, however, have recognized such a claim and have found that an individual is liable for a § 605 violation where he: "(1) has a right and ability to supervise violations; and (2) possesses an obvious and direct financial interest in the misconduct." *J & J Sports Productions, Inc. v. La Pica #3 LLC*, 2016 WL 1389979, *3 (E.D. Wis. 2016) (citing *Softel, Inc. v. Dragon Med. & Sci. Communs.*, 118 F.3d 955, 971 (2d Cir. 1997)); *see also J&J Sports Productions, Inc. v. Ruiz*, 2015 WL 587060, *3 (N.D. Ill. 2015) ("Courts generally find that allegations are sufficient to allege individual liability where the defendant was personally involved in the unlawful interception – or had supervisory capacity or control of the place where the interception occurred – and benefited financially from the interception").

The Court discusses at the outset the Spinas' arguments that DirecTV did not identify a vicarious liability claim in its Statement of Claims, that there is not a vicarious liability claim under § 605, and that DirecTV did not respond to these arguments so has waived any opposition to them and the Spinas are entitled to judgment as a matter of law. The Court notes that, ironically, the Spinas did not respond to DirecTV's arguments regarding the Spinas' involvement in supervision of the Restaurants, so may be subject to waiver themselves. Indeed, the parties' briefs on this issue are similar to two ships passing in the night. Because of this, the Court will address the merits of both DirecTV's and the Spinas' arguments, and set the possibility of waiver aside.

First, the Spinas are correct that DirecTV did not specifically state in its Statement of Claims that it was basing its claim against the Spinas on a theory of vicarious liability. [*See* Filing No. 76.] DirecTV did, however, make it clear that it was asserting the § 605 claim against all

Defendants. [Filing No. 76 at 1-2 (DirecTV referring to "Defendants" in connection with its § 605 claim).] One purpose of the Statement of Claims is to put defendants on notice of the claims they must defend against. DirecTV's Statement of Claims does just that, by stating that it is asserting a § 605 claim against all Defendants. The fact that it did not include the term "vicarious liability" is inconsequential.

Second, while the Seventh Circuit has not specifically addressed a vicarious liability claim under § 605 or set forth the standard under which such a claim should be evaluated, the Spinas have not cited any Seventh Circuit cases rejecting such a claim. And numerous district courts within the Seventh Circuit have recognized such a claim. *See, e.g., Dabrowski*, 2015 WL 9304347 at *4-5 (discussing imposition of liability against individual under § 605); *Joe Hand Promotions, Inc. v. Speakeasy GB, LLC*, 2013 WL 64630, *2 (E.D. Wis. 2013) (finding that individual defendants were vicariously liable for § 605 violations). The Court rejects the Spinas' argument that an individual cannot be held vicariously liable under § 605.[11]

Finally, the Court turns to the substance of DirecTV's vicarious liability claim against the Spinas. DirecTV supports its vicarious liability claim with the following undisputed facts:

- Victor and William Spina own, and have a financial interest in, MCI and the Restaurants, [Filing No. 79-20 at 2; Filing No. 79-21 at 6-8];

- Victor Spina is President of MCI, [Filing No. 79-20 at 2];

- Victor and William Spina are the only shareholders in MCI, [Filing No. 79-20 at 3];

- William Spina is an officer of MCI, [Filing No. 79-21 at 3];

- Victor and William Spina are the individuals that make "major" or "big" decisions for the restaurants, [Filing No. 79-21 at 3-4; Filing No. 79-21 at 10];

---

[11] Defendants' argument that § 605 is a criminal statute so must be construed liberally is unavailing. This is a civil lawsuit, and neither MCI nor the Spinas face criminal charges under § 605.

- 38 -

- William Spina hired the managers for the Restaurants, [Filing No. 79-20 at 7]; and

- William Spina provided the managers with their job descriptions and list of duties, [Filing No. 79-21 at 4];

The Spinas refer to the following undisputed facts in opposing DirecTV's motion:

- They do not manage either of the Restaurants– rather, both restaurants are managed by a full time general manager, [Filing No. 105-1 at 5];

- Neither of them was present at either of the Restaurants on June 3 or June 4, 2014 during the time DirecTV's auditor was there and observed DirecTV programming, [Filing No. 105-1 at 5; Filing No. 105-2 at 1]; and

- MCI is an investment for them, and they both have other jobs unrelated to MCI, [Filing No. 105-1 at 5; Filing No. 105-2 at 1].

Under the first part of the test to determine whether an individual is vicariously liable – the right and ability to supervise violations – the facts the parties have presented are a bit murky. DirecTV has established that the Spinas are the only owners of MCI and the Restaurants, and that they were the individuals who made "major decisions" for the restaurants, including the hiring of general managers.  But the Spinas have established that each restaurant had a full-time general manager, that the Spinas were not involved in restaurant management, that both had other jobs, that both treated the Restaurants as an investment, and that neither was present when the auditor observed the DirecTV programming. [12]

---

[12] It is undisputed that the Spinas were not present at either restaurant on June 3 and June 4, 2014, when the auditor observed DirecTV programming.  This fact, however, is not dispositive as the focus is on the Spinas' right and ability to supervise the programming, and not whether they actually exercised that right.  *See Joe Hand Promotions, Inc. v. Jorgenson*, 2013 WL 64629, *3 (E.D. Wis. 2013) (denying defendant's summary judgment motion even though he was not at establishment during § 605 violation, and stating "[s]urely, defendants do not, and cannot, argue that [defendant] is not liable for anything that occurs at his business establishment while he is not physically present").

Essentially, DirecTV has established that the Spinas own the Restaurants, which is not enough to establish that they had the right and ability to supervise violations. *See Dabrowski*, 2015 WL 9304347 at *5 (holding that establishing that defendant owned café and was an officer, had supervisory capacity and control over the activities occurring within the café on the day violation occurred, and that café exhibited television programming that is believed to be of interest to patrons was insufficient to entitle plaintiff to summary judgment, and stating "[f]acts supporting an individual's right and ability to supervise must point to control over the infringing conduct itself, rather than merely demonstrate ownership of the establishment"); *J&J Sports Productions, Inc. v. Walia*, 2011 WL 902245, *3 (N.D. Cal. 2011) (in order to establish that individual defendant had right and ability to supervise infringing conduct, plaintiff must show that defendant "had supervisory power over the infringing conduct itself"). DirecTV has also established, however, that the Spinas made "major decisions" for the restaurants, which could be enough to impose vicarious liability depending on what types of decisions they made. In short, the Court finds that there are sufficient factual disputes such that neither DirecTV nor the Spinas is entitled to summary judgment on the vicarious liability claim.[13] The facts underlying this claim will need to be more fully developed at trial, and summary judgment is not appropriate at this time.[14]

---

[13] Because the Court finds that neither side has conclusively established whether the Spinas had the right and ability to supervise the infringing conduct, it need not consider the second part of the analysis – whether the Spinas had an obvious and direct financial interest in the misconduct. By all accounts, however, the Spinas were the only individuals who had a financial interest in MCI and the Restaurants.

[14] The Court notes some irony with the Spinas' positions in this litigation. On the one hand, they argue that the DirecTV invoice which clearly lists Victor Spina as the recipient and a residence as the service address was sufficient to allow MCI to receive and display DirecTV programming at the Restaurants. On the other hand, they distance themselves from MCI in connection with the vicarious liability claim, arguing that they were largely uninvolved with decision-making.

In sum, DirecTV is entitled to judgment as a matter of law on its § 605 claim against MCI, but neither DirecTV nor Defendants is entitled to summary judgment on DirecTV's vicarious liability claim against the Spinas because material factual issues remain regarding the Spinas' right and ability to supervise § 605 violations.

### 2. *Violation of § 2511*

Defendants cross-move for summary judgment on DirecTV's claim under 18 U.S.C. § 2511. That statute provides in relevant part:

> Except as otherwise specifically provided in this chapter any person who –
>
> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
>
> *　　　　*　　　　*
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection…
>
> *　　　　*　　　　*
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511.

Defendants argue that they are not liable under § 2511 as a matter of law because there was no interception of an electronic communication, no defendant acted intentionally, and DirecTV's programming is readily accessible to the general public (including by the public at Denver International Airport).  [Filing No. 106 at 20-21.]

- 41 -

In response, DirecTV argues that Defendants intercepted DirecTV programming because they were not authorized to receive the programming at the Restaurants. [Filing No. 112 at 33.] It contends that its programming is not readily accessible to the general public, but rather may be viewable by the public when at commercial establishments that have commercial accounts. [Filing No. 112 at 34.] DirecTV also argues that Defendants acted intentionally, "as they intentionally ordered and added receivers to a residential account and installed those receivers in different locations, for their own financial gain and/or commercial benefit." [Filing No. 112 at 34.]

On reply, Defendants argue that they did not intentionally intercept DirecTV programming because they were "told by the DirecTV representatives that performed the installation that the receipt and display of DirecTV communications on the televisions connected to DirecTV receivers at the restaurants was authorized," and because they used DirecTV receivers. [Filing No. 114 at 12-13; Filing No. 114 at 18.] Defendants reiterate their argument that DirecTV programming is readily accessible to the general public, stating that "the '900,000 travelers' going through the Denver airport comprise the 'public' under any definition, even if they are 'paying customers.'" [Filing No. 114 at 13.] Defendants assert that DirecTV has not offered any evidence that they intended to intercept DirecTV programming. [Filing No. 114 at 18.]

To succeed on its § 2511 claim, DirecTV must show that Defendants intercepted the programming, and that the interception was intentional. 18 U.S.C. § 2511 (imposing liability for any person who intentionally intercepts an electronic communication). The Court has already found that MCI intercepted DirecTV programming. MCI did not have a commercial account with DirecTV, and the only account which is potentially applicable was in the name of Victor Spina for services provided at a residential address. For the reasons discussed above, the Court rejects Defendants' argument that there was no interception of DirecTV programming.

Further, the Court is puzzled by Defendants' argument that DirecTV programming is readily available.  It is not.  Rather, subscribers must pay a subscription fee and may only display programming in a commercial setting when there is a commercial account.  Defendants' argument that DirecTV programming is readily accessible to the general public because a large number of people can view it while travelling through Denver International Airport misses the mark.  Denver International Airport presumably pays to be able to display that programming, and the Court will not find that DirecTV's programming is readily accessible based on Defendants' speculation regarding the agreement DirecTV has with Denver International Airport.  Defendants know as well as any other DirecTV subscriber (residential subscriber, in the Spinas' case) that DirecTV's programming is not free.

Finally, as to the intent element of DirecTV's § 2511 claim, Defendants contend that they did not intentionally intercept DirecTV programming because the installer told them they were entitled to receive programming at the Restaurants.  A reasonable jury could conclude that the Spinas were innocent bystanders and a rogue installer set up a cheaper residential account for their two commercial establishments.  Conversely, DirecTV points to its records, which list the receivers as all being installed at a residence in various locations (*e.g.*, loft area, kids' bedroom, basement).  Further, the invoice clearly stated it was "[f]or [s]ervice [a]t" the residential address – not the Restaurants.  Based on these facts, a reasonable jury could infer that the Spinas worked with their former school chum, the installer, to set up a residential account for their commercial establishments, knowing that this type of account would be less expensive.  Because a reasonable jury could reach different results based on the facts, the Court cannot conclude at the summary judgment stage that Defendants did not intend to intercept DirecTV programming and, accordingly, denies Defendants' Cross-Motion for Summary Judgment on DirecTV's § 2511 claim.

3.   *Injury to Reputation, Goodwill, and Proprietary or Privacy Rights*

Defendants argue in their Cross-Motion for Summary Judgment that to the extent DirecTV asserts some sort of claim to recover damages for injury to its reputation, goodwill, or proprietary or privacy rights, they are entitled to summary judgment because DirecTV has not identified any legal theory which would entitle it to recover such damages in its Statement of Claims.  [Filing No. 106 at 21-22.]  DirecTV responds that "any discussion or analysis of damages is premature." [Filing No. 112 at 34.]  Defendants do not address this argument in their reply.  [*See* Filing No. 114.]

From reviewing DirecTV's Statement of Claims, [Filing No. 76], and considering DirecTV's position in its response that any discussion of damages is premature, the Court gathers that DirecTV's request for damages related to injury to reputation, goodwill, and proprietary or privacy rights is not a separate "claim," but a description of the types of damages DirecTV seeks in connection with its § 605 and § 2511 claims.  DirecTV only moved for summary judgment on liability, and the Court has denied Defendants' Cross-Motion for Summary Judgment as to liability in its entirety.  Consequently, the Court finds that the issue of damages for DirecTV's § 605 claim against MCI should be decided outside of the summary judgment context, and that the issue of damages for the Spinas' potential vicarious liability under § 605 and for DirecTV's § 2511 claim is not yet ripe for decision, as those claims remain pending.

## III.
### CONCLUSION

For the foregoing reasons, the Court:

- **DENIES** Defendants' Motion for Sanctions, [Filing No. 103], finding that neither DirecTV nor its counsel engaged in any sanctionable conduct relating to the second deposition of DirecTV's Rule 30(b)(6) witness;

- **GRANTS IN PART** DirecTV's Motion for Summary Judgment, [Filing No. 79], to the extent that it finds that MCI is liable as a matter of law for violating § 605;

- **DENIES IN PART** DirecTV's Motion for Summary Judgment, [Filing No. 79], to the extent that it finds that genuine issues of material fact preclude summary judgment on DirecTV's vicarious liability claim against Victor Spina and William Spina under § 605; and

- **DENIES IN ITS ENTIRETY** Defendants' Cross-Motion for Summary Judgment, [Filing No. 106], finding that:

  o   MCI is liable as a matter of law for violating § 605;

  o   genuine issues of material fact preclude summary judgment on DirecTV's vicarious liability claim against Victor Spina and William Spina under § 605;

  o   genuine issues of material fact preclude summary judgment on DirecTV's claim against all Defendants for liability under § 2511; and

  o   DirecTV does not assert a separate claim for certain types of damages and it is premature to rule on the propriety of those damages at the summary judgment stage.

The claims remaining in this action are: (1) vicarious liability for violation of 47 U.S.C. § 605 against Victor Spina and William Spina; and (2) violation of 18 U.S.C. § 2511 against all Defendants.  Additionally, the issue of what damages DirecTV is entitled to for MCI's violations of 47 U.S.C. § 605 remains.  The Court requests that the Magistrate Judge confer with the parties to address the possibility of an agreed resolution, or to establish a schedule for trial.  No partial final judgment shall issue at this time.

Date: 8/30/2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**