# Exhibit 1

**In The Matter Of:**

*DIRECTV, LLC v.*
*Spina, et al.*

---

*Kent Mader*

*December 15, 2015*

*DIRECTV, LLC v. Spina, et al.*

---

*Smith Reporting*

*400 North High Street - Suite 200*

*Muncie, Indiana  47305*

*1-800-700-3566 / 765.284.7836*

*www.smithreporting.net*



Min-U-Script® with Word Index

                                                                    1

                     IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF INDIANA
                          INDIANAPOLIS DIVISION
                     CASE NO. 1:15-cv-00104-JMS-TAB


DIRECTV, LLC, a California       )
limited liability company,      )
                 Plaintiff,     )
                                )
vs.                             )
                                )
VICTOR A. SPINA, JR., WILLIAM   )
A. SPINA, JR., and              )
MARTINSVILLE CORRAL, INC.,      )
                 Defendants.    )
_____

                     IN THE MORGAN COUNTY CIRCUIT COURT
                       CAUSE NO. 55C01-1505-PL-0880


THE FARMERS AUTOMOBILE         )
MANAGEMENT CORPORATION, as      )
the Attorney-in-Fact for the    )
Subscribers at The Farmers      )
Automobile Insurance            )
Association,                    )
                 Plaintiff,     )
                                )
vs.                             )
                                )
WILLIAM SPINA and DIRECTV,      )
LLC,                            )
                 Defendants.    )
_____

WILLIAM SPINA,                  )
          Counter-Plaintiff,    )
vs.                             )
                                )
THE FARMERS AUTOMOBILE          )
MANAGEMENT CORPORATION, as      )
the Attorney-in-Fact for the    )
Subscribers at The Farmers      )
Automobile Insurance            )
Association,                    )
          Counter-Defendant.    )

```
                  IN THE MORGAN COUNTY CIRCUIT COURT
                    CAUSE NO. 55C01-1507-CT-1181


VICTOR SPINA,                      )
                                   )
               Plaintiff,          )
                                   )
vs.                                )
                                   )
OWNERS INSURANCE COMPANY,          )
                                   )
               Defendant.          )
_____

OWNERS INSURANCE COMPANY,          )
                                   )
          Counter-Claimant,        )
                                   )
vs.                                )
                                   )
VICTOR SPINA,                      )
                                   )
          Counter-Defendant. )
_____

OWNERS INSURANCE COMPANY,          )
                                   )
       Third-Party Plaintiff,   )
                                   )
vs.                                )
                                   )
DIRECTV, LLC,                      )
                                   )
       Third-Party Defendant. )


       THE VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION OF

              K E N T   M A D E R ,

           a witness produced and sworn before me,
      Tracie L. Reemer, a Notary Public at large, in
      and for the State of Indiana, taken on behalf of
      the Defendants, at the offices of Overhauser Law
      Offices, LLC, 101 West Ohio Street, Suite 2000,
      Indianapolis, Marion County, Indiana, on December
      15, 2015, commencing at approximately 9:06 a.m.,
      pursuant to the Indiana Rules of Trial Procedure.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

3

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

       Wayne D. Lonstein, Esq.
       Christopher J. Hufnagel, Esq.
       Lonstein Law Office, P.C.
       80 North Main Street
       P.O. Box 351
       Ellenville, NY  12428
       wayne@signallaw.com

ON BEHALF OF THE DEFENDANTS:

       Paul B. Overhauser, Esq.
       Overhauser Law Offices, LLC
       740 W. Green Meadows Drive
       Suite 300
       Greenfield, IN  46140
       poverhauser@overhauser.com

ON BEHALF OF THE FARMERS AUTOMOBILE MANAGEMENT
CORPORATION:

       Mark R. Smith, Esq.
       Smith Fisher Maas Howard & Lloyd, P.C.
       7209 North Shadeland Avenue
       Indianapolis, IN  46250
       msmith@smithfisher.com

ON BEHALF OF OWNERS INSURANCE COMPANY:

       Misti Presnell DeVore, Esq.
       Taylor Law Firm, P.C.
       8730 Commerce Park Place
       Suite C
       Indianapolis, IN  46268
       mdevore@taylorlitigation.com

4

I N D E X   O F   E X A M I N A T I O N

Page

DIRECT EXAMINATION................................6
     Questions By Mr. Overhauser

I N D E X   O F   E X H I B I T S

Page

Defendant(s)' Deposition Exhibits:

  1 - Amended Notice of Deposition of DIRECTV,
      LLC......................................12

  2 - Diagram..................................25

  3 - First Amended Complaint...................36

  4 - Plaintiff's Original Complaint...........36

  5 - DIRECTV, Your Customer Agreement..........47

  6 - History Document.........................62

  7 - 6/27/14 Letters From Lonstein Law Office....68

  8 - Photograph...............................76

  9 - Plaintiff DIRECTV, LLC,'s Amended Responses
      To Defendant's First Set of Interrogatories.94

10 - DIRECTV Lands Agreement...................150

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

5

```
 1                              (9:06 a.m.)

 2               MR. OVERHAUSER:  Today is Tuesday,

 3     December 15th.  We are here for the deposition of

 4     Kent Mader, who is a 30(b)(6) representative in

 5     the case of DIRECTV vs. Victor Spina, et al, Case

 6     15-cv-104-JMS-TAB, and the 30(b)(1) deposition in

 7     the case of Farmers Automotive -- Automobile

 8     Management Corporation vs. William Spina, Morgan

 9     Circuit Court, 55C01-1505-PL-880, and Victor

10     Spina vs. Owners Insurance Company, Morgan

11     Circuit Court, Case No. 55C01-1507-CT-1181.

12               Will you swear in the witness, please.

13               THE COURT REPORTER:  Raise your right

14     hand, please.  Do you solemnly swear or affirm

15     that the testimony you're about to give is the

16     truth, the whole truth, and nothing but the

17     truth?

18               THE WITNESS:  I do.

19               THE COURT REPORTER:  Thank you.

20

21                    KENT MADER,

22         having been duly sworn to tell the

23         truth, the whole truth, and nothing but

24         the truth relating to said matter, is

25         examined and testifies as follows:
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

6

1    DIRECT EXAMINATION,

2         QUESTIONS BY MR. OVERHAUSER:

3    Q.   Can you state your name.

4              MR. LONSTEIN:  Before we start, Mr.

5    Overhauser, stipulations.  I assume we're going

6    to use the same 30-day review of the transcripts

7    for additions, deletions and corrections that we

8    used with your clients; is that correct?

9              MR. OVERHAUSER:  Yes.

10             MR. LONSTEIN:  All right.  So that you

11   will provide a written -- I believe we sent ours

12   in a written transcript -- for Mr. Mader to

13   review and execute after the deposition, correct?

14             MR. OVERHAUSER:  Do you want that sent

15   directly to you?

16             MR. LONSTEIN:  Yes, please.

17             MR. OVERHAUSER:  Well, then I'm sure

18   our court reporter can accommodate that.

19             MR. LONSTEIN:  Right.  In addition, I

20   don't know if other counsel wants to be heard on

21   the record.  This is the first that DIRECTV is

22   learning that we are doing joint depositions

23   today with respect to two different state court

24   actions.

25        To that extent, it could result in some

1    conflagration of both the Federal Rules and the

2    Indiana State Rules, though they may be closely

3    aligned or modeled procedurally.  I'm certain

4    there are some differences.  To that effect, I

5    believe it's probably an improper process without

6    court intervention.

7         That being said, I'm going to note DIRECTV's

8    objection to the process for the record.  For the

9    purpose of expediency, we can go ahead, and if we

10   have to, at some further point, make appropriate

11   application to motion to the appropriate court or

12   courts, since I believe there are now three

13   involved with respect to this.

14        Finally, it's noticed in the deposition that

15   there's audiovisual transcription of the

16   testimony as well as stenographic.  I would like

17   to know what type of file is being used to record

18   the deposition transcript and make a request that

19   that file be placed after the deposition in the

20   possession of the transcriber, of the

21   stenographer, so that, as an officer of the

22   court, she will be able to be the custodian of

23   that document.

24              MR. OVERHAUSER:  I can provide her with

25   a copy.  It's an MP4 file.

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

8

```
 1              MR. LONSTEIN:  That's fine.  So that
 2       way we can get that copy simultaneously and you
 3       can maintain it or your firm.  Okay?
 4              Counsel, sorry about that.  I was a little
 5       long-winded.  It's my east-coastedness.
 6              MS. DeVORE:  No problem.  My name is
 7       Misti DeVore, and I represent Owners Insurance
 8       Company in the Morgan County Circuit Court case.
 9       It's under Cause No. 55C01-1507-CT-1181.
10              And Auto Owners -- or Owners also objects to
11       this deposition based on a couple of reasons:
12       One being that we only received notice of it
13       approximately a week ago, and we were not
14       contacted about the scheduling dates of this.
15       And we did have a conflict, so the counsel that's
16       primarily responsible for handling this couldn't
17       be here today.
18              So we did object to the deposition in and of
19       itself.  We also object to the joint nature of
20       the deposition, as was set out by prior counsel
21       here today with regard to the difference in
22       rules, and we would reserve the right to object
23       to the use of testimony provided today in the
24       state court action, which we're involved.
25              We also reserve the right to again depose
```

1        DIRECTV, whether by 30(b)(6) or by a particular

2        representative, in the state court action

3        separately, based on the fact that it is a

4        separate action, there are different counsel

5        involved in that action, and under the rules in

6        Indiana, only counsel involved in the state court

7        action should be present at the time of that

8        deposition.

9             That's all I have.

10            MR. SMITH:  Mark Smith.  I represent

11       Farmers Automobile Management Corporation in the

12       case that's pending in Morgan Circuit Court under

13       Cause No. 55C01-1505-PL-0880.  And in lieu of

14       repeating everything, I will just join in the

15       objections that have previously been presented by

16       counsel.

17            MR. LONSTEIN:  I also have -- Wayne

18       Lonstein again -- one more statement.  I believe

19       that Mr. Mader's deposition or anybody from

20       DIRECTV in the state court actions will probably

21       be done either procedurally through some

22       application, or subpoena, since DIRECTV's counsel

23       in those actions is not presently in the room.

24            However, I also want to state for the record

25       that the satellite subscriber information that

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 11 of 158 PageID #:
1350

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

10

1    may be inquired about or discussed is of such a

2    nature that there may be issues where Mr. Mader

3    will not be able to testify with third parties in

4    the room.  No disrespect intended but that's the

5    federal law.  And there may be issues where we

6    will have to figure out some sort of construct to

7    figure out how that testimony gets treated at

8    that time.

9          But just so -- you may not be familiar, but

10   there's a very strict and personal information

11   federal statute that we have to be cognizant of

12   in these proceedings.

13              MR. OVERHAUSER:  Okay.  I would just

14   state for the record that counsel for DIRECTV in

15   both the state court actions is Michael Wilkins.

16   He was served with a copy of the Notice of

17   Deposition.

18         Also, I would point out that I believe we

19   had a protective order entered in the state court

20   case --

21              MR. LONSTEIN:  And we do --

22              MR. OVERHAUSER:  -- as well as the

23   federal court case.

24              MR. LONSTEIN:  No, we don't have one in

25   the federal court case.  And so until we get one

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

11

```
 1         in place, that will also be an issue here.

 2                   MS. DeVORE:  We also do not have one

 3         yet for the Morgan County case.

 4                   MR. LONSTEIN:  So I want to make sure

 5         that that's known to the parties.

 6                   MR. OVERHAUSER:  Okay.

 7    BY MR. OVERHAUSER:

 8    Q.   Can you state your name for the record, please.

 9    A.   My name is Kent Mader, K-E-N-T, M-A-D-E-R.

10    Q.   And what is your address?

11    A.   2260 East Imperial Highway, in El Segundo,

12         California 90245.

13    Q.   And what is your residence address?

14                   MR. LONSTEIN:  Note my objection to the

15         record.  That's not relevant.  He's here on

16         behalf of DIRECTV.  You don't have to answer that

17         question.

18                   MR. OVERHAUSER:  With all due respect,

19         I think it's improper for you to instruct the

20         witness not to answer a question.  He can make

21         his own decision.

22                   MR. LONSTEIN:  Well, I think it's

23         privileged, and so to that extent, as a

24         representative of DIRECTV we can move on but I

25         don't think he has to give his home address.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

1   BY MR. OVERHAUSER:

2   Q.   Can you state your home address, please?

3   A.   I choose not to.

4   Q.   What is your business telephone number?

5   A.   310-964-5254.

6            (Defendants' Exhibit No. 1 was marked

7       for identification.)

8   BY MR. OVERHAUSER:

9   Q.   Let me hand you what's been marked as Exhibit 1,

10      which is an Amended Notice of Deposition of

11      DIRECTV, LLC.   It also includes the notices of

12      deposition for the two state court actions that

13      were referenced earlier in this transcript.

14           MR. LONSTEIN:   Counsel, do you want to

15      see this?   Because it's new to me.

16        I'm going to note for the record that

17      Exhibit 1, marked for identification, to the

18      extent it contains the state court action

19      reference or information, that Mr. Mader is here

20      in a federal court action, will be able to

21      address those things.   But with respect, I would

22      object to any content from the state court action

23      serving as a basis for any testimony.   Sorry.

24   BY MR. OVERHAUSER:

25   Q.   Mr. Mader, pages 3 and 4 of Exhibit 1 are

Kent Mader – December 15, 2015
**DIRECTV, LLC v. Spina, et al.**

```
 1        30(b)(6) deposition topics.  Do you see those?

 2   A.   I do.

 3   Q.   And are you DIRECTV's corporate representative

 4        for each of the 23 topics listed in Schedule A in

 5        Exhibit 1?

 6   A.   I am.

 7   Q.   And are you prepared to testify as to all 23

 8        topics today?

 9   A.   Yes.

10   Q.   Have you been deposed before?

11   A.   I have.

12   Q.   About how many times?

13   A.   Less than ten.

14   Q.   And have they been -- all been on behalf of

15        DIRECTV?

16   A.   No.

17   Q.   How many times have you been deposed on behalf of

18        DIRECTV?

19   A.   All but one of those.  I don't remember the exact

20        number of depositions I've been through.

21   Q.   Okay.  Can you tell me what you've done to

22        prepare for today's deposition?

23   A.   I had a meeting with my counsel, in-house, as

24        well as Chris and Wayne.

25   Q.   When you say your in-house counsel, who is that?
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

14

```
 1   A.   John Green.

 2   Q.   Did you talk to anyone besides your counsel and

 3        John Green?

 4   A.   No.

 5   Q.   You didn't talk to Jose Cruz to prepare for this

 6        deposition?

 7   A.   I did not.

 8   Q.   You didn't talk to Craig Spencer?

 9   A.   I did not.

10   Q.   Did you review any documents to prepare for this

11        deposition?

12   A.   Yes, I did.

13   Q.   What documents did you review to prepare for this

14        deposition?

15   A.   I reviewed some of the court documents.  I'm not

16        a lawyer so I don't remember all of them, but I

17        reviewed the interrogatories and some of the

18        production documents, like the affidavits from

19        the auditor, as well as -- it would be the

20        declaration of Craig Spencer.

21   Q.   Any other documents that you reviewed?

22   A.   Not that I recall.

23   Q.   Did you review any of DIRECTV's responses to

24        request for production of documents?

25   A.   Yes, I believe so.
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

15

```
1   Q.   Did you review DIRECTV's responses to request for
2        admission?
3   A.   Yes, I believe so.
4   Q.   Can you tell me -- just give me a brief outline
5        of your job history since, say, high school.
6              MR. LONSTEIN:   Note my objection to the
7        form.  You can answer.
8   A.   Since high school?
9   Q.   Yes.
10  A.   I've had various jobs in college.  Waiter.  I
11       don't remember all of the jobs in college, but
12       after college I was working for Pricewaterhouse
13       Coopers as a public accountant, and subsequently
14       then I joined DIRECTV in a finance function, and
15       have been in different roles of the company for
16       19 years, and sales information technology,
17       customer care, supply chain, anti-piracy, and
18       more of a current capacity in risk management.
19  Q.   You mention that you were working in risk
20       management presently?
21  A.   Correct.
22  Q.   And what is your present title?
23  A.   Vice president.
24  Q.   And how long have you been a vice president?
25  A.   Probably five to six years.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

16

```
 1   Q.   And has your -- are you a vice president of
 2        something specific at DIRECTV?
 3   A.   Risk management.
 4   Q.   And have you had that title for the last five or
 5        -- five to six years?
 6   A.   Yes.
 7   Q.   And what are your responsibilities as vice
 8        president of risk management for DIRECTV?
 9   A.   I lead a team that is involved with credit
10        policy, fraud management, revenue assurance,
11        customer remittance processing, and collections,
12        whether it be first-party collections,
13        third-party collections, as well as an analytic
14        team that supports all of those functions.
15   Q.   You mentioned fraud management.  What is that?
16   A.   It's an organization that identifies attempts to
17        mitigate as much fraud as DIRECTV can.
18   Q.   What is -- what kind of fraud are you referring
19        to?
20             MR. LONSTEIN:  Note my objection to the
21        form of the question.
22   A.   Fraud could be identity theft, it could be people
23        manipulating their accounts to receive benefits,
24        whether they're paying a lower amount or no
25        amounts at all, and it could involve some other
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

17

```
 1          sorts of activity where DIRECTV and our

 2          legitimate customers are losing money.

 3   Q.     You mentioned a possible manipulation of accounts

 4          by users.  Can you describe the different ways in

 5          which that might happen?

 6                 MR. LONSTEIN:  Note my objection to the

 7          form of the question.  Do you understand it?

 8   A.     Could you please clarify it?

 9   Q.     You mentioned that one of your responsibilities

10          with regard to fraud management is investigating

11          instances in which DIRECTV accounts are

12          manipulated by users.  How might a user

13          manipulate their DIRECTV account?

14                 MR. LONSTEIN:  Again, note my

15          objection.  If you can answer.

16   A.     The user may indicate that their account is in a

17          particular name when it may not be their name.

18          We have to rely on the subscribers to provide

19          legitimate information to the account so that we

20          can record it in our systems.

21               We are not there presently for every

22          application of DIRECTV across the country and so

23          therefore we rely on their information.  They may

24          give us false information, and we record that in

25          our systems and treat it as such.
```

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 19 of 158 PageID #:
Kent Mader - Dec... December 15, 2015
DIRECTV, LLC v. Spina, et al.

18

1  Q.   You also mentioned that as part of fraud

2       management you investigate instances in which

3       legitimate customers have an issue.

4            MR. LONSTEIN:  Note my objection to the

5       question.  I believe that's stating facts he

6       didn't testify to.  Can you rephrase it?

7  BY MR. OVERHAUSER:

8  Q.   You mentioned something about legitimate

9       customers.  Do you remember that?

10 A.   Yes.

11 Q.   What were you referring to, what type of

12      investigation goes on with respect to legitimate

13      customers?

14 A.   Well, I believe the fraud management department

15      protects legitimate customers.

16 Q.   From what?

17 A.   From illegitimate customers.

18 Q.   Okay.  There are a number of terms that have come

19      up in the course of this litigation, and I'd just

20      like to go through them with you and ask you if

21      you understand what they are or whether they mean

22      anything to you.

23           The first one is "person."  Do you know what

24      a person is?

25           MR. LONSTEIN:  Note my objection.  In

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

19

```
 1        context, Paul?  Is it calling for a legal

 2        conclusion?  If so, it's objectionable.  Can you

 3        contextualize the question?

 4                 MR. OVERHAUSER:  You can just state

 5        your -- if you have an objection --

 6                 MR. LONSTEIN:  Well, that's --

 7                 MR. OVERHAUSER:  -- you can just

 8        state --

 9                 MR. LONSTEIN:  All right.

10                 MR. OVERHAUSER:  -- you know, object to

11        the form of the question.

12                 MR. LONSTEIN:  Note my objection to the

13        form of the question.

14   BY MR. OVERHAUSER:

15   Q.   Mr. Mader, do you have an understanding of what

16        the word "person" means?

17   A.   Yes.

18   Q.   What does a person mean to you?

19                 MR. LONSTEIN:  Again, note my

20        objection.  It calls for a legal conclusion.

21   A.   A human being.

22   Q.   Do you know what the word "knowledge" means?

23                 MR. LONSTEIN:  May I say the same

24        objection so we can be quick?

25                 MR. OVERHAUSER:  Yes.
```

1  BY MR. OVERHAUSER:

2  Q.   What does the word "knowledge" mean to you?

3  A.   Having information and an understanding.

4  Q.   What does the word "facts" mean to you?

5           MR. LONSTEIN:   The same objection.

6  A.   Evidence, I guess, something that can be proven.

7  Q.   What does the word "initiated" mean to you?

8           MR. LONSTEIN:   Note my objection.

9  A.   Something that is started.

10 Q.   What does the term "electronic communication"

11      mean to you?

12           MR. LONSTEIN:   The same objection.

13 A.   Transmission of information on an electric --

14      electronic medium.

15 Q.   What does the term "date and time" mean to you?

16           MR. LONSTEIN:   The same objection.   Can

17      you separate them, please?   It's compound,

18      there's two terms.

19           MR. OVERHAUSER:   My question was with

20      respect to the term, not the word.

21           MR. LONSTEIN:   Okay.

22           MR. OVERHAUSER:   So I'll repeat the

23      question.

24 BY MR. OVERHAUSER:

25 Q.   What does the term "date and time" mean to you?

**Kent Mader - Dec. 1815**
**December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

21

```
 1   A.    A particular point in time.

 2   Q.    What does the term "communication" mean to you?

 3               MR. LONSTEIN:   The same objection.

 4   A.    Some sort of information that is being passed

 5         from one person to another.

 6   Q.    What does the term "authorize" mean to you?

 7               MR. LONSTEIN:   The same objection.

 8   A.    That somebody has approved or activated

 9         something.

10   Q.    What does the word "receive" mean to you?

11               MR. LONSTEIN:   The same objection.

12   A.    Something was given of value that was received.

13   Q.    The thing that is received must be of value for

14         it to be the word receive to apply, is that your

15         testimony?

16               MR. LONSTEIN:   Note my objection to the

17         question.

18   A.    I would clarify that and say maybe it doesn't

19         have to have value.

20   Q.    What does the word "intercept" mean to you?

21               MR. LONSTEIN:   Again, note my

22         objection; legal conclusion.

23   A.    That something was received by another party.

24   Q.    So any time something is received by another

25         party it's intercepted?
```

```
 1                    MR. LONSTEIN:  Objection; form.

 2    A.   I meant another party was receiving it.

 3    Q.   Okay.  So there's -- there would be two parties,

 4         and one party might receive it, and if a

 5         different party gets it, they would be

 6         intercepting it?

 7                    MR. LONSTEIN:  Objection to form.

 8    A.   That might be an example of that.

 9    Q.   What does the word "unlawfully" mean to you?

10                    MR. LONSTEIN:  Objection; it calls for

11         a legal conclusion.

12    A.   That something was done against the law.

13    Q.   What does the term "all witnesses" mean to you?

14                    MR. LONSTEIN:  The same objection.

15    A.   I don't know.

16    Q.   I'm sorry?

17    A.   I don't know.

18    Q.   What does the term "serial numbers" mean to you?

19                    MR. LONSTEIN:  The same objection.

20    A.   A number that is assigned to an item.

21    Q.   What does the term "representative" mean to you?

22                    MR. LONSTEIN:  The same objection.

23    A.   Could you clarify?

24    Q.   When referring to a person, what does the term

25         "representative" mean to you?
```

**Kent Mader - DEC**mber 15, 2015
**DIRECTV, LLC v. Spina, et al.**

23

```
 1                    MR. LONSTEIN:  The same objection.

 2    A.   That somebody might be acting on behalf of

 3         another person.

 4    Q.   What does the term "located" mean to you?

 5                    MR. LONSTEIN:  The same objection.

 6    A.   Something was given a proper place in terms of

 7         the location.

 8                    MR. LONSTEIN:  Mr. Overhauser, can I

 9         ask you, when you're asking these questions, are

10         you asking Mr. Mader what his understanding is of

11         the word generally or related to this litigation;

12         in other words, do you want him to give you your

13         dictionary what it means to him, or related to

14         this litigation?  Because it becomes somewhat of

15         a challenge and it may review -- remove some of

16         my objections if it's properly formated so that

17         we know what context you're answer -- asking.

18                    MR. OVERHAUSER:  Thank you.  I'm just

19         looking for him to answer the questions.

20    BY MR. OVERHAUSER:

21    Q.   Mr. Mader, what does the word "smart card" mean

22         to you?

23                    MR. LONSTEIN:  Note my objection.

24    A.   Access card.

25    Q.   What does the term "associated" mean to you?
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

24

```
 1                    MR. LONSTEIN:  The same objection.
 2    A.   In relation.
 3    Q.   What does the word "caused" mean to you?
 4                    MR. LONSTEIN:  The same objection; it
 5         calls for a legal conclusion.
 6    A.   Something that is made into effect.
 7    Q.   What does the word "deactivated" mean to you?
 8                    MR. LONSTEIN:  The same objection.
 9    A.   Turned off.
10    Q.   I've put a diagram over here.  Let me -- and I'd
11         like for you to mark on it.  What I'm trying to
12         understand --
13    A.   You would like me to mark on it or not mark on
14         it?
15    Q.   I would like you to mark on it.  What I'm trying
16         to understand is just how signals that DIRECTV
17         transmits, where they -- where they begin and
18         where they end, and at one point during their
19         transmission are they encrypted versus
20         non-encrypted.
21              So if you look at the diagram next to you,
22         you can see that I wrote on the left-hand side, I
23         think, broadcaster and then DIRECTV.  I drew a
24         picture of a satellite, an antenna, a receiver, a
25         smart card, a TV, and a person watching the TV.
```

Kent Mader - DECember 15, 2015
DIRECTV, LLC v. Spina, et al.

25

1    Do you see that?

2              MR. LONSTEIN:  Note my objection to the

3    question both in form and in substance.  I'd like

4    to share it with counsel before the witness

5    testifies.

6              MR. OVERHAUSER:  That's fine.

7              MR. LONSTEIN:  This is not marked,

8    Mr. Overhauser.

9              MR. OVERHAUSER:  Yeah.  Why don't we go

10   ahead and mark that as Exhibit 2.

11             (Defendants' Exhibit No. 2 was marked

12   for identification.)

13             MR. LONSTEIN:  With respect to

14   Exhibit 2 that you've just marked, you've

15   indicated in your question that it was a document

16   created by you, and to that extent we have not

17   had an opportunity to examine it, other than just

18   immediately.  So that I'd like to note for the

19   record that it would be improper in form and in

20   legal conclusion as to any of the relationships

21   that you may be asking Mr. Mader to make based

22   upon the information you provide him.  That being

23   said --

24             MR. OVERHAUSER:  Okay.

25

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

1   BY MR. OVERHAUSER:

2   Q.    Does DIRECTV transmit TV programming signals to

3         satellites?

4               MR. LONSTEIN:  Note my objection to the

5         form.

6   A.    Yes.

7   Q.    Okay.  When it transmits its programming to

8         satellites, are -- is the programming encrypted?

9               MR. LONSTEIN:  The same, the same

10        objection, and it calls for a legal conclusion

11        with respect to "encrypted."

12  A.    I believe so.

13  Q.    Okay.  And does the satellite rebroadcast the TV

14        programming signals back down to earth?

15              MR. LONSTEIN:  Again, note my objection

16        to the form of the question, and again with the

17        legal conclusion required of "rebroadcast."

18  A.    I believe so.

19  Q.    Okay.  I've marked on the diagram.  You can

20        probably tell there's a dashed arrow going up to

21        a satellite and a dashed arrow going back down to

22        an antenna.  Can you mark those two arrows with

23        the pink highlighter, please?

24              MR. LONSTEIN:  Again, note my objection

25        to any testimony or writings that Mr. Mader gives

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

27

1    or makes with respect to this diagram, which we

2    have no reason to believe is either in scale,

3    accurate or representative of any of the

4    technology or facts in this case.

5            That being said, Mr. Mader, if you can do

6    that -- can you restate the question?

7                    MR. OVERHAUSER:  Can you repeat the

8    question?

9                    THE COURT REPORTER:  I'll just play it

10   back here.

11                   (The requested material was played back

12   by the court reporter.)

13   A.    (Witness complies.)

14   BY MR. OVERHAUSER:

15   Q.    Okay.  You marked just a portion of it.  Is it

16         just encrypted for a part, or is it encrypted all

17         of the way from the satellite to the antenna and

18         all of the way from DIRECTV to the antenna?

19                   MR. LONSTEIN:  Again, I'll note my

20         objection to the legal conclusion of

21         "encryption."

22            I'll also object to the fact that we do not

23         have a protective order, and much of the

24         testimony, including items such as encrypton --

25         encryption are proprietary to DIRECTV and, slash,

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 29 of 158 PageID #: 1986

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

28

1       or others.  So I think that it is an area of

2       privilege.

3            To the extent that you're asking him

4       generically of his understanding, I'm okay with

5       that, but any specifics about the encryption

6       process and where it is in the system is a

7       proprietary source of information.

8                 MR. OVERHAUSER:  Okay.

9   BY MR. OVERHAUSER:

10  Q.  Is it your understanding that the DIRECTV signals

11      from the ground all the way up to the satellite

12      are encrypted the entire distance?

13  A.  I believe so.

14  Q.  Can you mark the entire distance of that upward

15      arrow then with a pink highlighter, please?

16                MR. LONSTEIN:  Which upward?  That

17      would be --

18                MR. OVERHAUSER:  From DIRECTV to the

19      satellite.

20                MR. LONSTEIN:  The same objection.

21  A.  (Witness complied.)

22  Q.  And is it the same for the satellite down to the

23      antenna --

24                MR. LONSTEIN:  Again --

25  Q.  -- the entire distance?

```
 1                    MR. LONSTEIN:  If you know.

 2   A.   I believe so.

 3   Q.   Okay.  And when the signal -- is the DIRECTV

 4        signal then carried from the antenna to a DIRECTV

 5        receiver?

 6                    MR. LONSTEIN:  Again, note both of my

 7        same objections, and to the degree it calls for

 8        the witness to speculate beyond his knowledge, if

 9        it is, I would make that objection.

10                    MR. OVERHAUSER:  Mr. Lonstein --

11                    MR. LONSTEIN:  Yes.

12                    MR. OVERHAUSER:  We have a local rule

13        in here that discusses talking objections, and I

14        think you are making talking objections and I

15        request that you reframe from doing so.  You can

16        make an objection, that is, you object to the

17        form of the question.  If you need to object on

18        the grounds of privilege, you're allowed to

19        confer with the witness, but speaking objections

20        are improper, they violate the local rule.  You

21        have been forwarned.

22                    MR. LONSTEIN:  Again, Mr. Overhauser,

23        thank you for that information.  I think I'm

24        fully compliant.

25               Again, we're here under various sets of
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

30

 1      local rules, state and federal, at our surprise,

 2      and with respect to all of these issues, because

 3      you are inquiring in areas of intellectual

 4      property and other issues, this witness may not

 5      have the authority to testify without a

 6      protective order in place, which should be a

 7      consideration between counsels, that never have

 8      been brought up.

 9          So we can have that spat in the talking

10      objection issue if you want, but I'm not going to

11      let a witness testify to things that he has no

12      authority to divulge.  That being said, you can

13      inquire.

14  BY MR. OVERHAUSER:

15  Q.  Mr. Mader, is it your understanding that the

16      DIRECTV signals, when transmitted between a

17      DIRECTV antenna and a DIRECTV receiver, are

18      encrypted?

19  A.  I believe so.

20  Q.  Okay.  Can you mark that line with a pink

21      highlighter, please?

22              MR. LONSTEIN:  When you say "that

23      line," which line would that be, Mr. Overhauser,

24      for the record?

25              MR. OVERHAUSER:  The line between the

 1        DIRECTV antenna and the receiver coming from the

 2        left side of the receiver as shown.

 3               MR. LONSTEIN:  Is it possible to use

 4        another -- well, okay.  That's fine.  Your

 5        witness.  Go on.

 6   A.   (Witness complied.)

 7   Q.   Is it your understanding that a DIRECTV receiver

 8        has the capability of decrypting a DIRECTV

 9        signal?

10               MR. LONSTEIN:  The same objections with

11        respect that I had previously mentioned.

12   A.   Yes.

13   Q.   Okay.  So is the signal that is output, is the

14        video signal that is output by a DIRECTV receiver

15        and goes to a TV, is that encrypted or decrypted?

16               MR. LONSTEIN:  Again, objection to

17        form.

18   A.   I don't know.

19   Q.   Are DIRECTV receivers designed to be able to be

20        used with any type of television?

21               MR. LONSTEIN:  Note my objection.

22   A.   I don't know.

23   Q.   What is -- what is your title again for DIRECTV?

24   A.   Vice president of risk management.

25   Q.   Did you have a title involving the term "Signal

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

```
 1        Integrity" at one point?
 2                    MR. LONSTEIN:  Note my objection.
 3   A.   Yes.
 4   Q.   In your capacity that involves single -- Signal
 5        Integrity, are you familiar with the extent to
 6        which DIRECTV encrypts signals?
 7                    MR. LONSTEIN:  Note my objection to
 8        form.
 9   A.   Yes.
10   Q.   Do you have an opinion as to whether or not
11        DIRECTV signals that are remitted by a DIRECTV
12        receiver and go to a television for viewing are
13        encrypted?
14                    MR. LONSTEIN:  Note my objection;
15        calling the witness for an opinion is improper.
16   A.   There are a lot of TVs.  I don't know if they
17        work with all TVs.
18   Q.   Okay.  That's not my question.  The question is
19        whether or not the signal is -- do you have an
20        opinion as to whether it is encrypted between the
21        two devices?
22   A.   I don't know.
23                    MR. LONSTEIN:  The same, the same
24        objection.
25
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

33

1   BY MR. OVERHAUSER:

2   Q.   Is DIRECTV programming encrypted when it is

3        displayed from a television so it can be viewed

4        by a person?

5             MR. LONSTEIN:   Objection.

6   A.   I don't know.

7   Q.   You don't know if the picture on the TV is

8        encrypted or not?

9             MR. LONSTEIN:   Objection; asked and

10       answered, argumentative.

11  A.   I stated I don't know.

12  Q.   Okay.  DIRECTV gets its programming from

13       broadcasters, correct?

14  A.   Yes.

15  Q.   Okay.  Do you know whether the signals that

16       DIRECTV receives from broadcasters are encrypted?

17            MR. LONSTEIN:   Note my objection with

18       respect to form, and again, some of the

19       privileges used that I mentioned.

20  A.   I don't know.

21  Q.   Do DIRECTV receivers include a smart card?

22            MR. LONSTEIN:   Note my objection to

23       form and time.  Can we get a time, or are you

24       asking generically?

25  A.   There are typically smart cards in receivers.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

34

```
 1   Q.   Do you know what the function of a smart card is

 2        in a DIRECTV receiver?

 3              MR. LONSTEIN:   The same objection.

 4   A.   Yes.

 5   Q.   What is it?

 6   A.   It's typically to decrypt a signal.

 7   Q.   Will a DIRECTV receiver decrypt a TV signal

 8        without -- if it does not have a smart card?

 9              MR. LONSTEIN:   Note my objection to

10        form and content.

11   A.   Could you repeat the question?

12   Q.   Can a DIRECTV receiver that is missing a smart

13        card decrypt a DIRECTV signal?

14              MR. LONSTEIN:   Objection; hypothetical.

15   A.   I don't think so.

16   Q.   Is DIRECTV able to send signals through its

17        satellites to activate and deactivate specific

18        DIRECTV receivers?

19              MR. LONSTEIN:   Objection to form,

20        proprietary.

21   A.   Yes.

22              MR. LONSTEIN:   Mr. Overhauser, just for

23        the record, I am willing to save some time if we

24        get to an agreement here today that we reach a

25        protective order that will address these issues.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

35

```
 1        It'll speed up me having to say that protective

 2     testimony.  We just don't have that in place,

 3     so --

 4              MR. OVERHAUSER:  Yeah, that's fine.

 5              MR. LONSTEIN:  Understand, you know, as

 6     you can understand as an intellectual property

 7     attorney, we want to make sure that this doesn't

 8     get into the public domain.  So that's the point.

 9     I just want to put on the record for you, I'm

10     trying to accommodate.

11              MR. OVERHAUSER:  I appreciate that.

12              MR. LONSTEIN:  Okay.

13              MR. OVERHAUSER:  The Southern District

14     of Indiana has a standard protective order that

15     it uses for all of its --

16              MR. LONSTEIN:  Right.  And we just have

17     to get it executed so we can --

18              MR. OVERHAUSER:  That form of agreement

19     is acceptable to me.

20              MR. LONSTEIN:  We'll have to get --

21     once we're executed, then we'll be in a better

22     position.

23              MR. OVERHAUSER:  I'd like for you to

24     pass around just a copy of the First Amended

25     Complaint.  Here, I'll give one to you and --
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

36

```
 1              MR. SMITH:  Okay.

 2              MR. OVERHAUSER:  I don't care which one

 3      of you hands it to the witness, but I know

 4      there's two copies that needs to go to the

 5      witness.

 6              (Defendants' Exhibit No. 3 was marked

 7      for identification.)

 8  BY MR. OVERHAUSER:

 9  Q.  Let me hand you what's been marked as Exhibit 3.

10      Have you ever seen this document before?

11  A.  I believe so.

12  Q.  Is this one of the documents that you reviewed in

13      preparation for this deposition?

14  A.  Yes.

15              (Defendants' Exhibit No. 4 was marked

16      for identification.)

17  BY MR. OVERHAUSER:

18  Q.  Let me hand you what's been marked as Exhibit 4

19      and ask you the same thing, which is the

20      complaint from the DIRECTV suit against Victor

21      Spina in Civil Action 105.

22              MR. SMITH:  Which one is that?  Oh,

23      this is the Martinsville Corral, right?

24              MR. LONSTEIN:  Right, that was --

25              MR. SMITH:  The Martinsville Texas
```

Case 1:15-cv-00104-JMS-TAB  Document 137-1  Filed 12/22/16  Page 38 of 158 PageID #: 1337

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

37

```
 1        Corral before consolidation?
 2                  MR. LONSTEIN:  Right, before
 3        consolidation.
 4                  MR. SMITH:  Thank you.
 5   BY MR. OVERHAUSER:
 6   Q.   So have you seen the complaint marked as
 7        Exhibit 4 before?
 8   A.   Yes.
 9   Q.   And did you also review it before today's
10        deposition?
11   A.   Yes.
12   Q.   Okay.  Did you review each of the complaints in
13        Exhibit 3 and 4 before they were filed?
14                  MR. LONSTEIN:  Note my objection.  You
15        can answer.
16   A.   I don't think so.
17   Q.   Did anyone at DIRECTV review the complaints
18        comprising Exhibits 3 and 4 before they were
19        filed?
20                  MR. LONSTEIN:  Note my objection to the
21        issue of attorney/client privilege.  You can
22        answer if you know.
23   A.   I don't know.
24   Q.   Let me direct your attention to Exhibit 3, and
25        specifically paragraph 5 on page 3 of Exhibit 3.
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

38

1      The last sentence of paragraph 5 begins with a

2      statement:  DIRECTV holds proprietary rights to

3      the satellite programming it transmits.  Do you

4      see that?

5   A.  I do.

6   Q.  Okay.  Is that a correct allegation?

7           MR. LONSTEIN:  Note my objection; it

8      calls for a legal conclusion, and to form.

9   A.  I don't know.

10  Q.  So you don't know whether DIRECTV holds

11     proprietary rights to the satellite programming

12     it transmits?

13          MR. LONSTEIN:  Asked and answered.

14  A.  No.

15  Q.  Who would know?

16  A.  Someone in our programming department.

17  Q.  Did you talk with anyone in your programming

18     department in preparation for this deposition?

19  A.  No.

20  Q.  Let me direct your attention to paragraph 13 of

21     the complaint.

22          MR. LONSTEIN:  Which complaint,

23     Mr. Overhauser?

24          MR. OVERHAUSER:  The same complaint,

25     Exhibit 3.

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

```
 1                    MR. LONSTEIN:  Paragraph 13?

 2                    MR. OVERHAUSER:  Yes.

 3                    MR. LONSTEIN:  Page 4?

 4                    MR. OVERHAUSER:  On page 4.

 5    BY MR. OVERHAUSER:

 6    Q.   Paragraph 13 reads:  Upon information and belief,

 7         Victor A. Spina a/k/a Victor A. Spina, Jr., and

 8         William Spina a/k/a William Anthony Spina, Jr.,

 9         were the individuals with supervisory capacity

10         and control over the activities occurring within

11         the establishment known as Texas Corral a/k/a

12         Shelbyville Texas Corral on June 4 of 2014.

13              What facts has DIRECTV had that support that

14         allegation?

15                    MR. LONSTEIN:  Note my objection to the

16         extent it calls for attorney/client or attorney

17         work product or investigative work product.  You

18         can answer.

19    A.   I don't know.

20    Q.   You don't know why DIRECTV made this allegation?

21                    MR. LONSTEIN:  Objection; asked and

22         answered.

23    A.   I don't know if they are the individuals with

24         supervisory capacity over the activities at that

25         location or that corporation.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

40

1   Q.   Okay.  Paragraph 15, which is on pages 4 to 5,

2        alleges that Victor Spina and William Spina,

3        quote, were individuals with close control over

4        the internal operating procedures and employment

5        practices of Martinsville Corral, Inc. d/b/a

6        Texas Corral a/k/a Shelbyville Texas Corral on

7        June 4, 2014.

8             Does DIRECTV have any facts to support that

9        allegation?

10            MR. LONSTEIN:  The same objection.

11  A.   I don't know.

12  Q.   Paragraph 19 of the complaint begins with a

13       sentence:  On or before June 5, 2014 --

14            MR. LONSTEIN:  I'm sorry, we're talking

15       Exhibit 3, for the record?

16            MR. OVERHAUSER:  Yeah.

17  BY MR. OVERHAUSER:

18  Q.   Again, paragraph 19 begins with the statement:

19       On or about June 4, 2014, Defendants did not have

20       a valid commercial account -- I'm sorry, let me

21       strike that.

22            Paragraph 19 says:  On or about June 4,

23       2014, Defendants did not have a valid commercial

24       account with DIRECTV.

25            Do you see that?

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

41

```
 1   A.   I do.

 2   Q.   Okay.  How does DIRECTV determine whether an

 3        account is commercial or not?

 4             MR. LONSTEIN:  Objection to form and

 5        legal conclusion.  You can answer.

 6   A.   We determine whether the account is commercial or

 7        not by looking at the account type.

 8   Q.   Where is the account type --

 9             MR. LONSTEIN:  Objection.

10   Q.   -- information stored?

11             MR. LONSTEIN:  Objection to form; the

12        same, the privilege argument.  You can answer.

13   A.   In multiple systems.

14   Q.   Where are there multiple systems located?

15             MR. LONSTEIN:  The same objection.

16   A.   I don't know.

17   Q.   What are the names of the multiple systems?

18             MR. LONSTEIN:  The same objection.

19   A.   While it not be a comprehensive list, I would

20        think that there'd be an ordering system.  I

21        don't necessarily know the exact name of that,

22        and there'd be a billing system which is called

23        STMS.

24   Q.   And who puts -- who designates an account as

25        being a commercial or some other kind of account
```

Kent Mader - Dec. December 15, 2015
**DIRECTV, LLC v. Spina, et al.**

42

1    at DIRECTV?

2              MR. LONSTEIN:   Note my objection; legal

3    conclusion.

4    A.   It's most likely the respective sales channel

5         that creates the account.

6    Q.   What is the sales channel, what do you mean by

7         that term?

8    A.   A specific channel that DIRECTV uses to perform a

9         sale.

10   Q.   Does that include persons that are not employees

11        of DIRECTV?

12             MR. LONSTEIN:   Objection to the term

13        "employees," legal conclusion.

14   A.   Yes, I believe so.

15   Q.   Would that include DIRECTV agents or

16        representatives?

17             MR. LONSTEIN:   Again, the terms call

18        for legal conclusions.

19   A.   Yes.

20   Q.   So does DIRECTV utilize various DIRECTV

21        representatives throughout the country?

22             MR. LONSTEIN:   Objection to form.

23   A.   We use independent contractors around the

24        country.

25   Q.   And are they authorized to sign customers up for

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

43

```
 1          DIRECTV accounts?
 2                  MR. LONSTEIN:  Objection to form and
 3          conclusion.
 4   A.    Yes.
 5   Q.    About how many of these representatives does
 6          DIRECTV have around the United States?
 7                  MR. LONSTEIN:  Objection.
 8   A.    I don't know.
 9   Q.    Do you have -- what's your best estimate?
10                  MR. LONSTEIN:  Objection.
11   A.    In the thousands.
12   Q.    And the DIRECTV representatives are authorized to
13          access DIRECTV's systems that record whether
14          account -- an account is commercial or
15          noncommercial?
16                  MR. LONSTEIN:  Objection to form and
17          conclusion.
18   A.    I don't know.
19   Q.    What are the different types of accounts that
20          DIRECTV has?
21                  MR. LONSTEIN:  Objection to form.  Time
22          frame, Mr. Overhauser, are you asking --
23   A.    There are residential and there are commercial
24          accounts.
25   Q.    So there's only two types?
```

1   A.   Two basic types.

2   Q.   Let me direct your attention to paragraph 28.

3            MR. LONSTEIN:   Still on Exhibit 3?

4            MR. OVERHAUSER:   Yeah, which is on

5        page 8.

6   BY MR. OVERHAUSER:

7   Q.   Paragraph 28 includes the phrase "goodwill and

8        reputation."  Do you see that in the middle?

9   A.   I do.

10  Q.   Does -- in this complaint is DIRECTV alleging

11       that its goodwill and reputation have been

12       damaged by the actions of the defendants?

13           MR. LONSTEIN:   Objection to form.

14  A.   It appears so.

15  Q.   And let me direct your attention -- and in this

16       complaint is DIRECTV seeking actual damages?

17           MR. LONSTEIN:   Objection.   When -- are

18       we referring again to Exhibit 3, Mr. Overhauser?

19           MR. OVERHAUSER:   Yes.

20           MR. LONSTEIN:   Okay.   Objection to

21       legal conclusions.

22  A.   Can you point to where in the complaint?

23  Q.   Fair enough.   Let me direct your attention to

24       page 11 of Exhibit 3.

25  A.   Okay.

Kent Mader - Dec.
December 15, 2015
DIRECTV, LLC v. Spina, et al.

45

 1   Q.   And specifically to subsection C.  I'll just read

 2        this section out loud for you.

 3             C.   Award DIRECTV statutory damages in the

 4        amount of the greater of $10,000 or $100 per day

 5        for each day Defendants violated 18 U.S.C.

 6        Section 12 - 2511 or alternatively, DIRECTV

 7        requests judgment for actual damages -- so on and

 8        so forth.  Is --

 9             MR. LONSTEIN:  Objection to form.

10             MR. OVERHAUSER:  I haven't even asked a

11        question yet, Counsel.

12             MR. LONSTEIN:  That's the form.

13             MR. OVERHAUSER:  That's not funny.

14   BY MR. OVERHAUSER:

15   Q.   Is DIRECTV seeking actual damages by the

16        complaint shown in Exhibit 3?

17             MR. LONSTEIN:  Objection.

18   A.   It appears so, as an alternative.

19   Q.   Okay.  And in subparagraph D of that same page,

20        it again seeks actual damages under 47 U.S.C.

21        605; would you agree?

22             MR. LONSTEIN:  Objection.

23   A.   Could you point me to that?

24   Q.   In subsection D, the phrase "actual damages"

25        appears in the last three lines of subsection D.

1       Do you see that?

2   A.   I do.

3               MR. LONSTEIN:   The same objection.

4   BY MR. OVERHAUSER:

5   Q.   Just so we're clear, is DIRECTV also seeking

6        actual damages from the defendants pursuant to

7        subsection D on page 11 of Exhibit 3?

8               MR. LONSTEIN:   Objection.   The question

9        misstates the document.

10  A.   It appears so.

11  Q.   And are the actual damages that DIRECTV is

12       seeking, do they include damages to its goodwill

13       or reputation?

14              MR. LONSTEIN:   Objection; it calls for

15       a legal conclusion.

16              MR. SMITH:   I'm also going to object

17       because that misstates the prayer for relief.

18       There is nothing in a prayer that talks about

19       damages for goodwill or reputation.

20              MS. DeVORE:   I'll join in the

21       objection.

22  A.   I don't know.

23  Q.   Who would know?

24              MR. LONSTEIN:   Objection.

25  A.   Our attorneys.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

47

```
 1   Q.   Okay.  If DIRECTV's goodwill or reputation was

 2        damaged, would DIRECTV want compensation for that

 3        damage and --

 4             MR. LONSTEIN:  Objection; hypothetical.

 5   A.   I don't know.

 6             MR. SMITH:  Show me joining in the

 7        objection on that question.

 8             MR. LONSTEIN:  Can I -- Paul, while

 9        you're looking, what's your comfort level?  We

10        are about an hour in.  Do you need a break at any

11        particular time, do you want to --

12             THE WITNESS:  Yeah, within the next few

13        minutes that'd be great.

14             MR. LONSTEIN:  Paul, can you build in

15        somewhere that maybe, you know, a quarter after

16        the hour or something we'll take a couple

17        minutes --

18             MR. OVERHAUSER:  Sure.

19             MR. LONSTEIN:  -- comfort break?  Thank

20        you.

21             MR. OVERHAUSER:  Yeah.  Let me just ask

22        about this exhibit, then we can take a break.

23             THE WITNESS:  Thank you.

24             (Defendants' Exhibit No. 5 was marked

25        for identification.)
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

48

1   BY MR. OVERHAUSER:

2   Q.   Let me hand you what's been marked as Exhibit 5.

3   A.   Am I done with this exhibit for now?

4   Q.   Well, you can set it aside.

5   A.   Okay.

6   Q.   I may come back to it.

7           Exhibit 5 is a document that has been

8       produced to us by DIRECTV, and it appears to be

9       some type of terms and conditions.  Have you ever

10      seen the terms and conditions shown in Exhibit 5?

11          MR. LONSTEIN:  Objection to form;

12      objection to the phrase "terms and conditions."

13      You can answer.

14  A.   I believe I've seen this before.

15  Q.   Let me direct your attention to the third page of

16      this document, and in particular, subparagraph H

17      on that page.  I believe it's Section 1, sub H,

18      entitled "Private Viewing."  Do you see that?

19  A.   I do.

20  Q.   The first sentences of this says:  We provide

21      service only for your private non-commercial use,

22      enjoyment and home viewing.  The programming may

23      not be viewed in areas open to the public or in

24      commercial establishments.

25          Does DIRECTV attempt to exercise privacy

Kent Mader - Dec ember 15, 2015
**DIRECTV, LLC v. Spina, et al.**

49

1    rights with respect to its programming by this

2    subsection 1H?

3              MR. LONSTEIN:  Objection to form.

4  A.  I don't know.

5  Q.  Who would know?

6  A.  Our lawyers.

7  Q.  Okay.  You've been designated as a 30(b)(6)

8    representative for DIRECTV.  One of the topics is

9    any agreements that DIRECTV claims to have with

10   its subscribers.  Are you saying that you're not

11   prepared to talk about the terms of Section 1H

12   today at this deposition?

13             MR. LONSTEIN:  Objection;

14   argumentative, and misstates his testimony.

15 A.  I can't talk about it.

16 Q.  Because you don't know?

17             MR. LONSTEIN:  Objection.

18 BY MR. OVERHAUSER:

19 Q.  Let me restate that.  Are you saying that you

20   don't know whether or not DIRECTV attempts to

21   create privacy rights through this Section 1H,

22   entitled "Private Viewing"?

23             MR. LONSTEIN:  Objection to form.

24 A.  Yes.  I don't know, I'm not a lawyer.

25             MR. OVERHAUSER:  Do you want to take a

1      break now?

2                    THE WITNESS:  Sure.

3                    MR. LONSTEIN:  Sure.

4                    THE WITNESS:  Thank you.

5                    (A brief recess is taken, after which

6            the following proceedings are had.)

7      BY MR. OVERHAUSER:

8      Q.   Mr. Mader, has Craig Spencer been a

9           representative of DIRECTV?

10                   MR. LONSTEIN:  Objection.

11     A.   I believe he's an independent contractor of

12          DIRECTV.

13     Q.   That's good to know.  But my question was whether

14          he has been a representative of DIRECTV.

15                   MR. LONSTEIN:  Objection; calls for a

16          legal conclusion.

17     A.   I know him as an independent contractor.  I don't

18          necessarily know the legal definitions of a

19          representative versus an independent contractor.

20     Q.   Well, what does he do as an independent

21          contractor for DIRECTV?

22     A.   I believe he's -- he is or has been a dealer of

23          ours.

24     Q.   What does a dealer of DIRECTV do?

25     A.   They solicit and sell customers service.

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 52 of 158 PageID #:

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

51

1   Q.   DIRECTV services?

2   A.   Yes.

3   Q.   So they would represent DIRECTV services to

4        customers?

5            MR. LONSTEIN:   Objection to form.

6   A.   In that context, it appears, yes.

7   Q.   So would it be -- would it be fair to say that

8        Craig Spencer has been a representative for

9        DIRECTV?

10           MR. LONSTEIN:   Objection to form.

11  A.   In that context, I agree with that.

12  Q.   And in that capacity would DIRECTV have the

13       ability to sign up customers of DIRECTV?

14           MR. LONSTEIN:   Objection to form.

15  A.   Can you repeat the question?

16  Q.   In that capacity would Craig Spencer have had a

17       right to subscribe customers to DIRECTV's

18       services?

19           MR. LONSTEIN:   Objection to form.

20  A.   Yes.

21  Q.   So by subscribing a customer to DIRECTV services,

22       that would entitle the customer to receive

23       DIRECTV programming, correct?

24           MR. LONSTEIN:   Objection to form.

25  A.   Yes.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

52

1  Q.   And once a customer has been signed up -- let me
2       strike that.
3            Once a customer has been subscribed by Craig
4       Spencer, DIRECTV would be obligated to provide
5       that customer with DIRECTV programming, correct?
6            MR. LONSTEIN:  Objection to form and
7       legal conclusion.
8  A.   We would provide service to that customer, yes.
9       I don't know about obligated, but we provide
10      service.
11 Q.   Well, could Craig Spencer have signed up a
12      DIRECTV customer on his own, or would he have
13      been required to, in every instance, get approval
14      in advance by somebody else of DIRECTV?
15           MR. LONSTEIN:  Objection to form and
16      hypothetical.
17 A.   Craig Spencer would work in conjunction with
18      DIRECTV.  I wouldn't necessarily say he has to
19      have it approved by DIRECTV.
20 Q.   Would Craig Spencer have been able to get a
21      customer subscribed to DIRECTV without ever
22      talking to anybody else at DIRECTV?
23           MR. LONSTEIN:  Objection to form.
24 A.   Yes.
25 Q.   And what steps would Craig Spencer or another

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 54 of 158 PageID #:

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

53

 1        representative do to cause a customer to have a

 2        DIRECTV subscription?

 3                MR. LONSTEIN:   Objection to form.

 4   A.   They could either talk to DIRECTV and ask to

 5        activate the account, or they might be able to do

 6        it online electronically without speaking to a

 7        DIRECTV person.

 8   Q.   So Craig Spencer would be able to subscribe a

 9        customer to DIRECTV services online?

10                MR. LONSTEIN:   The same objection.

11   A.   He may.

12   Q.   Could they also -- could he also subscribe a

13        DIRECTV customer via a touchtone telephone?

14                MR. LONSTEIN:   The same objection.

15   A.   I don't know.

16   Q.   Can you describe in as much detail as you can the

17        specific steps that a representative like Craig

18        Spencer would do to subscribe a customer to

19        DIRECTV services online?

20                MR. LONSTEIN:   Objection.

21   A.   He would use an online system to input the

22        necessary information and request an activation.

23   Q.   What information would need to be input for the

24        customer?

25                MR. LONSTEIN:   Note my objection to

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

54

1       form.  And we're not asking a specific, just in

2       general?

3  A.  It would include, and may not be comprehensive,

4       but it would include the customer information,

5       such as location, it could be a name or it could

6       be a business name, consumer name or a business

7       name, it could be the account type as we

8       referenced before, commercial or residential, and

9       it would include the set-top boxes that are

10      associated with that new activation.

11  Q.  How would the set-top boxes be identified?

12  A.  Through their serial numbers.

13  Q.  So is a set-top box the same thing as a DIRECTV

14      receiver?

15  A.  Yes.

16  Q.  And each one has a unique serial number?

17  A.  I believe so.

18  Q.  Does DIRECTV ship DIRECTV receivers directly to

19      consumers?

20           MR. LONSTEIN:  Objection.

21  A.  Yes.

22  Q.  Does DIRECTV ship DIRECTV receivers to its

23      representatives like Craig Spencer?

24           MR. LONSTEIN:  Objection.

25  A.  I believe so.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

55

```
 1   Q.   Does DIRECTV keep track of, for each receiver it

 2        ships, to whom it ships the receiver?

 3             MR. LONSTEIN:  Objection to form.

 4   A.   I don't know.

 5   Q.   Has DIRECTV ever investigated the serial numbers

 6        on the receivers that were associated with the

 7        DIRECTV account that is at issue in this

 8        litigation?

 9             MR. LONSTEIN:  Objection to form, to

10        the extent that he can answer yes or no without

11        divulging any attorney work product.

12   A.   I believe so.

13   Q.   And what have you learned from that

14        investigation?

15   A.   Could you clarify the question?

16   Q.   I believe you testified that DIRECTV has

17        investigated whom the receivers that were

18        associated with the DIRECTV subscription in this

19        case were originally sent to by DIRECTV.

20   A.   Were originally sent to by DIRECTV?  I'm not

21        understanding that part.

22   Q.   Yeah, this is getting confusing.  I'll ask it in

23        another way.

24             There are a variety of DIRECTV receivers

25        that have been associated with the DIRECTV
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

56

1        account at issue in this case, right?

2                MR. LONSTEIN:  Objection to form.

3    A.   Yes, I believe so.

4    Q.   And has anyone at DIRECTV ever looked up the

5        serial numbers of those receivers to see to whom

6        they were shipped?

7                MR. LONSTEIN:  The same objection.

8    A.   I don't know.

9    Q.   Are you ever aware of any instance in which a

10       representative of DIRECTV that signs up a

11       customer has made a mistake in entering a

12       customer's information into the DIRECTV online

13       system?

14               MR. LONSTEIN:  Objection to form, it

15       calls for a hypothetical.

16   A.   Yes.

17   Q.   So do DIRECTV's systems that it uses to track

18       information about its subscribers have one

19       hundred percent correct information all the time?

20               MR. LONSTEIN:  Objection to form.

21   A.   No.

22   Q.   So DIRECTV systems that it uses to track customer

23       information has mistaken information in it,

24       correct?

25               MR. LONSTEIN:  Objection to form,

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

57

1       assumes facts not testified to.

2   A.  Yeah.  If it's not a hundred percent, there might

3       be some errors in there.

4   Q.  Did Craig Spencer provide the information used to

5       set up the account for the DIRECTV subscription

6       that's at issue in this litigation?

7   A.  I don't know.

8   Q.  Do you know whether the DIRECTV subscription that

9       is at issue in this litigation is associated with

10      Craig Spencer?

11              MR. LONSTEIN:  Objection to form and

12      the term "associated."

13  A.  I believe so.

14  Q.  And how did you come to that conclusion?

15  A.  Speaking with counsel.

16  Q.  Did you look up any information in DIRECTV's

17      customer information database to verify that?

18  A.  I did.

19  Q.  And did it confirm that Craig Spencer was

20      associated with the DIRECTV subscription that is

21      at issue in this litigation?

22  A.  Upon looking at those documents, I do not

23      remember.

24  Q.  But based on the conversations you've had with

25      DIRECTV's attorneys, you now believe that Craig

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

58

1     Spencer set up the account?

2          MR. LONSTEIN:  Objection to form.

3  A.  I don't know.

4  Q.  Okay, forgive me.  I thought you just testified a

5     minute ago that Craig Spencer was associated with

6     the subscription that's at issue in this

7     litigation.

8  A.  That's correct.

9  Q.  But now you say you don't know.

10         MR. LONSTEIN:  Objection.

11  Q.  Can you explain?

12  A.  Sure.  I believe your question was something to

13     the effect of whether Craig Spencer set the

14     account up.  I don't know that.  He's associated

15     with the account, based on my conversations with

16     legal counsel, but I do not know whether he set

17     it up personally.

18  Q.  Okay.  Is it your understanding that whoever did

19     set it up used Craig Spencer's dealer number to

20     do so?

21         MR. LONSTEIN:  Objection.

22  A.  Yes.

23  Q.  Is it your understanding that Craig Spencer or

24     persons acting at his direction installed the

25     DIRECTV receivers at the Shelbyville Texas Corral

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

59

```
 1        and the Martinsville Texas Corral?

 2                  MR. LONSTEIN:   Objection to form.

 3    A.  I don't know.

 4    Q.  Do you have any idea at all who installed the

 5        DIRECTV receivers that are located -- strike

 6        that.

 7             Do you have any idea at all who installed

 8        the DIRECTV receivers that were located at the

 9        Shelbyville Texas Corral and the Martinsville

10        Texas Corral?

11                  MR. LONSTEIN:   Objection to form.

12    A.  I don't.

13    Q.  Do you have any reason to believe that Craig

14        Spencer or persons operating at his direction did

15        not install those receivers at the Shelbyville

16        Texas Corral and Martinsville Texas Corral?

17                  MR. LONSTEIN:   Form.

18    A.  I don't know.

19    Q.  Is it your understanding that someone affiliated

20        with Craig -- strike that.

21             Is it your understanding that someone using

22        Craig Spencer's DIRECTV dealer number specified

23        the subscription type for the DIRECTV receivers

24        located at the Shelbyville Texas Corral and the

25        Martinsville Texas Corral?
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

```
 1                    MR. LONSTEIN:  Objection to form.

 2   A.   I don't know.

 3   Q.   Does DIRECTV have any information that would

 4        contradict the assertion that Craig Spencer or

 5        persons at his direction installed the DIRECTV

 6        receivers at the Shelbyville Texas Corral and the

 7        Martinsville Texas Corral?

 8                    MR. LONSTEIN:  Objection to form.

 9   A.   I don't think so.

10   Q.   Does DIRECTV have any information that would

11        contradict the assertion that Craig Spencer or

12        persons working at his direction set up the

13        subscription for the DIRECTV receivers located at

14        the Shelbyville Texas Corral and the Martinsville

15        Texas Corral?

16                    MR. LONSTEIN:  The same objection.

17   A.   I don't know.

18   Q.   You don't know whether DIRECTV has any

19        information that would contradict that assertion

20        or --

21                    MR. LONSTEIN:  Asked and answered.

22   Q.   -- you don't know or you're not aware of any

23        information that contradicts the assertion?

24   A.   I don't know.

25   Q.   Did DIRECTV take any action that caused the
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

61

```
 1          DIRECTV receivers at the Shelbyville Texas Corral
 2          and the Martinsville Texas Corral to be able to
 3          receive satellite programming from DIRECTV?
 4                    MR. LONSTEIN:  Objection to form.
 5     A.   Could you clarify the question?
 6     Q.   Okay.  When a new customer get a subscription to
 7          DIRECTV and gets a DIRECTV receiver, does DIRECTV
 8          need to authorize that receiver by sending it a
 9          signal?
10                    MR. LONSTEIN:  Objection to form.
11     A.   Yes.
12     Q.   Did DIRECTV authorize the receivers that were
13          located at the Shelbyville Texas Corral and the
14          Martinsville Texas Corral so that they were able
15          to receive satellite programming from DIRECTV?
16                    MR. LONSTEIN:  Objection to form.
17     A.   I believe so.
18     Q.   Just so we're clear, is it your understanding
19          that the DIRECTV receivers located at the
20          Martinsville Texas Corral and Shelbyville Texas
21          Corral were associated with DIRECTV account
22          number -- I think it's on here -- 45448353?
23                    MR. LONSTEIN:  Objection to form, and
24          also to the extent that it seeks any identifiers
25          with respect to a possible individual satellite
```

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 63 of 158 PageID #:

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

62

```
 1        viewer's account, you're not allowed to answer
 2        that.  If you know.
 3   A.   Can you point me to what you're referencing?
 4               MR. LONSTEIN:  And to the extent, for
 5        the record, Paul, to save time, that we get a
 6        protective order in place, we can leave some
 7        blanks in the transcript so that Mr. Mader can
 8        provide authorized information to the degree it's
 9        relevant to save time.
10               MR. OVERHAUSER:  Well, that's fine.  I
11        just hope we won't have any problems with
12        over-designations.  I'm just asking about
13        information that's already in the complaint that
14        you filed.
15               (Defendants' Exhibit No. 6 was marked
16        for identification.)
17   BY MR. OVERHAUSER:
18   Q.   I've handed you what has been marked as
19        Exhibit 6.  Have you seen this document before?
20   A.   I have not.
21   Q.   Have you seen -- do you recognize it from the
22        format that it's in?
23   A.   I do.
24   Q.   What would you call this type of document?
25   A.   It's an order form.
```

1   Q.   And this indicates that this contains the legend

2        dealer, 1311782.  Do you see that?

3   A.   Can you point me to where you're looking at?

4   Q.   (Indicating.)

5   A.   I see that.

6   Q.   Okay.  Is that the dealer number for Craig

7        Spencer?

8   A.   I don't know.

9   Q.   How would you find out whether or not it is?

10  A.   I would ask somebody in our sales department.

11  Q.   Is this an order form for a DIRECTV subscription

12       that has been assigned DIRECTV account number

13       45448353?

14  A.   Can you point to me where you're looking at?

15  Q.   (Indicating.)

16            MR. LONSTEIN:  Let the record reflect

17       that Mr. Overhauser has pointed to the middle of

18       page 1 of Exhibit 6 under the title -- do you

19       have this, by the way?

20            MS. DeVORE:  Yes.

21            MR. LONSTEIN:  I'm sorry.

22            MS. DeVORE:  That's okay.

23            MR. LONSTEIN:  Under the title "DIRECTV

24       Order Information."

25  A.   Could you repeat the question?

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 65 of 158 PageID #:
1806

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

64

1   Q.   Sure.  Does Exhibit 6 reflect a DIRECTV

2        subscription for DIRECTV account number 45448353?

3   A.   It appears so.

4   Q.   And does it appear to show that the subscription

5        was initiated by the dealer having a dealer

6        number of 1311782?

7             MR. LONSTEIN:   Again, objection to

8        form.

9   A.   Yes.

10  Q.   Does Exhibit 6 indicate anywhere on it whether

11       the subscription is a residential subscription or

12       a commercial subscription?

13            MR. LONSTEIN:   Objection to form and

14       conclusion.

15  A.   I don't see an account type here.

16  Q.   So it doesn't indicate whether it's commercial or

17       residential?

18            MR. LONSTEIN:   Just make sure you have

19       both pages there.

20  A.   Yeah, I don't see an account type here.

21  Q.   So is it fair to say that based on the

22       information in Exhibit 6, it would be impossible

23       for anyone at DIRECTV to conclude whether the

24       subscription shown in Exhibit 6 is commercial or

25       residential?

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

65

```
 1                    MR. LONSTEIN:  Objection to form.
 2    A.   Based on this document, one could conclude that,
 3         only this document, that an indicator might be
 4         that this is a residential order based on the
 5         programming packages that I see down here.
 6    Q.   Would that be speculation or would that be
 7         conclusive?
 8                    MR. LONSTEIN:  Objection to form.
 9    A.   Conclusive.
10    Q.   Based on what?
11    A.   The fact that I see HBO is ordered as one of the
12         programming options, as well as the programming
13         package called Choice Xtra is on the order form,
14         and on page 2 there is some reference to Showtime
15         and Starz programming.
16    Q.   Is each of the rolls that you're referring to a
17         type of programming that was provided when this
18         account was initially set up?
19                    MR. LONSTEIN:  Objection to form.
20    A.   It appears so.
21    Q.   Are commercial subscriptions prohibited from
22         getting HBO?
23    A.   Yes.
24    Q.   Are commercial subscriptions prohibited from
25         getting Showtime?
```

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 67 of 158 PageID #:
1366

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

66

1    A.    Yes.

2    Q.    Sometimes I stay at a hotel that has TV

3          programming through DIRECTV and I can get HBO on

4          it.

5                MR. LONSTEIN:  Are you -- is there a

6          question or --

7                MR. OVERHAUSER:  Yeah.

8                MR. LONSTEIN:  Okay.  I'm sorry.

9    BY MR. OVERHAUSER:

10   Q.    Are you aware whether or not that's possible?

11               MR. LONSTEIN:  Objection to --

12   A.    Yes.

13   Q.    It is possible for a --

14   A.    Yes.

15   Q.    -- for a hotel to get a HBO DIRECTV subscription?

16   A.    Yes.

17               MR. LONSTEIN:  Objection to form.

18   Q.    And would that be a commercial account?

19   A.    Yes.

20   Q.    So DIRECTV does allow commercial accounts to get

21         HBO, correct?

22               MR. LONSTEIN:  Objection to form, and

23         the specific objection is to where in the hotel.

24   A.    Can you repeat the question, please?

25               (The requested material was read back

Kent Mader – December 15, 2015
DIRECTV, LLC v. Spina, et al.

67

 1        by the court reporter.)

 2   A.   Yes.

 3   Q.   And DIRECTV allows commercial accounts to get

 4        Showtime, correct?

 5             MR. LONSTEIN:   The same objection.

 6   A.   In specific commercial applications, yes.

 7   Q.   And DIRECTV allows commercial accounts to get

 8        Choice Xtra Classic also, don't they?

 9             MR. LONSTEIN:   The same objection.

10   A.   No.

11   Q.   Are you aware of any instance in which the -- let

12        me take a step back.

13             When I say the DIRECTV account at issue in

14        this litigation, I'm referring to the one that's

15        reflected by Exhibit 6, okay?

16   A.   Okay.

17   Q.   Are you aware of any instance in which the

18        subscription amounts owing for the account at

19        issue in this litigation have not been timely

20        paid?

21   A.   I don't know.

22   Q.   Have you investigated that?

23   A.   No.

24   Q.   Do you have any facts that would contradict the

25        assertion that the subscription in this case has

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 69 of 158 PageID #:

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

68

1      never been past due?

2              MR. LONSTEIN:   Objection to form.

3   A.  I don't know.

4   Q.  Did DIRECTV de-authorize the DIRECTV receivers

5       associated with the account at issue in this

6       litigation?

7              MR. LONSTEIN:   Objection to form.

8   A.  I believe so.

9              (Defendants' Exhibit No. 7 was marked

10      for identification.)

11  BY MR. OVERHAUSER:

12  Q.  I'll hand you what has been marked as Exhibit 7.

13             MR. LONSTEIN:   Do you guys have it?

14      All right.

15  BY MR. OVERHAUSER:

16  Q.  Exhibit 7 are two letters dated June 27, 2014,

17      from Lonstein Law Offices.   Have you ever seen

18      these letters before?

19  A.  I have not.

20  Q.  Have you ever seen letters of this type before?

21             MR. LONSTEIN:   Objection to the form.

22  A.  I have.

23  Q.  And letters of this -- have you ever seen letters

24      of this type that have been sent by Lonstein Law

25      Offices?

69

```
 1                    MR. LONSTEIN:   The same objection.

 2   A.   Yes.

 3   Q.   Is this a typical letter that is, in your

 4        experience, that is sent by Lonstein Law Offices

 5        when a DIRECTV account is de-authorized?

 6                    MR. LONSTEIN:   Objection.

 7   A.   I don't know.

 8   Q.   Is it your understanding that this letter was

 9        sent at the same time the DIRECTV receivers at

10        issue in this litigation were de-authorized by

11        DIRECTV?

12                    MR. LONSTEIN:   Objection as to form.

13   A.   I don't know.

14   Q.   Who would know?

15   A.   Probably counsel.

16   Q.   Does counsel have the ability to authorize and

17        de-authorize DIRECTV receivers?

18                    MR. LONSTEIN:   Objection; a matter of

19        attorney/client privilege.

20   A.   They have the ability to communicate to somebody

21        who can de-activate an account.

22   Q.   And will DIRECTV follow the instructions to

23        de-activate an account that it receives from

24        Lonstein Law Offices.

25                    MR. LONSTEIN:   Objection; it calls for
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

70

```
 1        attorney/client privilege communications.  I'm

 2        directing him not to answer that question.

 3                  MR. OVERHAUSER:  It doesn't call for

 4        attorney/client privileges.  It asks for what

 5        actions DIRECTV would take.

 6                  MR. LONSTEIN:  Mark it, we can mark it

 7        for a ruling.  If you want to be specific, change

 8        your question.

 9   BY MR. OVERHAUSER:

10   Q.   Does DIRECTV de-act -- I'm sorry.  Does DIRECTV

11        de-authorize DIRECTV receivers at the direction

12        of outside attorneys like Lonstein Law Offices?

13                  MR. LONSTEIN:  The same objection.  If

14        you know.

15   A.   I believe so.

16   Q.   Does DIRECTV have any internal procedure to make

17        its own determination as to a recommended

18        de-authorization that is recommended by outside

19        counsel, or does it automatically just do what

20        they say?

21                  MR. LONSTEIN:  Objection to term

22        "recommendation."  You can answer.

23   A.   I don't know.

24   Q.   Who would know?

25   A.   Our counsel, John Green.
```

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 72 of 158 PageID #:

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

71

1   Q.   Does DIRECTV have an ongoing agreement with

2        Lonstein Law Offices to pursue suspected theft of

3        DIRECTV signals?

4             MR. LONSTEIN:  Objection to form, also

5        it calls for attorney/client information.  To the

6        extent you know, if you know.

7   A.   I believe so.

8   Q.   Has DIRECTV essentially given Lonstein Law

9        Offices free rein to decide when to de-authorize

10       a DIRECTV subscription?

11            MR. LONSTEIN:  Objection to form,

12       attorney/client privilege, misstates your

13       testimony.  To the extent you can answer.

14  A.   I don't know.

15            MR. LONSTEIN:  Off the record one

16       second.

17            (A discussion is held off the record.)

18  BY MR. OVERHAUSER:

19  Q.   Can you describe the relationship that DIRECTV

20       has with Lonstein Law Offices?

21            MR. LONSTEIN:  Objection to the extent

22       it doesn't call for attorney/client privilege.

23       You can answer.

24  A.   Lonstein Law Offices are an outside counsel of

25       DIRECTV's legal department and have been utilized

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

72

1        to pursue claims of theft of programming.

2   Q.   And for how long has DIRECTV utilized Lonstein

3        Law Offices?

4               MR. LONSTEIN:   The same objection.

5   A.   I don't know.

6   Q.   It's been for over ten years, right?

7               MR. LONSTEIN:   Objection to form.

8   A.   It sounds about right.

9   Q.   And is Lonstein Law Offices compensated on a

10       retainer basis or on a contingency basis or both?

11              MR. LONSTEIN:   Objection to form, calls

12       for attorney/client privilege information.   If

13       you know.

14  A.   I don't know the specifics.

15  Q.   Who would know?

16  A.   My counsel, John Green.

17  Q.   Do you know whether the litigation Lonstein Law

18       Offices has filed in this matter has been one

19       that DIRECTV has had to pay Lonstein Law Offices

20       extra for?

21              MR. LONSTEIN:   Objection to form;

22       objection to the question, seeking, again,

23       attorney -- God bless you --

24              MS. DeVORE:   Thank you.

25              MR. LONSTEIN:   -- attorney/client

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

73

 1       privilege information.  I don't think it's a

 2       proper question.  But for the purposes if you

 3       know, you can answer the question, reserving my

 4       objection.

 5   A.  I don't know.

 6   Q.  You testified earlier that DIRECTV authorized the

 7       DIRECTV receivers that are at issue in this

 8       litigation, correct?

 9            MR. LONSTEIN:  Objection to form.

10   A.  Could you clarify what I exactly said?

11   Q.  Okay.  Well, maybe you didn't say it, but there

12       were DIRECTV receivers located at the Shelbyville

13       Texas Corral and the Martinsville Texas Corral,

14       correct?

15            MR. LONSTEIN:  Objection to form.

16   A.  Yes.

17   Q.  And each of those receivers had been authorized

18       by DIRECTV to receive DIRECTV programming,

19       correct?

20            MR. LONSTEIN:  The same objection.

21   A.  They had been activated at some point.  I don't

22       know when.

23   Q.  Okay.  Is that the same as -- when they're

24       activated, does that mean the TV programming can

25       be viewed through these receivers?

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

74

```
 1   A.   Yes.

 2   Q.   And then those receivers were de-authorized later

 3        by DIRECTV at the direction of Lonstein Law

 4        Offices, correct?

 5             MR. LONSTEIN:  Objection to form, it

 6        assumes facts he hasn't testified to.  If you can

 7        answer.

 8   A.   Based on my conversations with our counsel, that

 9        appears correct.

10   Q.   So during the time period when the receivers were

11        authorized, the persons were entitled to view

12        programming through those receivers, correct?

13             MR. LONSTEIN:  Objection to form.  If

14        you can answer.

15   A.   Who do you mean "persons"?

16   Q.   Human beings.

17             MR. LONSTEIN:  The same objection.

18   A.   I would assume so.

19   Q.   Did DIRECTV de-authorize the DIRECTV receivers at

20        Martinsville Texas Corral and Shelbyville Texas

21        Corral at the request of Lonstein Law Offices?

22             MR. LONSTEIN:  Asked and answered, the

23        same objection.

24   A.   I believe so.

25   Q.   Does any employee of DIRECTV have any personal
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

75

```
 1        knowledge that a satellite dish capable of

 2        receiving DIRECTV signals has ever been

 3        operational at 785 East Timber Drive,

 4        Martinsville, Indiana 46151?

 5   A.   What was the address again you referenced?

 6   Q.   785 East Timber Drive, Martinsville, Indiana

 7        46151.

 8   A.   And your question was whether a DIRECTV employee

 9        is aware whether service was received there?

10   Q.   No.

11             MR. LONSTEIN:  Can we restate the

12        question, please?

13   BY MR. OVERHAUSER:

14   Q.   Does any DIRECTV employee have any knowledge that

15        there was a -- ever a satellite dish capable of

16        receiving DIRECTV signals at 785 East Timber

17        Drive, Martinsville, Indiana 46151?

18   A.   I don't know.

19   Q.   Does any employee of DIRECTV have any knowledge

20        that a DIRECTV receiver capable of receiving

21        DIRECTV signals has ever been present at 785 East

22        Timber Drive, Martinsville, Indiana 46151?

23             MR. LONSTEIN:  Objection to form.

24   A.   I don't know.

25
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

```
 1              (Defendants' Exhibit No. 8 was marked

 2         for identification.)

 3  BY MR. OVERHAUSER:

 4  Q.   Let me hand you what's been marked as Exhibit 8,

 5       which is a photograph of an armrest from an

 6       airplane.  Does DIRECTV make DIRECTV programming

 7       available to some airline passengers?

 8              MR. LONSTEIN:  Object to the form.

 9  A.   Yes.

10  Q.   And can some airline passengers watch DIRECTV

11       while they're flying on an airplane using a

12       control pad as shown in Exhibit 8?

13              MR. LONSTEIN:  Objection to form.

14  A.   It appears like it.

15  Q.   Does DIRECTV require these airline passengers to

16       sign any agreement before viewing DIRECTV

17       programming using the control shown in Exhibit 8?

18              MR. LONSTEIN:  Objection to the form,

19       it calls for a legal conclusion.

20  A.   I don't know.

21  Q.   Do you know whether DIRECTV requires an agreement

22       with each person that views DIRECTV programming?

23              MR. LONSTEIN:  Objection to form.

24  A.   I don't know if it's a hundred percent of all of

25       our customers.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

77

1   Q.   Okay.  My question was a little bit different.  I
2        wasn't asking about customers.
3               MR. LONSTEIN:  You're asking viewers,
4        correct?
5               MR. OVERHAUSER:  Well, people.  Okay.
6        I'll take your suggestion.
7               MR. LONSTEIN:  Right.  I want him to
8        answer a question that he knows he's answering,
9        please.  Thank you.
10  BY MR. OVERHAUSER:
11  Q.   Does DIRECTV have an agreement with each person
12       that views DIRECTV programming?
13  A.   I don't think so.
14              MR. LONSTEIN:  Paul, just for the
15       record, they have a dog-watching channel.  My dog
16       watches that channel for entertainment.  So, I
17       don't know if he's a person, but he's a viewer.
18              MR. OVERHAUSER:  Okay.
19  BY MR. OVERHAUSER:
20  Q.   Is it true that DIRECTV allows persons to view
21       DIRECTV programming who do not have a
22       subscription agreement with DIRECTV?
23              MR. LONSTEIN:  Objection to form.
24  A.   It appears so.
25  Q.   Do you have a DIRECTV subscription in your home?

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

78

```
 1                    MR. LONSTEIN:  Objection.

 2   A.   Yes.

 3   Q.   Or I should say -- okay.  And are you the

 4        subscriber for the DIRECTV account at your home?

 5                    MR. LONSTEIN:  Objection to form,

 6        relevancy.  If you want to answer, you can.

 7   A.   Yes.

 8   Q.   If someone's -- you're authorized by DIRECTV to

 9        watch DIRECTV programming in your home, correct?

10   A.   Yes.

11   Q.   Are there any other people that live in your

12        household with you?

13                    MR. LONSTEIN:  Objection.

14   A.   No.

15   Q.   Let's talk about a hypothetical family in which

16        there's a family and the -- let's just say the

17        husband subscribes to DIRECTV, and he has a wife

18        and two kids living with him and a DIRECTV

19        residential subscription, okay?  In that scenario

20        would the husband be authorized to view DIRECTV

21        programming?

22                    MR. LONSTEIN:  Objection to form.

23   A.   I believe so.

24   Q.   Would the wife be authorized to view DIRECTV

25        programming?
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

79

```
 1                    MR. LONSTEIN:  The same objection.

 2   A.   I believe so.

 3   Q.   Would the kids be authorized to view DIRECTV

 4        programming?

 5                    MR. LONSTEIN:  The same objection.

 6   A.   I believe so.

 7   Q.   So does DIRECTV -- would the wife and the kids be

 8        authorized just by virtue of the fact that the

 9        receiver had been authorized by DIRECTV to

10        receive DIRECTV programming?

11                    MR. LONSTEIN:  Objection; it calls for

12        a conclusion.  If you know.

13   A.   I don't know.

14   Q.   Well, why do you think they would be authorized?

15                    MR. LONSTEIN:  Objection;

16        argumentative.

17   A.   They're in the same household as the subscriber.

18   Q.   Is there something that DIRECTV does to authorize

19        members of a household to view DIRECTV

20        programming if another member of the household

21        has a DIRECTV subscription?

22                    MR. LONSTEIN:  Objection to form.

23   A.   I'm not an attorney to be able to explain the

24        relationship between DIRECTV and other members of

25        the household based on an authorization.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

80

1   Q.   Well, does DIRECTV maintain a list of every

2        person that is authorized to view DIRECTV

3        programming?

4             MR. LONSTEIN:  Objection.

5   A.   In the context of your question about this

6        hypothetical family, we don't have any

7        information of the wife or the two children.  So

8        I would say in that context, no.

9   Q.   Okay.  How about for a commercial account, does

10       DIRECTV have any knowledge of the identity of

11       everyone that isn't authorized by DIRECTV to

12       watch DIRECTV programming through a DIRECTV

13       receiver that's been set up for a commercial

14       account?

15            MR. LONSTEIN:  Objection to form.

16  A.   We would not have any knowledge of all the

17       entities or persons that are viewing our

18       programming.  I don't know about authorization.

19       That's to me a legal term, and I don't

20       necessarily understand the relationship between

21       us and our viewers that may not be subscribers

22       legitimately to accounts.

23  Q.   Well, I'm -- this is an important issue so I want

24       to make sure we're clear.  Do you have to be a

25       person that has your name on a DIRECTV

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 82 of 158 PageID #:

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

81

1        subscription in order to be authorized to watch

2        DIRECTV programming?

3               MR. LONSTEIN:  Objection to form.

4    A.  I think as I stated earlier, I don't know about

5        the term "authorize," but you can view it.

6    Q.  Would you be legally intercepting signals if you

7        viewed it and you were not the person whose name

8        was on the subscription agreement?

9               MR. LONSTEIN:  Objection to form, it

10       calls for a legal conclusion.

11   A.  I don't think you would be illegally intercepting

12       it, no.

13   Q.  Why not?

14              MR. LONSTEIN:  Objection to form.

15   A.  In which context are you referring to, the

16       household or the commercial premises?

17   Q.  Either.

18              MR. LONSTEIN:  Compound.  Can I ask for

19       one at a time, please.

20   A.  Which one would you like first?

21   Q.  Household, then commercial.

22   A.  Okay.  So in a household, persons that are

23       residing in that residence would be legitimately

24       viewing our programming because of their

25       relationship to the primary account holder of

Kent Mader - Dec. December 15, 2015
DIRECTV, LLC v. Spina, et al.

82

1        that account.

2   Q.   Okay.  Let me pause there.  Can you show me where

3        it says that in Exhibit 5?

4   A.   I cannot.

5   Q.   Well, who decides who's authorized and who's not

6        authorized?

7                MR. LONSTEIN:  Objection; it calls

8        for -- form, form.

9   Q.   Who decides who's authorized to view DIRECTV

10       programming for a residential account and who's

11       not?

12               MR. LONSTEIN:  The same objection.

13  A.   I don't know.

14  Q.   So DIRECTV has no way of determining whether a

15       particular person is authorized or not authorized

16       to view DIRECTV programming through an authorized

17       DIRECTV receiver?

18               MR. LONSTEIN:  Objection to form.  Are

19       we still talking about residential?

20  A.   Are we still talking about residential?

21  Q.   It doesn't matter.  Residential or commercial.

22  A.   Could you repeat the question?

23               MR. OVERHAUSER:  Could you repeat the

24       question, please?

25               (The requested material was played back

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

83

1         by the court reporter.)

2    A.   I'm still confused at the term "authorized."  So

3         I go back to whether somebody can view it, and I

4         believe that in the way you asked the question,

5         we do not necessarily know all of the viewers of

6         our programming in whatever setting we were just

7         talking about, commercial or residential.

8    Q.   Well, I understand you don't know who the viewers

9         are.  What I'm trying to understand is how

10        does -- whether DIRECTV even knows who is

11        authorized to view DIRECTV programming.

12             MR. LONSTEIN:  Objection to form.

13   A.   I don't know.

14   Q.   Suppose you're at your home watching DIRECTV.

15        You're authorized because you have a

16        subscription, and your next door neighbor comes

17        over and watches the football game with you on

18        DIRECTV.  Is he committing infringement?

19             MR. LONSTEIN:  Objection.

20   BY MR. OVERHAUSER:

21   Q.   I'm sorry, is he committing signal interception?

22             MR. LONSTEIN:  Objection.  Objection to

23        form, it calls for a legal conclusion.

24   A.   I don't believe so.

25   Q.   Why not?

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 85 of 158 PageID #:
1570

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

84

```
 1                   MR. LONSTEIN:  Objection; the same.
 2   A.   Because I have an authorized account with
 3        DIRECTV.
 4   Q.   And your friend would be watching it through an
 5        authorized DIRECTV receiver, correct?
 6                   MR. LONSTEIN:  Objection to form.
 7   A.   An authorized receiver to the primary account
 8        holder, yes.
 9   Q.   So is the key for determining who is authorized
10        to view DIRECTV programming whether or not it is
11        done with the consent of the account holder?
12                   MR. LONSTEIN:  Objection to form.
13   A.   I don't know.
14   Q.   Is it even possible for DIRECTV to get the
15        identity of some person and know whether or not
16        that person is authorized or not to watch DIRECTV
17        programming?
18                   MR. LONSTEIN:  Objection to form.
19   A.   Yes and no.
20   Q.   That's an ambiguous answer.
21   A.   You're asking me ambiguous questions.
22   Q.   Okay.
23                   MR. LONSTEIN:  Just only respond to
24        questions, please.
25
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

85

1   BY MR. OVERHAUSER:

2   Q.   Attorney Mark Smith is in the room here.  How

3        would you go about determining whether or not he

4        is authorized to view DIRECTV programming?

5              MR. LONSTEIN:  Objection to form.  If

6        you can answer.

7   A.   We would first look up the account information

8        and trust that the information that was provided

9        to us was accurate and determine if that account

10       is active and there's no confusion of any other

11       Mark Smiths, and then I can potentially conclude

12       that Mark Smith is the authorized user and viewer

13       of that account.

14  Q.   Would that investigation allow you to make a

15       conclusive determination as to whether or not

16       Mr. Smith was authorized to watch DIRECTV

17       programming?

18             MR. LONSTEIN:  Object to the form of

19       the question to the extent of the definition of

20       "watch DIRECTV programming."  You can answer.

21  A.   It would be a safe assumption.  It may not be a

22       hundred percent conclusion, is the word that you

23       used, "conclusive."

24  Q.   Right.

25  A.   There might be some errors in whether that is

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 87 of 158 PageID #:
Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

86

1      really Mark Smith.

2   Q.  Well, let's assume that is the real Mark Smith.

3      But isn't it true that he might be authorized to

4      watch DIRECTV programming even if he himself

5      personally does not have a DIRECTV account?

6          MR. LONSTEIN:  Objection to form.

7   A.  He's able to view it on another authorized

8      account, but I don't necessarily know if he's the

9      authorized person to watch that.

10  Q.  Are you -- did I hear you say that he could be

11     authorized to watch DIRECTV programming even if

12     he himself is not a DIRECTV subscriber?

13         MR. LONSTEIN:  Objection to form.

14  A.  I don't think I said that.

15  Q.  Okay.  Well, that's my question.  I believe --

16         MR. LONSTEIN:  Mr. Overhauser, if I

17     could, are you asking -- and I'm not trying to

18     speak object -- are you asking him whether he

19     views DIRECTV programming anywhere in the world

20     whether Mr. Mader can determine whether he's an

21     authorized viewer, is that the --

22         MR. OVERHAUSER:  No.

23         MR. LONSTEIN:  Okay.  Then I'm missing

24     the question.  Sorry about that.  Okay.

25

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

87

1   BY MR. OVERHAUSER:

2   Q.   Once we identify a particular individual in the

3        public, is it possible for DIRECTV to know

4        whether or not that individual is authorized to

5        view DIRECTV programming without being liable for

6        intercepting DIRECTV signals?

7             MR. LONSTEIN:   Objection to form.

8   A.   I'm confused at the question.

9   Q.   Is it possible for DIRECTV to come up with a list

10       of everybody that is able to watch DIRECTV

11       programming without being liable for

12       interception?

13            MR. LONSTEIN:   Objection to form, it

14       calls for a legal conclusion.

15  A.   I would say no.

16  Q.   Who in this case viewed DIRECTV programming

17       without being authorized to do so?

18            MR. LONSTEIN:   Objection to form.

19  A.   I'm not understanding the question.

20  Q.   Well, DIRECTV has filed a lawsuit accusing the

21       defendants of intercepting DIRECTV signals,

22       right?

23            MR. LONSTEIN:   Objection to form.   You

24       can answer.

25  A.   Yes, we filed a lawsuit.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

88

1   Q.   Okay.  And that complaint was approved by

2        somebody at DIRECTV before it was filed, wasn't

3        it?

4   A.   Yes.

5   Q.   Okay.  Can DIRECTV identify any one person who

6        intercepted DIRECTV signals as alleged in its

7        complaints?

8               MR. LONSTEIN:  Objection to form.  You

9        can answer if you know.

10  A.   Any one person?  I don't know.  I'm confused

11       about that.

12  Q.   Why are you confused?

13              MR. LONSTEIN:  Objection.  Restate the

14       question, please.

15  BY MR. OVERHAUSER:

16  Q.   Well, if DIRECTV files a lawsuit alleging

17       interception of its signals, surely it must have

18       known someone who intercepted the signals, right?

19              MR. LONSTEIN:  Objection to form.

20  A.   Yeah.  It appears that there's two people that

21       we've filed a lawsuit upon for interception of

22       signal.

23  Q.   Okay.  And who are those people?

24  A.   Per the Exhibit 3 that I'm reading, we filed a

25       lawsuit on Victor A. Spina and William Anthony

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

89

1      Spina, Jr.

2   Q.   And what was the electronic communication that

3        DIRECTV alleges they intercepted?

4              MR. LONSTEIN:  Form.  You can answer if

5        you know.

6   A.   The DIRECTV signal.

7   Q.   Yeah.  What signal was it?

8   A.   The DIRECTV signal.

9   Q.   What was the electronic communication that you

10       allege has been intercepted?  Was it CBS, the

11       morning news, was it the Oprah Winfrey show, what

12       was it?

13  A.   I don't know.

14             MR. LONSTEIN:  Objection to form.

15  BY MR. OVERHAUSER:

16  Q.   You're not aware of any specific DIRECTV

17       communication that has been intercepted by Victor

18       Spina or William Spina or Martinsville Corral,

19       Inc.?

20             MR. LONSTEIN:  Objection to form.

21  A.   Could you point to me what you're referring to in

22       specific programming, if it's part of an exhibit?

23  Q.   Well, I think it's kind of your job to identify

24       what's been intercepted since DIRECTV filed the

25       complaint.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

90

1                   MR. LONSTEIN:  Objection;

2          argumentative.  He's answered DIRECTV's signals

3          were intercepted.

4    BY MR. OVERHAUSER:

5    Q.   What was the electronic communication that was

6          intercepted by the defendants as alleged in

7          DIRECTV lawsuits?

8                   MR. LONSTEIN:  Objection; asked and

9          answered.

10   A.   A DIRECTV signal.

11   Q.   Was it TV programming?

12                  MR. LONSTEIN:  The same objection.

13   A.   Yes.

14   Q.   What TV program was it?

15   A.   I would ask to have you have me look at a

16          specific exhibit to verify what that TV

17          programming is.

18   Q.   Okay.  What exhibit do you need to see?

19   A.   Our auditor affidavits.

20   Q.   So is it your testimony that the only DIRECTV

21          communications that have been intercepted in this

22          case are those identified in DIRECTV's auditor

23          affidavits?

24                  MR. LONSTEIN:  Objection to form.

25   A.   No.

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

 1   Q.   Who -- tell me the identity of the persons that

 2        were authorized to receive electronic

 3        communications using DIRECTV receivers associated

 4        with your account number 45448353.

 5             MR. LONSTEIN:  Objection, to the extent

 6        it calls for the production of personally

 7        identifiable information of subscribers who may

 8        not be party to this lawsuit.

 9   A.   Is there a specific exhibit I need to look at?

10   Q.   I don't know.  I don't think so.  You're the

11        30(b)(6) representative for DIRECTV, right?

12   A.   Correct.

13   Q.   You testified that you're here to testify as to

14        all of the topics in the Notice of Deposition,

15        right?

16   A.   Correct.

17   Q.   Topic Number 7 is:  The identity of persons

18        authorized to receive your pay electronic

19        communications using DIRECTV receivers associated

20        with your account number 45448353.  Are you

21        prepared to discuss that topic on behalf of

22        DIRECTV today?

23   A.   Could you point me to the exhibit that you're

24        looking at, which exhibit number is it?

25   Q.   It's Exhibit No. 1.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

```
 1   A.   Okay.

 2              MR. LONSTEIN:  To the --

 3   Q.   It would be on the fourth page, the very top

 4        topic.

 5   A.   Okay.  Which number?

 6   Q.   Number 7.

 7   A.   Number 7 on page 4?

 8   Q.   I'm sorry.  It's -- sorry, page 3.

 9   A.   Number 7:  The identity of persons authorized to

10        receive your pay electronic communications using

11        DIRECTV receivers associated with your account

12        number 45448353.

13              To me the authorized person or persons, or

14        person, would be the account holder of that

15        account number, and if it's a residential

16        account, it would be for their household use.

17   Q.   Can you identify those other persons in --

18              MR. LONSTEIN:  Objection.

19   Q.   -- the household --

20              MR. LONSTEIN:  Objection.

21   Q.   -- that were authorized to receive the

22        communications?

23              MR. LONSTEIN:  Objection; it assumes

24        facts not testified to.

25   A.   The person that is authorized to receive that
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

93

1       programming is the account holder of that

2       residential account in a residential setting.

3       The other people in the household, I don't know

4       who those are.  Those would be dealers.  I don't

5       know who those are.

6   Q.  Would they be authorized viewers?

7               MR. LONSTEIN:  Objection.

8   A.  I would say that they could legitimately view the

9       programming in a residential setting.

10  Q.  Okay.  Well, this topic asks about who's

11      authorized, not who is legitimate.  Would the

12      other people in the household be authorized to

13      watch the DIRECTV programming?

14              MR. LONSTEIN:  Objection to form,

15      argumentative.  You can answer if you know.

16  A.  I don't know.

17  Q.  And, in fact, there could be any number of other

18      people who could go to the account holder's

19      residence and watch that viewing and they would

20      be authorized to do so, correct?

21              MR. LONSTEIN:  Objection to form.

22  A.  I would say that they could legitimately view

23      that programming.

24  Q.  Would they be authorized?

25  A.  I don't know.

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

94

```
 1                    MR. LONSTEIN:  Objection; legal

 2        conclusion.

 3   Q.   So just to sum up, DIRECTV has no way of knowing

 4        whether a particular person is authorized to

 5        receive its programming, correct?

 6                    MR. LONSTEIN:  Objection to form, legal

 7        conclusion.

 8   A.   In terms of the word "authorized," I don't know.

 9                    MR. LONSTEIN:  Are you okay, Kent?  I

10        mean, do you need a break or are you all right?

11                    THE WITNESS:  I'm fine.

12                    MR. LONSTEIN:  Paul, any prognosis

13        schedule-wise?

14                    MR. OVERHAUSER:  I'm not sure.  I've

15        got at least a couple of more hours to go.

16                    MR. LONSTEIN:  Okay.

17                    MR. OVERHAUSER:  I mean, do you want to

18        take a break?

19                    MR. LONSTEIN:  Well, do you want to

20        roll straight through and just take a break?

21                    THE WITNESS:  I'm fine.

22                    MR. OVERHAUSER:  Let's see, what number

23        are we on?

24                    (Defendants' Exhibit No. 9 was marked

25        for identification.)
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

95

```
 1   BY MR. OVERHAUSER:

 2   Q.   I'll hand you what has been marked as Exhibit 9.

 3        Can you take a look at Exhibit 9, and flip to the

 4        last page and tell me whether that's your

 5        signature.

 6   A.   Yes, that appears to be my signature.

 7   Q.   Okay.  Did you read the interrogatory answers in

 8        Exhibit 9 before you signed them?

 9   A.   I'm sure I did.

10   Q.   Are all of your answers to the interrogatories in

11        Exhibit 9 truthful and accurate?

12   A.   I would assume so.

13   Q.   Could I ask you to look at your answer to

14        Interrogatory Number 3?

15             MR. LONSTEIN:  Page number --

16   Q.   It's on -- look at the bottom of page -- well,

17        look at the bottom of page 6.

18   A.   Okay.

19   Q.   I'll just read you the first part of this

20        interrogatory.  It starts out:  Identify each

21        electronic communication that you allege have

22        been unlawfully received or intercepted as

23        alleged in your amended complaint.

24             Do you see that?

25   A.   I do.
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

96

1   Q.   Can you look down at your answer, and is there

2        anyplace in there that identifies any electronic

3        communication that DIRECTV alleges has been

4        unlawfully received or intercepted?

5             MR. LONSTEIN:  Do you want a few

6        moments to read it?

7             THE WITNESS:  Sure.

8             (Witness reviewing document.)

9   A.   Could you repeat the question?

10            (The requested material was played back

11       by the court reporter.)

12  A.   I see that we reference electronic communication.

13  Q.   Where?

14  A.   In the responses.

15  Q.   Can you tell me where specifically?

16  A.   In the first paragraph it says, ambiguous

17       including but not limited to the terms of

18       "electronic communications" seeks the information

19       that our trade secret or confidential information

20       or other applicable privileges or doctrines, etc.

21            I see electronic communication referenced in

22       3(a) but not limited to the terms "initiated" and

23       "electronic communication."  I see it referenced.

24       I don't specifically know.  We haven't stated

25       programming but we have answered the question

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

1     about electronic communications.

2  Q.  What was the electronic communications that you

3     allege has been intercepted in this case?

4  A.  The DIRECTV signal.

5  Q.  Can you be more specific?

6  A.  I cannot.

7  Q.  When you say the DIRECTV signal, do you mean a

8     video signal or an audio signal or what?

9  A.  It'd be inclusive of both of those.

10  Q.  Okay.  Describe for me what was in the video part

11     of the signal, what was it a video of?

12     MR. LONSTEIN:  Objection to form.

13  A.  It'd be television programming.

14  Q.  Of what?

15  A.  Television.

16  Q.  How do you know it was television programming?

17     MR. LONSTEIN:  Objection to form,

18     argumentative.  If you have specific knowledge

19     about the question relating to Interrogatory 3

20     and what electronic communications, you can

21     answer.

22     MR. OVERHAUSER:  Counsel, please stop

23     the coaching, seriously.

24     MR. LONSTEIN:  Mr. Overhauser, your

25     questions are so ambiguous and there are terms

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

98

```
 1        all over the place that I want him to not answer

 2        assumptions or hypotheticals but actual

 3        questions.

 4                  MR. OVERHAUSER:  Your proper thing for

 5        you to do is to object to the form of the

 6        question if, in fact, you believe you can

 7        legitimately make that.  Anything further is

 8        coaching the witness, which is improper

 9        generally, and specifically improper under the

10        local rules.

11                  MR. LONSTEIN:  Thank you.  So noted.

12   A.   Could you repeat the question?

13   Q.   What was the content of the video part of the

14        electronic communications that DIRECTV alleges to

15        have been intercepted in this litigation?

16   A.   Television programming.

17   Q.   And what were the images of that television

18        programming?

19   A.   I don't know, unless you specifically reference

20        me to a piece of what has been handed over in

21        terms of evidence.

22   Q.   Can you identify any part of the audio

23        communication that was allegedly intercepted in

24        this case?

25                  MR. LONSTEIN:  Objection to form.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

99

1   A.   I don't know.

2   Q.   So you can't give me any specifics of what

3        communication was allegedly intercepted in this

4        case?

5             MR. LONSTEIN:   Objection to form,

6        argumentative.

7   A.   I don't know.

8   Q.   Can you tell me where the electronic

9        communication originated from; did it originate

10       from CBS, NBC?

11            MR. LONSTEIN:   Objection to form.

12  A.   I don't know.

13  Q.   And can you identify the universe of persons that

14       were, in fact, authorized to receive the

15       communication that you allege was intercepted in

16       this case?

17            MR. LONSTEIN:   Objection to form.

18  A.   What do you mean by universe?

19  Q.   Can you -- can DIRECTV identify each person that

20       was, in fact, authorized to receive the

21       communication that DIRECTV alleges has been

22       intercepted in this case?

23            MR. LONSTEIN:   Objection to form.

24  A.   It would be the residential account holder and

25       their immediate family at the residential

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

100

1        location of that account number that we have

2        referenced prior.

3   Q.   And there may be some other people, too, right?

4            MR. LONSTEIN:  Objection to form.

5   A.   Who do you mean by "other people"?

6   Q.   Well, before you testified that you have DIRECTV

7        at your house, and if you have the next door

8        neighbor come over and watch the ballgame with

9        you, he's authorized to watch it, right?

10           MR. LONSTEIN:  Objection; misstates the

11       testimony.  You can answer.

12  A.   I think I indicated previously that they would be

13       a legitimate viewer.

14  Q.   And by "legitimate," you mean they would not be

15       intercepting by watching it?

16  A.   They wouldn't be doing anything illegal.

17  Q.   And they wouldn't be --

18  A.   So I believe that would be not intercepting.

19  Q.   Okay.  And, in fact, if it turns out that

20       Mr. Smith just happens to also have a DIRECTV

21       subscription and he watched it, he would not be

22       intercepting either if he happened to be watching

23       the same show, right?

24           MR. LONSTEIN:  Objection to form.

25  A.   Could you provide the example of the context of

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

101

 1      Mr. Smith again?

 2  Q.  Well, let me -- the point is, is that if the

 3      universe of everybody in the world was divided

 4      into two parts, people that are authorized to

 5      view DIRECTV programming and people that are not

 6      authorized to view DIRECTV programming, DIRECTV

 7      has no way of knowing who is in which group, do

 8      they?

 9              MR. LONSTEIN:  Objection to the form of

10      the question, it assumes --

11              MR. OVERHAUSER:  You objection is

12      noted.

13              MR. LONSTEIN:  Whoa, whoa, whoa, whoa.

14              MR. OVERHAUSER:  I mean, we don't need

15      this coaching from you.

16              MR. LONSTEIN:  I'm not coaching, Mr.

17      Overhauser.  I'm trying to understand the

18      question so I can formulate an objection, if I

19      have one that's privileged.  Give me a moment.  I

20      haven't said anything.

21          Objection to the form.  You can answer.

22  A.  I'm confused by the question in the segments that

23      you put people in; also, in terms of the term

24      "authorization" or "authorized user."

25  Q.  DIRECTV's complaint alleges that persons watch

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

102

1        DIRECTV's programming that were not authorized to

2        do so, correct?

3   A.   Yes, I believe so.

4   Q.   Okay.  But it has no way of knowing who's

5        authorized and who's not authorized, does it?

6             MR. LONSTEIN:  Objection to form.

7   A.   I would say that people are authorized to view

8        our DIRECTV programming on this particular

9        account at the account holder's residential

10       address and anyone else that might be a

11       legitimate viewer within that residential

12       setting.

13  Q.   These receivers were at restaurants, right?

14            MR. LONSTEIN:  Objection to form.

15  A.   That appears --

16  Q.   So --

17  A.   -- to be the case.

18  Q.   -- if a person went into the restaurant who

19       happened to have a DIRECTV subscription and

20       watched the same programming at the restaurant

21       that they could watch at their home, would they

22       be intercepting DIRECTV programming?

23            MR. LONSTEIN:  Objection to form, and

24       speculative.  You can answer.

25  A.   I don't know.  That's a confusing question to me.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

```
 1   Q.   What's confusing about it?

 2             MR. LONSTEIN:  Objection;

 3   argumentative.  You don't have to answer it.

 4             MR. OVERHAUSER:  That's improper,

 5   Counsel.  Stop coaching the witness.

 6             MR. LONSTEIN:  I'm not coaching the

 7   witness.

 8             MR. OVERHAUSER:  You don't instruct the

 9   witness how --

10             MR. LONSTEIN:  Mr. Overhauser, your

11   questions are misstating facts.  If you want to

12   be succinct and say, if you are an authorized

13   viewer, and give it so he can understand the

14   question, I'm fine with that, but your

15   terminology misstates the facts of the case.  So

16   I'm not going to allow a record to be made that

17   misrepresents the facts of the case.

18       All I'm asking you to do is to state it

19   correctly.  Obviously the witness is getting

20   confused by "watching" and "authorized viewer,"

21   and if you want to use terms like "authorized to

22   receive," fine.  I just ask that you give him

23   questions that he can understand and answer from

24   knowledge, please.

25             MR. OVERHAUSER:  Your speaking
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

104

1       objections are improper.  If they continue I will

2       seek court intervention.

3                   MR. LONSTEIN:  That's fine.

4                   MR. OVERHAUSER:  Can you repeat the

5       most recent question, please.

6                   (The requested material was read back

7       by the court reporter.)

8    A.  I'm still confused at the nature of the question,

9       I'm sorry.

10   Q.  So it's possible they would be intercepting?

11                  MR. LONSTEIN:  Objection.  The witness

12      has said he's confused.  Can you restate the

13      question?

14   BY MR. OVERHAUSER:

15   Q.  Is DIRECTV able to identify all persons that are

16      able to view its programming without being liable

17      for intercepting DIRECTV signals?

18                  MR. LONSTEIN:  Objection; asked and

19      answered.

20   A.  I don't think so.

21   Q.  Can you identify a specific person who

22      intercepted DIRECTV signals as alleged in

23      DIRECTV's complaints in this suit?

24   A.  I believe the people who intercepted our signal

25      were the individuals named in the complaint, as

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

105

```
 1        we've previously referenced who were using a
 2        residential account in the improper venue.
 3   Q.   But you don't know what signal they intercepted,
 4        right?
 5                  MR. LONSTEIN:  Objection;
 6        argumentative.
 7   A.   The DIRECTV signal.
 8   Q.   Yeah.  But you don't know what programming they
 9        intercepted, right?
10                  MR. LONSTEIN:  The same objection.
11   A.   Not right now.  If you can point me to a specific
12        piece of evidence, I'd be happy to answer that.
13   Q.   Well, you've identified William Spina.  Does
14        DIRECTV have any information that William Spina
15        was present in a Martinsville Corral restaurant
16        at the time DIRECTV's investigator was in the
17        restaurant?
18   A.   I don't know.
19   Q.   Does DIRECTV have any information that Victor
20        Spina was in a Martinsville Corral restaurant at
21        the time DIRECTV's investigator was in the
22        restaurant?
23   A.   I don't know.
24   Q.   So DIRECTV sued them without knowing whether or
25        not they intercepted the signals, right?
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

106

```
 1                    MR. LONSTEIN:  Objection to form,

 2          misstates the testimony.

 3   A.     They are the owners of commercial establishments

 4          that we have deemed intercepting our DIRECTV

 5          signal.

 6   Q.     Can you identify a person that observed any

 7          intercepted DIRECTV signal?

 8   A.     I can.

 9   Q.     Who?

10   A.     Our auditor.

11   Q.     Okay.  And did your auditor -- does the auditor

12          work for DIRECTV?

13   A.     The auditor is an independent contractor of

14          DIRECTV.

15   Q.     But he undertakes his activities with the consent

16          and approval of DIRECTV, right?

17                    MR. LONSTEIN:  Objection.

18   A.     He does so as an independent contractor.

19   Q.     Okay.  And DIRECTV has authorized him to do

20          whatever it is he does, right?

21                    MR. LONSTEIN:  Objection.

22   A.     Yes.

23   Q.     So the investigator is authorized to view DIRECTV

24          programming, correct?

25                    MR. LONSTEIN:  Objection to the term
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

```
 1          "investigator," contrary to testimony.

 2   A.    Are you referencing the person as we just

 3          previously referenced as an auditor --

 4   Q.    Yes.

 5   A.    -- as an investigator --

 6   Q.    Yes.

 7   A.    -- the same thing?  Yes, he's able to view

 8          DIRECTV programming in the context of --

 9   Q.    Okay.

10   A.    -- what he's doing for DIRECTV as an independent

11          contractor.

12   Q.    Okay.  And so if he views DIRECTV programming in

13          the course of his auditing or investigating, he's

14          not committing interception of signals, is he?

15                MR. LONSTEIN:  Objection.

16   A.    I don't think so.

17   Q.    So who else intercepted this signal if it wasn't

18          your investigator, slash, auditor?

19                MR. LONSTEIN:  Objection.

20   A.    It would be the individuals that we named on the

21          complaint.

22   Q.    Okay.  The same two individuals that you

23          previously identified you didn't have any

24          information that they actually intercepted?

25                MR. LONSTEIN:  Objection;
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

108

1           mischaracterizes the testimony.

2    A.     By actual interception, what do you mean?

3    Q.     I'm trying to find -- I'd like for you to tell me

4           the name of someone that viewed DIRECTV

5           programming in a way that constitutes

6           interception that you allege was interception in

7           this case.

8    A.     I don't have direct knowledge of their

9           interception based on what I know about the case.

10   Q.     You don't have direct knowledge of interception

11          by William Spina?  That's a bad question, let me

12          rephrase that.

13              You don't have direct knowledge of

14          interception by William Spina, do you?

15              MR. LONSTEIN:  Objection to form.

16   A.     What do you mean by "direct knowledge"?  I'm

17          sorry, I used that term but --

18   Q.     Okay.

19   A.     -- what are you referencing?

20   Q.     Do you have any witness that can testify:  I saw

21          Victor Spina intercepting DIRECTV signals at the

22          Martinsville Corral restaurant?

23              MR. LONSTEIN:  Objection to form.

24   A.     I don't believe so.

25   Q.     Do you have any witness that can testify:  I saw

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

```
 1        Victor Spina intercepting signals at the Texas
 2        Corral restaurant?
 3               MR. LONSTEIN:  Objection to form.
 4   A.   I don't believe so.
 5   Q.   Do you have any witness that can testify:  I saw
 6        Martinsville Corral, Inc. intercepting DIRECTV
 7        signals?
 8               MR. LONSTEIN:  Objection to the form.
 9   A.   I believe we do.
10   Q.   Okay.  Who is the person that intercepted those
11        signals on behalf of Martinsville Corral, Inc.?
12               MR. LONSTEIN:  Objection to form.
13   A.   In this particular situation it would be the
14        owners of those establishments.
15   Q.   Okay.  And do you have eyewitness testimony that
16        the owners intercepted signals?
17               MR. LONSTEIN:  Objection to form.
18   A.   No.
19   Q.   Can you identify what agreements DIRECTV has or
20        has had with any of the defendants in this
21        litigation?
22   A.   I cannot.
23   Q.   Is it your understanding that DIRECTV received
24        subscription payments from Martinsville Corral,
25        Inc. for the subscription number we identified
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

110

```
 1      previously?

 2   A.  I don't know.

 3   Q.  Has DIRECTV received any subscription payments

 4       for the DIRECTV account referenced in Exhibit 6?

 5   A.  Yes.

 6   Q.  During what time period did they receive

 7       subscription payments?

 8   A.  Probably from the time of activation to the time

 9       of disconnect.

10   Q.  So that would have been from May of 2009 through

11       July of 2014?

12   A.  Can you point to me a particular document that I

13       can verify that with?

14   Q.  Well, that would be -- well, why don't you look

15       at your version.

16   A.  Okay.  Which exhibit?

17   Q.  Exhibit 6.  And then you can also look at

18       Exhibit 7.

19   A.  Exhibit 6 and Exhibit 7.

20   Q.  So based on those two documents, can you identify

21       the dates during which DIRECTV received

22       subscription payments for the account shown in

23       Exhibit 6?

24   A.  No.

25   Q.  What more information would you need to see?
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

111

```
 1   A.   I see this as an order.  I don't see this as a

 2        document of account management.

 3   Q.   Have you ever communicated with Craig Spencer?

 4   A.   I have not.

 5   Q.   Has John Green ever communicated with Craig

 6        Spencer?

 7   A.   I don't know.

 8             MR. LONSTEIN:   Objection.

 9   Q.   Has Jose Cruz ever communicated with Craig

10        Spencer?

11   A.   I believe so.

12   Q.   What is the title of John Green?

13   A.   I think deputy counsel of DIRECTV in legal.

14   Q.   What is the title of Jose Cruz?

15   A.   I don't know his specific title.

16   Q.   Do you have any knowledge of whether the

17        subscription for the account at issue in this

18        case was ever past due?

19   A.   I don't.

20   Q.   Can you give me the names of all persons who

21        participated in the decision to de-authorize the

22        DIRECTV receivers at the Texas Corral restaurants

23        in this case?

24             MR. LONSTEIN:   Objection, to the extent

25        that it may call for the release of
```

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 113 of 158 PageID #:
1062

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

112

 1       attorney/client information.  You can answer the

 2       question.

 3   A.  I don't know the attorneys involved, and I don't

 4       specifically know who disconnected this account.

 5   Q.  Do you know the names of anybody in DIRECTV that

 6       was involved in that decision?

 7   A.  Most likely Jose Cruz was involved.

 8   Q.  What is his job responsibility?

 9   A.  He is an analyst in our fraud department.  I

10       don't know his specific title.

11   Q.  What does an analyst do?

12   A.  Investigates fraud.

13   Q.  Between June 1st, 2014, and the date the

14       complaints in this case were filed, did DIRECTV

15       communicate with Craig Spencer about this case?

16   A.  I believe they did.

17   Q.  Who did?

18   A.  I don't know specifically who at DIRECTV, but

19       based on my conversations with counsel, they had

20       indicated to me that somebody at DIRECTV did

21       reach out to Craig Spencer.

22   Q.  Okay.  Well, that's kind of important.  Who was

23       it, and when was it?

24   A.  I don't have --

25                   MR. LONSTEIN:  Objection to form.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

113

```
 1   A.    I don't have the specific information.

 2   Q.    Okay.  What -- do you have any information?

 3   A.    I believe between those two dates that you

 4         referenced, that there was somebody at DIRECTV

 5         who reached out to Craig Spencer.

 6   Q.    And is your sole basis for that what your

 7         attorney told you?

 8   A.    Yes.

 9   Q.    The attorney for Lonstein Law Offices?

10               MR. LONSTEIN:  Objection.

11   A.    John Green.

12   Q.    Exactly what did John Green tell you?

13               MR. LONSTEIN:  Objection.  Don't

14         answer.  That's privilege.

15               MR. OVERHAUSER:  That's not privilege.

16               MR. LONSTEIN:  Yes, it is.  It's

17         attorney/client communication.

18               MR. OVERHAUSER:  He's in-house counsel.

19               MR. LONSTEIN:  It doesn't make a

20         difference, he's still titled to attorney/client

21         protection.  We can mark it for a ruling later or

22         you can depose Mr. Green.

23               MR. OVERHAUSER:  I'm asking about

24         communications between DIRECTV and Craig Spencer.

25         Now, Craig Spencer is not represented by DIRECTV.
```

 1            MR. LONSTEIN:  No.  But you're asking

 2       for a conversation between Mr. Mader and

 3       Mr. Green.  That's privileged.

 4  BY MR. OVERHAUSER:

 5  Q.   Is the only information that you have about any

 6       communication between DIRECTV and Craig Spencer

 7       between June 1st, 2014, and the date the

 8       complaints in this case were filed, hearsay

 9       information from John Green?

10  A.   What do you mean by "hearsay"?

11            MR. LONSTEIN:  Objection to form.

12  Q.   What he told you.

13  A.   Yes, I rely on John Green for that information

14       that I just stated to you.

15  Q.   Okay.  So he told you that someone from DIRECTV

16       communicated with Craig Spencer?

17            MR. LONSTEIN:  Objection; misstates the

18       testimony.  You can answer.

19  A.   Yes.

20  Q.   And what were the exact words that he used?

21            MR. LONSTEIN:  Objection.  That's

22       privilege communication.

23            MR. OVERHAUSER:  I think he's just

24       waived the privilege, Counsel.

25            MR. LONSTEIN:  No, he has not.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

```
 1                    MR. OVERHAUSER:  He already told him --

 2                    MR. LONSTEIN:  No.

 3                    MR. OVERHAUSER:  He just told him

 4       what --

 5                    MR. LONSTEIN:  No.

 6                    MR. OVERHAUSER:  -- the attorney told

 7       him.

 8                    MR. LONSTEIN:  He said that there was a

 9       general understanding of it.  We can certainly go

10       over it later if you want.  Don't answer.

11  BY MR. OVERHAUSER:

12  Q.   Will you answer the question?

13  A.   No.

14  Q.   Do you know whether John Green directly

15       communicated with Craig Spencer?

16  A.   I don't know.

17  Q.   Do you know anyone else at DIRECTV that directly

18       communicated with Craig Spencer?

19  A.   I don't know.

20  Q.   In these alleged communications between Craig

21       Spencer and DIRECTV between June 1st of 2014 and

22       the date the complaint was filed, what is your

23       understanding of what Craig Spencer said?

24                    MR. LONSTEIN:  Objection to form.

25  A.   I don't remember the specifics.
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

116

```
 1   Q.   And you don't remember anything about the date of
 2        the alleged conversation either?
 3             MR. LONSTEIN:   Objection;
 4        argumentative.
 5   A.   No.
 6   Q.   Do you have any information about how many times
 7        DIRECTV and Craig Spencer communicated during
 8        this time period?
 9   A.   No.
10   Q.   Do you have any information about whether these
11        communications during this time period were in
12        person?
13   A.   I don't know.
14   Q.   Do you know if they were on the phone?
15   A.   I don't know.
16   Q.   Do you know if they were via e-mail?
17   A.   I don't know.
18   Q.   Do you know if they were via a text message?
19   A.   I don't know.
20   Q.   Do you have any -- I'm not going to ask you what
21        they are, but do you have any further details
22        about the alleged communications between DIRECTV
23        and Craig Spencer between June 1st, 2014 and the
24        date the complaints were filed?
25   A.   No.
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

117

```
 1   Q.   Are you aware of any effort by DIRECTV to

 2        communicate with Victor Spina between July --

 3        between June 1st, 2014 and the date this

 4        complaint was filed?

 5   A.   From DIRECTV directly?

 6   Q.   Correct.

 7   A.   No, I don't know.

 8   Q.   Did DIRECTV know that this lawsuit would -- these

 9        lawsuits would be filed before they were actually

10        filed?

11             MR. LONSTEIN:  Objection to form.

12   A.   I don't know.

13   Q.   Is it possible that Lonstein Law Offices went

14        ahead and filed these lawsuits without DIRECTV's

15        advanced knowledge?

16             MR. LONSTEIN:  Objection to form.

17   A.   I don't know.

18   Q.   It's pos -- so you don't know.  It's possible --

19             MR. LONSTEIN:  Objection.

20   Q.   -- that that's what happened, right?

21             MR. LONSTEIN:  Objection to form.

22        Don't speculate.  If you know.

23   A.   I don't know.

24   Q.   Is it your understanding that SAS Digital is a

25        d/b/a for Craig Spencer?
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

118

```
 1   A.   Yes, I've heard that.

 2             MR. LONSTEIN:  Still good?

 3             THE WITNESS:  Uh-huh.

 4   BY MR. OVERHAUSER:

 5   Q.   Were any documents exchanged between DIRECTV and

 6        Craig Spencer between June 1st, 2014 and the

 7        dates the complaints were filed in this case?

 8             MR. LONSTEIN:  Objection to form.

 9   A.   I don't know.

10   Q.   Were you responsible for conducting searches for

11        documents that were requested in this case?

12   A.   No.

13   Q.   Who was?

14   A.   I don't know.

15   Q.   In the Notice of Deposition, which is

16        Exhibit 1 --

17   A.   Is that what you want me to look at right now?

18   Q.   Yeah, why don't we look at that real quick.

19   A.   Okay.

20             MR. LONSTEIN:  There you go.

21   Q.   Look at Deposition Topic Number 2.

22             MR. LONSTEIN:  That would be page

23        Number 3, Schedule A?  Counsel, you -- okay.

24   BY MR. OVERHAUSER:

25   Q.   So you are DIRECTV's corporate representative on
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

119

```
 1      the topic of DIRECTV's search for documents

 2      responsive to requests for production served on

 3      you in this case, right?

 4   A. I am the 30(b)(6) witness.

 5   Q. Okay.  So did DIRECTV search for any documents

 6      that were responsive to request for production in

 7      this case?

 8   A. Yes.

 9   Q. Who conducted the search?

10   A. I don't know.

11   Q. When did the search occur?

12   A. I wouldn't know that.

13   Q. Were any documents identified?

14   A. During that search?

15   Q. Yes.

16   A. I wouldn't know.  I didn't do the search.

17   Q. Well, it sounds like you're not really well

18      prepared to discuss that topic.  Can you tell us

19      why?

20            MR. LONSTEIN:   Objection;

21      argumentative.

22   A. I don't do all the activities in an

23      investigation.

24   Q. Okay.  In preparing for this deposition did you

25      try to find out who did the search?
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

120

```
 1   A.   I did not.

 2   Q.   Do you know whether any documents have been

 3        produced by DIRECTV in this case?

 4   A.   Yes.

 5   Q.   What documents?

 6   A.   The ones that were presented in the complaint or

 7        any follow-up legal documents.

 8   Q.   The ones that were presented in the complaint?

 9   A.   Or something related to the complaint.  I'm not a

10        lawyer.

11   Q.   You mean exhibits to the complaint?

12   A.   Maybe.  Yes, I think so.

13   Q.   Okay.  Well, I'll represent to you neither

14        complaint had any exhibits.

15              MR. LONSTEIN:   Objection;

16        argumentative.  If you want to ask him about a

17        document in the request for production or

18        something like that, ask him a fair question.

19   BY MR. OVERHAUSER:

20   Q.   So can you describe with as much particularity as

21        possible what documents DIRECTV has produced in

22        response to requests for production in this case?

23   A.   I had seen auditor affidavits.

24   Q.   Can you just describe generally the relationship

25        between DIRECTV, the auditor, as you call him --
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

121

1      his name is Kevin Karlak, right?

2   A.   I believe that's correct.

3   Q.   Okay.  And Lonstein.  Who -- let's start with

4      this.  Who pays Kevin Karlak?

5           MR. LONSTEIN:  Objection to the form.

6   A.   He's an independent contractor that DIRECTV pays.

7   Q.   Okay.  And how does it pay him?

8   A.   I don't know the specifics of that.

9   Q.   Okay.  He lives in California, right?

10          MR. LONSTEIN:  If you know.

11  A.   I don't know.

12  Q.   Can you tell me what caused him to go into the

13      Texas Corral restaurants in June of 2014?

14          MR. LONSTEIN:  Objection to form.

15  A.   I do not.

16  Q.   Do you know why he was in Indiana in the first

17      place?

18  A.   No.

19  Q.   When he prepared a report, to whom did he give

20      it, Lonstein Law Offices or DIRECTV?

21          MR. LONSTEIN:  Objection to form.

22  A.   I believe he gives it to Signal Auditing.

23  Q.   And what is Signal Auditing?

24  A.   They are an independent contractor of DIRECTV.

25  Q.   Okay.  And are they headquartered in Ellenville,

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

122

1      New York?

2   A.   I believe so.

3   Q.   And is Mr. Lonstein a principal of Signal

4        Auditing?

5              MR. LONSTEIN:   Objection to form.

6   A.   I don't know.

7   Q.   Is Signal Auditing affiliated with Lonstein Law

8        Offices.

9              MR. LONSTEIN:   Objection to form.

10  A.   I believe so.

11  Q.   Can you describe what the business of Signal

12       Auditing is?

13             MR. LONSTEIN:   Objection to form.

14  A.   They are an independent contractor of DIRECTV

15       that seeks out commercial misuse, piracy.

16  Q.   And how do they go about doing that?

17  A.   They have auditors that visit commercial

18       locations after receiving a DIRECTV legal list,

19       which is a list that shows legitimate commercial

20       establishments that are receiving DIRECTV signal

21       in the area.

22  Q.   Does DIRECTV have a legal list for the central

23       Indiana area?

24  A.   I don't know.

25  Q.   On what basis does DIRECTV pay Signal Auditing?

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

123

 1  A.  I don't know.

 2  Q.  Does DIRECTV pay bounties to Signal Auditing?

 3  A.  I don't know.

 4          MR. LONSTEIN:  Objection to form.

 5  Q.  So your understanding is that Kevin Karlak's

 6      investigative report was provided to Signal

 7      Auditing; is that correct?

 8  A.  I believe so.

 9          MR. LONSTEIN:  Objection to form.

10  Q.  And then what happened to it?

11  A.  I don't know.

12  Q.  Did Signal Auditing give it to Lonstein Law

13      Offices?

14          MR. LONSTEIN:  Objection; asked and

15      answered.

16  A.  I don't know.

17  Q.  How did DIRECTV come to believe, if at all, that

18      the defendants in this case committed signal

19      interception?

20          MR. LONSTEIN:  Objection to form.

21  A.  The account that the auditor had provided or that

22      the investigation had determined, the account

23      number that we had referenced before was

24      identified as linked to those bars that we just

25      spoke about, the Corral locations, and determined

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

124

1        that that account was at a residential setting,

2        not at a commercial setting legitimately.

3   Q.   Was that determination made by DIRECTV?

4   A.   No.

5   Q.   Who made that determination?

6   A.   Either Signal Auditing or Lonstein Law Offices.

7   Q.   Was DIRECTV asked to verify whether or not that

8        was accurate information?

9   A.   We provide account records that would indicate

10       that that account is a residential account.

11  Q.   And does DIRECTV ever undertake to contact the

12       residential account holder to find out whether

13       DIRECTV's information is correct or not?

14            MR. LONSTEIN:  Objection to form.

15  A.   I don't know.

16  Q.   Was DIRECTV ever requested to verify whether the

17       commercial, slash, residential subscription type

18       and its records was correct?

19            MR. LONSTEIN:  In this case?

20            MR. OVERHAUSER:  Yeah, in this case.

21            MR. LONSTEIN:  Objection to form.

22  A.   It's a residential account, and DIRECTV provides

23       that information as such to either Signal

24       Auditing or Lonstein Law Offices.

25  Q.   Okay.  Did DIRECTV undertake any investigation to

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

125

```
 1        find out whether or not the DIRECTV receivers at

 2        the Texas Corral restaurants were originally

 3        installed by an authorized DIRECTV retailer?

 4              MR. LONSTEIN:  Objection to form.

 5   A.   I don't know.

 6   Q.   Did DIRECTV, before this lawsuit was filed, ever

 7        receive any documents from Craig Spencer about

 8        installation of DIRECTV equipment at the Texas

 9        Corral restaurants?

10              MR. LONSTEIN:  Objection to form.

11   A.   I don't think so.

12   Q.   Did DIRECTV just rely on what Signal Auditing and

13        Lonstein Law Offices did in deciding whether or

14        not to file this lawsuit?

15              MR. LONSTEIN:  Objection to form,

16        misstates the evidence.

17   A.   By us providing an account number that is tied

18        to -- that is in a residential type, I believe we

19        provided some information to Lonstein or Signal

20        Auditing that there seems -- there appears to be

21        interception in play.

22   Q.   Okay.  What made you conclude that it was

23        interception as opposed to somebody just making a

24        mistake when setting up the information in

25        DIRECTV's databases?
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

126

```
 1                    MR. LONSTEIN:  Objection to form.

 2   A.   I don't know.  I wasn't part of that decision.

 3   Q.   Who was?

 4   A.   Either at the account setup or during the

 5        investigation.

 6   Q.   Who was?

 7   A.   For which piece?

 8   Q.   For determining whether or not the information in

 9        DIRECTV's database was correct as far as

10        designating it as commercial versus residential.

11                    MR. LONSTEIN:  Objection to form.

12   A.   During the account activation?

13   Q.   Yes.

14   A.   We rely on our sales channel, in this particular

15        case, a dealer, to tell us what type of property

16        that account has been activated at, and then we

17        will input those in our systems and operate it as

18        such.

19   Q.   And before filing a lawsuit did DIRECTV verify

20        whether that information was accurately entered

21        in this case?

22                    MR. LONSTEIN:  Objection to form.

23   A.   I don't know.

24   Q.   How has DIRECTV compensated Lonstein Law Offices

25        for its work in connection with this case?
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

127

```
 1                    MR. LONSTEIN:  Objection.

 2   A.   I don't know.

 3   Q.   Can you look at Topic Number 13?

 4   A.   Which document are you referencing?

 5   Q.   Of the Notice of Deposition.

 6   A.   Okay.

 7   Q.   I believe it reads:  The attorney's fees you seek

 8        to recover and the agreements pursuant to which

 9        you have incurred such attorney's fees.

10             Did I read that accurately?

11   A.   You did.

12   Q.   So is DIRECTV seeking to recover attorneys' fees

13        in this case?

14                    MR. LONSTEIN:  Objection to the form of

15        the question; in addition, an objection is made

16        that the statutory provision for --

17                    MR. OVERHAUSER:  We don't --

18                    MR. LONSTEIN:  I'm making --

19                    MR. OVERHAUSER:  -- need a talking

20        objection.  Just say you object to the form of

21        the question --

22                    MR. LONSTEIN:  Mr. Overhauser --

23                    MR. OVERHAUSER:  -- and stop coaching.

24                    MR. LONSTEIN:  I'm not coaching the

25        witness.  I'm making a legal objection, part of
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

```
 1        which calls for a legal conclusion.  The
 2        attorneys' fees provision, as you're well aware
 3        under Section 605 or 553, do not come into play
 4        until after and such time that a determination of
 5        liability is made.
 6             To the extent that the witness can answer
 7        the question within his competency, you're free
 8        to inquire, but that question at this point is
 9        not seasonable in our opinion.  That's our
10        objection.
11                  MR. OVERHAUSER:  Not seasonable?
12                  MR. LONSTEIN:  Uh-huh.
13                  MR. OVERHAUSER:  I don't think I've
14        ever heard that one before.
15   BY MR. OVERHAUSER:
16   Q.   Let me ask the question again.  What attorneys'
17        fees is DIRECTV seeking to recover in this case?
18   A.   I don't know.
19   Q.   Has DIRECTV paid anything to Lonstein Law Offices
20        for attorneys' fees incurred in this case?
21   A.   I don't know.
22   Q.   Do you know whether Lonstein Law Offices is being
23        paid on a contingent fee basis for its services
24        in this case?
25   A.   I don't know.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

129

1   Q.   Do you know whether DIRECTV has incurred any

2        attorneys' fees in this case?

3   A.   I don't know.

4   Q.   I think I may have asked this and I apologize if

5        I ask it again, but just to make sure, is it your

6        understanding that for each DIRECTV receiver that

7        has been associated with the account at issue in

8        this case that the receiver was originally

9        supplied by DIRECTV to Craig Spencer?

10  A.   Are you referencing a particular question on this

11       document we're looking at or a different

12       document?

13  Q.   Number 12.  Number 12, I guess.

14  A.   Number 12, okay.  For each DIRECTV receiver that

15       has been associated with your account number, the

16       identity of the person or entity to whom you

17       supplied the DIRECTV receiver.

18            I don't know how the receivers have worked

19       through the supply chain in this particular case.

20  Q.   Is there someone else at DIRECTV that would know?

21  A.   Perhaps.

22  Q.   Who would that be?

23  A.   Somebody in our supply chain.

24  Q.   Did you contact anyone in your supply chain to

25       try to find out the answer to that question in

Kent Mader – December 15, 2015
DIRECTV, LLC v. Spina, et al.

130

1      preparation for this deposition?

2  A.  I did not.

3  Q.  Why not?

4  A.  I didn't think of it.

5  Q.  Did you understand that you had an affirmative

6      obligation to prepare yourself so that you could

7      testify as to the knowledge of everyone in

8      DIRECTV with respect to the topics on this Notice

9      of Deposition?

10         MR. LONSTEIN:  Objection to form,

11     argumentative.

12 A.  I did.

13 Q.  Did you do that?

14 A.  I think I did, to the best of my ability.

15 Q.  Can you tell me why you didn't contact someone in

16     supply chain to find out the information about

17     Number 12?

18         MR. LONSTEIN:  Objection to form.

19 A.  I didn't think about it.

20 Q.  Can you tell me why you didn't contact someone

21     who knows about paying Lonstein Offices to find

22     out information about Number 13?

23         MR. LONSTEIN:  Objection; misrepresents

24     the testimony that the witness gave.

25 A.  That would be somebody in our legal department.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

131

1  Q.  And did you contact someone in your legal

2      department to find out about the attorneys' fees

3      DIRECTV is seeking to recover and the agreements

4      that it has for incurring those attorneys' fees?

5          MR. LONSTEIN:  Objection to form to the

6      extent it calls for privilege information, also

7      misstates the evidence.  If you can answer the

8      question, go ahead.

9  A.  I did not get that information from John Green.

10 Q.  Did you try?

11         MR. LONSTEIN:  Objection to form.

12 A.  I did not.

13 Q.  Why not?

14 A.  I didn't think of it.

15 Q.  Let me direct your attention to Exhibit 5 one

16     more time, the customer agreement.  Now, does

17     DIRECTV --

18         MR. LONSTEIN:  Now, 5 is the document

19     you gave to Mr. Mader --

20         MR. OVERHAUSER:  Yes.

21         MR. LONSTEIN:  -- representing to be a

22     customer agreement copy?

23         MR. OVERHAUSER:  Yeah.

24 BY MR. OVERHAUSER:

25 Q.  Okay.  Let me just ask this generically.  How

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

132

```
 1        does DIRECTV authorize others to receive its pay

 2        TV electronic communications?

 3   A.   I don't understand the term "others."

 4   Q.   Okay.  How does DIRECTV authorize people to

 5        receive its pay TV electronic communications?

 6             MR. LONSTEIN:  Objection to form.

 7   A.   When a person, such as a dealer, communicates

 8        with DIRECTV and indicates that an account needs

 9        to be activated and these are the associated

10        set-top boxes with that account and this is the

11        proper account type and the programming that the

12        customer requests, we will activate it based on

13        some parameters, like credit scoring and the

14        like.  So we've done all of those things and then

15        we will activate it based on the reliance of a

16        sales channel dealer or somebody else in sales.

17   Q.   And by activating, you mean you're activating a

18        receiver, right?

19   A.   Or activating an account.

20   Q.   Okay.  And for the person to -- for the account

21        holder to get the programming, their receiver

22        needs to be activated, correct?

23   A.   Yes.

24   Q.   The same thing as their receiver needs to be

25        authorized, correct?
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

133

1   A.   Agree.

2   Q.   And once the receiver is authorized, people can

3        watch TV programming through that receiver,

4        right?

5             MR. LONSTEIN:   Object to the form of

6        the question.

7   A.   Correct.

8   Q.   What are DIRECTV's proprietary rights in the

9        communications that you allege that any defendant

10       has unlawfully received or intercepted?

11            MR. LONSTEIN:   Objection to the extent

12       it calls for a legal conclusion.   You can answer

13       the question.

14  A.   I don't know.

15  Q.   Prior to this deposition did you try to talk to

16       others at DIRECTV to find out the answer to that

17       question?

18  A.   I did not.

19  Q.   With regard to Exhibit 7, which are the two

20       letters from Lonstein Law Offices dated June 27,

21       2014, did DIRECTV approve these letters before

22       they were sent?

23            MR. LONSTEIN:   Object to form.

24  A.   I don't know.

25  Q.   Before this deposition did you take any efforts

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

134

```
 1        to try to find out whether DIRECTV approved those

 2        letters?

 3   A.   I did not.

 4             MR. LONSTEIN:  The same objection.

 5   A.   I did not.

 6   Q.   With regards to the decision that was made to

 7        de-activate the DIRECTV receivers at the Texas

 8        Corral restaurants, do you know whether that

 9        decision was made on June 27, 2014 or earlier?

10   A.   I don't.

11   Q.   Did you prior to this deposition try to find out

12        who was involved in that decision to de-activate

13        the receivers?

14             MR. LONSTEIN:  Objection; asked and

15        answered.

16   A.   I don't -- I don't know who did that.

17   Q.   Did you try to find out before coming here today

18        for your deposition?

19   A.   I did not.

20   Q.   When a DIRECTV receiver is de-authorized, does it

21        display any kind of a message?

22   A.   Yes.

23   Q.   What does that message say?

24             MR. LONSTEIN:  Objection to form.

25   A.   I don't specifically know.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

135

1    Q.   As best you can paraphrase it, what does it say?

2              MR. LONSTEIN:  Objection to form.

3    A.   You are not authorized to receive this

4         programming.

5    Q.   To the best of your knowledge, was a message like

6         that displayed at the Texas Corral?

7              MR. LONSTEIN:  Objection.

8    A.   I don't know.

9    Q.   During what time period has DIRECTV had a

10        business relationship with Craig Spencer?

11             MR. LONSTEIN:  Objection to form.

12   A.   I'm sorry, repeat that, please.

13   Q.   During what time period has DIRECTV had a

14        business relationship with Craig Spencer?

15   A.   I believe I saw a document that it indicated that

16        Craig had had some sort of business dealings with

17        DIRECTV since the '90s.  I don't specifically

18        know when.  But I believe it was in one of the

19        documents that he provided or that I saw.

20   Q.   Okay.  Have you investigated DIRECTV's own

21        records to find out what they state with regard

22        to the business relationship?

23   A.   I have not.

24             MR. LONSTEIN:  Objection; asked and

25        answered.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

 1  Q.   What is your understanding as to whether or not

 2       DIRECTV still has, as of today, a business

 3       relationship with Craig Spencer?

 4            MR. LONSTEIN:  Asked and answered.

 5  A.   I don't know.

 6  Q.   Have you undertaken any efforts in preparation

 7       for this deposition to find out about the

 8       business relationships between Craig Spencer and

 9       DIRECTV?

10  A.   I did.

11  Q.   And what were those efforts?

12  A.   I asked our counsel, John Green, whether we had a

13       current relationship with Craig Spencer.

14  Q.   And what is your understanding as to whether or

15       not DIRECTV has a current relationship with Craig

16       Spencer?

17  A.   I don't know.

18            MR. LONSTEIN:  Note my objection to

19       privilege communication.  You can answer.

20  A.   I don't know.

21            MR. LONSTEIN:  Paul, what's your

22       timeframe look like?

23            MR. OVERHAUSER:  Do you want to take a

24       break, lunch?

25            MR. LONSTEIN:  No.  Just maybe -- no,

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

137

```
 1      not lunch necessarily, just, you know, a

 2      walk-around break.  I mean, we've been going two

 3      straight hours.

 4                  THE COURT REPORTER:  I need to plug in

 5      my computer.

 6                  MR. LONSTEIN:  Yeah.

 7                  MR. OVERHAUSER:  Yeah, we can break for

 8      ten, five, ten minutes.

 9                  MR. LONSTEIN:  Sure.

10                  MR. OVERHAUSER:  Is that okay?

11                  (A brief recess is taken, after which

12           the following proceedings are had.)

13  BY MR. OVERHAUSER:

14  Q.   Do you know whether there were any communications

15       exchanged between DIRECTV or its counsel and

16       Craig Spencer relating to this suit between

17       June 1st, 2014 and March 1st of 2015?

18                  MR. LONSTEIN:  Objection to form to the

19       extent it calls for privilege information.  You

20       can answer.

21  A.   I don't know.

22  Q.   In preparing for this deposition did you

23       undertake to attempt to identify the dates and

24       content of all communications exchanged between

25       DIRECTV or its counsel and Craig Spencer that
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

138

```
1          relate to any defendant after June 1 of 2014?

2                    MR. LONSTEIN:  The same objection.

3    A.    I did not.

4    Q.    Why not?

5    A.    That's our legal department's function in my

6          opinion.

7    Q.    Is it your understanding that Craig Spencer

8          received residual payments for the installation

9          of the DIRECTV system at the Texas Corral?

10                   MR. LONSTEIN:  Objection to the form of

11         the question to the extent it misstates the

12         facts.  You can answer.

13   A.    I did see a document that indicated from Craig

14         that he was receiving residual payments at some

15         point.  I don't know when it started and when it

16         ended related to the account.

17   Q.    So there was a document that you saw that came

18         from Craig Spencer that said that?

19   A.    Yes.  I believe it was a declaration.

20   Q.    Before this deposition, did you undertake to

21         research any information of DIRECTV about the

22         dates and amounts of residual payments it made to

23         Craig Spencer?

24                   MR. LONSTEIN:  Objection to form.

25   A.    I did not.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

139

1   Q.   And why not?

2   A.   I didn't think of it.

3   Q.   Does DIRECTV allege that any of the defendants

4        entered into any agreement with DIRECTV?

5             MR. LONSTEIN:   Objection to form.

6   A.   I don't know.

7   Q.   Are you aware of any agreements between any

8        defendant and DIRECTV?

9             MS. DeVORE:   Are we talking about just

10       the federal action defendants or are we talking

11       about all defendants in all of the cases?

12            MR. LONSTEIN:   Objection to form.

13            THE WITNESS:   I don't know the

14       procedures there.   Are you supposed to answer the

15       question or I answer it?

16            MR. LONSTEIN:   You can answer it, you

17       can answer if you know the answer, sure.

18  A.   I don't know.

19  Q.   Before you came here for this deposition did you

20       attempt to educate yourself as to whether or not

21       there were any agreements between any defendant

22       and DIRECTV?

23            MR. LONSTEIN:   Objection to the form of

24       the question.

25  A.   No, I did not educate myself on that particular

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 141 of 158 PageID #:
1968

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

140

1      matter.

2   Q.   Who does DIRECTV claim to be the owner of any

3        satellite dish that was used to intercept

4        DIRECTV's signals in this case?

5             MR. LONSTEIN:  Objection to form.

6   A.   I don't specifically know who owns a satellite

7        dish that's in question in this case.

8   Q.   Who owns the DIRECTV receivers that were in the

9        Texas Corral restaurants?

10             MR. LONSTEIN:  Objection to form.

11  A.   DIRECTV typically owns receivers that are

12       attached to a residential account.

13  Q.   Does DIRECTV claim to own the receivers in the

14       Texas Corral restaurants that were allegedly used

15       to intercept DIRECTV signals?

16             MR. LONSTEIN:  Objection to form.

17  A.   In the event that there were receivers attached

18       to the residential account in question that we've

19       previously discussed, that they are residential

20       receivers, DIRECTV, through our lease agreement,

21       technically owns those receivers.

22  Q.   Does DIRECTV claim to have a lease agreement with

23       any defendant?

24  A.   I don't know.

25  Q.   In appearing for this deposition, is there

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

141

 1      anything that you did to try to find out who

 2      DIRECTV claims to be the owner of any satellite

 3      dish, receiver, or other equipment that DIRECTV

 4      claims to have been used by any defendant to

 5      intercept programming?

 6              MR. LONSTEIN:  Objection to form.

 7   A.  I don't think so.

 8   Q.  Can you tell me how, when, and where any

 9      communication that you allege, that DIRECTV

10      alleges has been improperly intercepted was

11      encrypted and decrypted?

12              MR. LONSTEIN:  Objection to form.

13   A.  I'm not clear on the question.  You --

14   Q.  Okay.

15   A.  -- said how, when, and where.  That's a lot

16      there --

17   Q.  Maybe --

18   A.  -- for me.

19   Q.  Maybe we can break this down.

20   A.  Okay.

21   Q.  I think you testified previously that you were

22      not aware of any specific TV programming that had

23      been intercepted by any defendant, correct?

24              MR. LONSTEIN:  Objection; asked and

25      answered.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

1    A.    Yes, I believe that's how I answered.

2    Q.    Okay.  So if you're not aware of any specific

3          programming, you wouldn't know whether, or when,

4          or how that programming was encrypted or

5          decrypted?

6    A.    Correct.

7                MR. LONSTEIN:  Objection.

8    BY MR. OVERHAUSER:

9    Q.    So you don't know.  Okay.

10               Are you aware of a meeting -- strike that.

11         Are you aware of a telephone conference call that

12         took place between any employees of DIRECTV

13         Lonstein Law Offices and Craig Spencer in either

14         March, April or May of this year?

15               MR. LONSTEIN:  Objection to form,

16         objection to attorney work product privilege, to

17         the extent it exists.  You can answer the

18         question.

19   A.    I don't recall.

20   Q.    Do you know whether such a phone conference

21         occurred?

22               MR. LONSTEIN:  The same objection.

23   A.    I don't know.

24   Q.    Just so I'm clear, in preparing for this

25         deposition did you do anything to educate

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

143

```
 1        yourself as to any communications that DIRECTV or

 2        its counsel exchanged with Craig Spencer during

 3        telephone conference calls between March 1st of

 4        2015 and June 4th of 2015?

 5             MR. LONSTEIN:  Objection to form.

 6   A.   I did not.

 7   Q.   Why not?

 8   A.   I didn't think of it.

 9   Q.   When was the first time that you saw the topics

10        on the Notice of Deposition in Exhibit 1?

11   A.   Probably a couple of weeks ago.  I don't remember

12        the specific date.

13   Q.   Can you tell me what efforts you took to prepare

14        yourself to address the topics on the Notice of

15        Deposition?

16             MR. LONSTEIN:  Objection to form.

17   A.   I met with counsel and they provided me a number

18        of documents for me to look at.

19   Q.   One of the documents was a declaration of Craig

20        Spencer, correct?

21             MR. LONSTEIN:  Objection to form.

22   A.   Yes.

23   Q.   And what other documents did you look at?

24   A.   The auditor affidavits, some legal documents that

25        I'm not -- I don't know what specific legal
```

**Kent Mader - December 15, 2015**
**DIRECTV, LLC v. Spina, et al.**

```
 1        documents there were, but it was some of the

 2        items that were produced in this case between the

 3        two law offices.

 4   Q.   Was it a process where they were telling you what

 5        information they wanted you to know, or was it a

 6        situation where you were going through the

 7        itemized list of topics and asking them for

 8        information?

 9             MR. LONSTEIN:  Objection to form to the

10        extent it's privilege.  You can answer.

11   A.   I walked through the documents that they wanted

12        me to review.

13   Q.   Did you go by each of the numbered points in the

14        topics for this deposition with them?

15   A.   I believe we did.

16   Q.   Are you sure that you did?

17   A.   No.

18   Q.   When you met with Mr. Green, was there any

19        discussion about phone conversations that he had

20        had with Craig Spencer?

21             MR. LONSTEIN:  Objection to form,

22        content.  You can answer yes or no.

23   A.   No.

24   Q.   Do you have an understanding as to whether or not

25        Chris -- I'm sorry, do you have an understanding
```

Kent Mader - Dec
DIRECTV, LLC v. Spina, et al.

145

```
 1        as to whether or not Craig Spencer was ever told

 2        that he had been sued by William and Victor

 3        Spina?

 4              MR. LONSTEIN:  Objection to form.

 5   A.   I believe I saw in one of the documents that

 6        there was an exchange between Craig Spencer and

 7        one of the Spinas, and I saw a text message that

 8        had said something to the effect of:  Did you sue

 9        me?

10   Q.   Have you had any discussions with DIRECTV

11        personnel about that issue?

12              MR. LONSTEIN:  Objection to form.

13   A.   Yes.

14   Q.   And who were those conversations with?

15   A.   On the DIRECTV side, with counsel, Chris, here

16        had -- I had asked him a clarifying question

17        about that, saying, was -- were those two

18        involved in a lawsuit with each other, and he had

19        indicated to me as no.

20   Q.   The complaints in this action suggest that

21        sometimes persons sign up for a residential

22        DIRECTV account but then move the equipment to a

23        business in order to circumvent payment of higher

24        subscription fees.

25              MR. LONSTEIN:  Objection to form.
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

146

1   BY MR. OVERHAUSER:

2   Q.   Does DIRECTV have any information that that

3        occurred in this case?

4   A.   I don't believe so.

5   Q.   I'm real close to being done.  This may be my

6        last question but I just want to make sure I got

7        it.

8        Do you have any -- do you know whether any

9        allegedly intercepted -- strike that.  Do you

10       know whether any communication that DIRECTV

11       alleges to have been intercepted was decrypted or

12       encrypted?

13              MR. LONSTEIN:   Objection to form.

14  A.   In our Exhibit 2 that we have reviewed together

15       earlier this morning, we talked about DIRECTV

16       being encrypted and decrypted in the cycle of

17       people viewing the programming.  So I would say

18       that in every instance that DIRECTV broadcasts

19       signal and people view it, there is an encryption

20       and a decryption that goes along with that.

21  Q.   And what equipment decrypts the signal?

22  A.   The DIRECTV receiver along with the smart card.

23  Q.   Okay.  So when the signal goes from the DIRECTV

24       receiver to the TV it would be decrypted?

25  A.   I don't know.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

147

```
 1   Q.   Well, if the receiver decrypts it, how could it
 2        -- does it re-encrypt it to send it to the TV?
 3             MR. LONSTEIN:  Objection to form.
 4   A.   I don't know.
 5   Q.   So you don't know for sure whether the signals
 6        that were allegedly intercepted were ever
 7        decrypted?
 8             MR. LONSTEIN:  Objection to form.
 9   A.   What I think I started earlier this morning was,
10        I don't know the interaction between the DIRECTV
11        receiver and all televisions in the universe
12        about whether there's an encryption or a
13        decryption or some version of both of those that
14        happens between the receiver and the TV.
15             If somebody is viewing television and it is
16        attached to an activated DIRECTV receiver, there
17        probably is a safe assumption that it has been
18        decrypted along the way for that person to view
19        the DIRECTV signal.
20   Q.   What payments has DIRECTV or its counsel made to
21        Kevin Karlak from January 1, 2014 to the present?
22             MR. LONSTEIN:  Objection to form,
23        objection on a privilege basis.  You can answer.
24   A.   I don't know.
25   Q.   Before coming here for this deposition, did you
```

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 149 of 158 PageID #:
1968

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

148

1     undertake to try to educate yourself on what

2     payments DIRECTV or its counsel made to Kevin

3     Karlak from January 1, 2014 to the present?

4               MR. LONSTEIN:  The same objection.

5   A.  I did not.

6   Q.  And why not?

7   A.  I didn't think to do so.

8   Q.  What damages does DIRECTV seek to recover in this

9       case?

10              MR. LONSTEIN:  Objection; asked and

11      answered.  If you know.

12  A.  Based on my best ability to read the complaint,

13      it's the damages that are set forth in the

14      complaint.

15  Q.  Okay.  And is DIRECTV seeking to recover damages

16      to its reputation from the activities of the

17      defendants?

18              MR. LONSTEIN:  Objection to form.

19  A.  Could you point me to the correct document where

20      that might be asserted?

21  Q.  Well, if we look at Exhibit 3 and flip to page

22      Number 8, paragraph 28 --

23  A.  Okay.

24  Q.  -- it mentions DIRECTV's goodwill and reputation

25      has been -- have been usurped.  Do you see that?

Case 1:15-cv-00104-JMS-TAB   Document 137-1   Filed 12/22/16   Page 150 of 158 PageID #:
1063

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

149

1   A.   Yes.

2   Q.   So is DIRECTV trying to recover damages to its

3        goodwill and reputation?

4              MR. LONSTEIN:   Objection; it calls for

5        a legal conclusion.  You can ask if you know --

6        answer it if you know.

7   A.   This says that DIRECTV's goodwill and reputation

8        have been asurped --

9              MR. LONSTEIN:   Usurped.

10  A.   Usurped, sorry.  And I don't see specifically

11       here where we're trying to recover for that

12       goodwill or reputation in this paragraph here.

13  Q.   Okay.  But if we go back to page 11 --

14  A.   Okay.

15  Q.   -- subsection C and D, it does say that DIRECTV

16       is trying to recover actual damages, right?

17             MR. LONSTEIN:   Objection to the extent

18       the documents speaks for itself.  You can answer.

19  A.   It says here:  DIRECTV requests, as an

20       alternative, judgment for actual damages, plus

21       damages equal to any profits attributable to

22       Defendants' violations of 18 U.S.C. 2511.

23  Q.   So if part of DIRECTV's actual damages include

24       damages to its reputation, it's trying to recover

25       them in this lawsuit; would you agree?

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

150

```
 1                    MR. LONSTEIN:  Objection to the form of
 2          the question.
 3                    MR. SMITH:  I'm also going to object
 4          because that misstates what's requested in
 5          prayer.
 6                    MS. DeVORE:  I join in the objection.
 7     A.   I don't know.  I'm not an attorney.
 8     Q.   In preparation for this deposition, did you
 9          endeavor to educate yourself as to the damages
10          DIRECTV is seeking to recover?
11                    MR. LONSTEIN:  Objection to the form.
12     A.   No.
13     Q.   Well, why not?
14                    MR. LONSTEIN:  The same objection.
15     A.   I didn't think so -- to do so, and to me that's
16          our attorneys' job responsibilities.
17     Q.   Well, you're DIRECTV's corporate representative.
18                    MR. LONSTEIN:  Objection;
19          argumentative.
20     Q.   Right?
21     A.   That is correct.
22                    MR. OVERHAUSER:  What are we on?
23                    (Defendants' Exhibit No. 10 was marked
24          for identification.)
25
```

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

1   BY MR. OVERHAUSER:

2   Q.    Let me hand you what's been marked as Exhibit

3         No. 10, which is a DIRECTV press release dated

4         December 28, 2006.  It says the contact person is

5         Jade Ekstedt at the bottom.  Do you know that

6         person?

7   A.    I do.

8   Q.    Okay.  Were you familiar with this announcement

9         that DIRECTV programming would be available

10        through the Denver International Airport?

11              MR. LONSTEIN:  Are you asking if he's

12        familiar with the document or the contents of the

13        document?

14              MR. OVERHAUSER:  Neither.

15              MR. LONSTEIN:  Neither?  Objection to

16        the question.  There's no question then.

17              MR. OVERHAUSER:  Could you repeat the

18        question, please.

19              (The requested material was read back

20        by the court reporter.)

21  A.    I was not.

22  Q.    Okay.  Do you know for a fact whether or not

23        DIRECTV programming is available through the

24        Denver International Airport?

25  A.    I do not.

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

152

1  Q.  Was DIRECTV requested to produce in this

2      litigation the agreement pursuant to which

3      DIRECTV programming would be made available at

4      the Denver International Airport?

5            MR. LONSTEIN:  Objection to form.

6  A.  I don't know.

7  Q.  Would you agree that the Denver International

8      Airport is a public place?

9            MR. LONSTEIN:  Objection to form.

10 A.  Yes.

11 Q.  And the first sentence here says that it has more

12     than 900,000 travelers expected to pass through

13     in the holiday season of December of 2006.  Do

14     you see that?

15 A.  I do.

16 Q.  So would any of them have been able to see

17     DIRECTV programming at the airport?

18           MR. LONSTEIN:  Objection to form.

19 A.  It looks like they can, based on this document.

20     I don't have any actual witness of whether they

21     do or don't.

22 Q.  Is it DIRECTV's position that travelers passing

23     through Denver International Airport that see

24     DIRECTV programming are authorized to see that

25     programming or unauthorized to see the

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

153

1      programming?

2             MR. LONSTEIN:  Objection to form.  If

3      you know.

4  A.   I don't know.

5  Q.   You don't know.  So it's possible that all of

6      those travelers could be intercepting DIRECTV

7      signals when they see the programming at the

8      airport?

9             MR. LONSTEIN:  Objection to form.

10  A.   No.  I just -- as I indicated before, I get

11      confused about the word "authorized."  I would

12      say that they're legitimate viewers, based on

13      what this document says, is we have some sort of

14      agreement between DIRECTV and the Denver

15      International Airport and their audience that

16      passes through that airport.

17  Q.   And their audience is the public, right?

18  A.   It's the public that has travel documents that

19      allow them to pass through the Denver

20      International Airport.

21  Q.   And other members of the public, right?

22             MR. LONSTEIN:  Objection to form.

23             MR. OVERHAUSER:  I have no further

24      questions at this time.

25             MR. LONSTEIN:  Counsel, I defer to your

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

154

 1     local wisdom, knowledge.

 2              MR. SMITH:  Well, given the fact that

 3     the attorney who represents DIRECTV in my lawsuit

 4     is not present, I'm a little uncomfortable asking

 5     questions of this witness.  So I would suggest

 6     that if we need to ask questions of this witness

 7     that we will contact you and hopefully you remake

 8     him available in our lawsuit, or the lawyer who

 9     is representing DIRECTV in our lawsuit will agree

10     to make him available.

11              MR. LONSTEIN:  I certainly think that

12     that's a sound position because it's beyond my

13     issues in the federal court case anyway, and

14     unfortunately, the circumstances were a little

15     bit short notice so we can't do that.

16          From the perspective of Plaintiff, we don't

17     have any redirect questions of Mr. Mader.  So

18     thank you very much --

19              MS. DeVORE:  Owners --

20              MR. LONSTEIN:  -- at this time.

21              MS. DeVORE:  I'm sorry.  Owners would

22     just join in with the same circumstances as the

23     state lawsuit --

24              MR. LONSTEIN:  And --

25              MS. DeVORE:  -- as stated.

155

1          MR. LONSTEIN:  -- I just want to put on

2     the record that to the extent that any

3     information was mentioned in this deposition or

4     any documents shared, that we not disseminate it

5     to any third parties until such time as the

6     appropriate protective orders are in place for

7     all parties to the litigation.

8          MR. SMITH:  That is agreeable with us.

9          MR. OVERHAUSER:  For the record --

10          MS. DeVORE:  And with us.

11          MR. OVERHAUSER:  -- do you claim that

12     any documents that have been made an exhibit are

13     confidential?

14          MR. LONSTEIN:  I don't know.  And I

15     don't know whether testimony -- there are legal

16     considerations I can't answer to at this point,

17     so I don't want to waive any possible rights or

18     privileges that my client may have with respect

19     to any testimony or documents.  I think the sound

20     thing is to make sure that's in place and that

21     we're all comfortable, including your clients.

22          MR. OVERHAUSER:  Thank you.

23          MR. LONSTEIN:  Thank you very much.

24          (Proceedings conclude at 1:07 p.m.)

25

Kent Mader - December 15, 2015
DIRECTV, LLC v. Spina, et al.

156

1        AND FURTHER THE WITNESS SAITH NOT.

2

3                         
                                    _____
4                                   KENT MADER

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

157

```
STATE OF INDIANA     )
                     )
COUNTY OF MARION     )
```

                    CERTIFICATE OF COURT REPORTER

       I, Tracie L. Reemer, a Notary Public at large
in and for the State of Indiana, do hereby
certify that KENT MADER, was by me first duly
sworn to tell the truth in the above entitled
cause of action; that the foregoing deposition
was taken on behalf of the Defendants at the
dates and times mentioned herein.

       I further certify that said deposition was
taken down in shorthand notes and afterwards
reduced to typewriting by me and that the
typewritten transcript is a true and complete
record of the testimony given by said witness.

       I do further certify that I am a
disinterested person in this cause of action;
that I am not a relative or attorney of either
party or otherwise interested in the event of
this action, and I am not in the employ of the
attorneys for either party.

       IN WITNESS WHEREOF, I have hereunto set my
hand and affixed my notarial seal this ___11th___ day
of ____January____, 2016.


                         _____
                              Tracie L. Reemer
                              Notary Public


My Commission Expires:
December 2, 2016

County of Residence:
Marion County