UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIRECTV, LLC,            )  |  |
|     *Plaintiff*,            )  |  |
|                 )  |  |
|     *vs*.            )  | 1:15-cv-00104-JMS-TAB |
|                 )  |  |
| VICTOR A. SPINA, ET AL.,            )  |  |
|     *Defendants.*            )  |  |

## **ORDER**

    This litigation involves claims by Plaintiff DirecTV, LLC ("DirecTV") that Defendants Victor Spina, William Spina, and Martinsville Corral, Inc. ("MCI") received and displayed DirecTV programming in two commercial establishments without proper authorization, through a residential account associated with Victor Spina. DirecTV alleged claims against MCI and the Spinas for violations of the Federal Communications Act and the Electronic Communications Privacy Act. On August 30, 2016, the Court denied a Motion for Sanctions filed by Defendants, granted DirecTV's Motion for Summary Judgment to the extent that it found that MCI is liable as a matter of law for violating 47 U.S.C. § 605, denied in part DirecTV's Motion for Summary Judgment to the extent that it found that genuine issues of material fact precluded summary judgment on DirecTV's vicarious liability claim against the Spinas under § 605, and denied in its entirety Defendants' Cross-Motion for Summary Judgment. [Filing No. 115.]

    On September 29, 2016, Defendants filed a Motion for Reconsideration of Ruling on Summary Judgment Motion. [Filing No. 119.] The motion is now fully briefed, and ripe for the Court's decision.

1

# I.
# BACKGROUND[1]

### A. DirecTV's Business

DirecTV is a direct broadcast satellite service, offering more than 225 channels of television and other programming to more than 20 million customers throughout the United States. [Filing No. 79-9 at 3.] The satellite programming DirecTV offers includes major cable networks, local stations, studio movies, special events programming, and a variety of sports and other special interest programming. [Filing No. 79-9 at 3.] DirecTV offers its television programming to residential and business customers on a subscription and pay-per-view basis only, and in order to receive the programming, each customer must obtain DirecTV satellite hardware which includes a small satellite dish and a DirecTV integrated receiver/decoder with a DirecTV Access Card. [Filing No. 79-9 at 3.] Each customer must also establish an account with DirecTV. [Filing No. 79-9 at 3.] DirecTV sells and distributes the satellite equipment necessary to receive DirecTV programming and, upon activation of the Access Card by DirecTV, the customer can receive and view the channels to which the customer has subscribed. [Filing No. 79-9 at 3.]

DirecTV charges subscription fees for both residential and commercial programming, and commercial programming subscriptions are generally more expensive than residential subscriptions. [Filing No. 79-9 at 4.] Residential and commercial subscribers use the same satellite receiving equipment, however, which can lead to commercial establishments moving satellite receiving equipment from a residence to a commercial establishment in order to receive commercial programming at the lower residential programming rate. [Filing No. 79-9 at 4.] In order to combat commercial misuse of its programming signals, DirecTV uses investigators and auditors who help

---

[1] These background facts are taken largely from the Court's August 30, 2016 Order. [Filing No. 115.]

to identify commercial establishments that are unlawfully exhibiting DirecTV residential programming in a commercial setting. [Filing No. 79-9 at 4-5.]

### B. The Spinas' Involvement With MCI

Defendants Victor Spina and William Spina are brothers and co-owners of MCI. [Filing No. 105-2 at 1.] Victor is the President of MCI, and William is the Vice President or Secretary. [Filing No. 79-20 at 2-3.] The only shareholders in MCI are Victor and William Spina. [Filing No. 79-20 at 3.] MCI is a franchisee of Texas Corral. [Filing No. 79-20 at 5.]

In 2009, MCI opened Martinsville Texas Corral, a Texas Corral franchise and commercial bar/restaurant located at 610 Birk Road in Martinsville, Indiana. [Filing No. 105-1 at 1.] MCI opened a second Texas Corral franchise, Shelbyville Texas Corral, in 2011. [Filing No. 105-1 at 2.] Shelbyville Texas Corral was located at 2103 Intelliplex Drive in Shelbyville, Indiana. [Filing No. 105-1 at 2.] Both Martinsville Texas Corral and Shelbyville Texas Corral (collectively, the "Restaurants") were located in buildings that had previously been restaurants. [Filing No. 105-1 at 1-2.] Neither Victor nor William managed the Restaurants. [Filing No. 105-1 at 5.] Rather, each restaurant has its own general manager. [Filing No. 105-1 at 5.] When MCI hired managers for the Restaurants, William made the hiring decisions. [Filing No. 79-20 at 7.]

### C. DirecTV Installation at the Restaurants

When MCI opened the Martinsville Texas Corral in 2009, it wanted televisions in the restaurant so William contacted DirecTV's local office. [Filing No. 105-1 at 1.] DirecTV's representative at the local office was Craig Spencer, who installed DirecTV through his business, Superior. [Filing No. 105-1 at 1.] Superior is or was an authorized agent for DirecTV. [Filing No. 105-6 at 5-6.] Mr. Spencer and the Spinas went to school together, and have known each other for at least thirty years. [Filing No. 105-6 at 8; Filing No. 105-6 at 11.] Mr. Spencer agreed to outfit

3

Martinsville Texas Corral with a DirecTV antenna and DirecTV receivers, and to set up a DirecTV subscription. [Filing No. 105-1 at 1.] Superior, through a subcontractor, completed the installation at Martinsville Texas Corral before the restaurant opened for business, and set up a subscription service. [Filing No. 105-1 at 1.] Mr. Spencer told William that "the subscription package he signed us up for was proper and appropriate for the restaurant, and that we were authorized to receive and display to the public the DirecTV signals at the restaurant…." [Filing No. 105-1 at 1.]

In 2011, when MCI opened the Shelbyville Texas Corral, it again contacted Mr. Spencer to have DirecTV installed at the restaurant. [Filing No. 105-1 at 2.] Again, Superior had a subcontractor go to Shelbyville Texas Corral to install the DirecTV receivers before the restaurant opened for business. [Filing No. 105-1 at 2.]

After the installations at the Restaurants were complete, MCI was using ten DirecTV receivers total: seven at Martinsville Texas Corral (six used for television, and one for music only); and three at Shelbyville Texas Corral (two used for television, and one for music only). [Filing No. 105-1 at 2.]

### D. DirecTV Investigates Usage of DirecTV Programming at the Restaurants and Discontinues Service

In mid-2014, DirecTV engaged the services of an auditor, Kevin Karlak, to determine whether DirecTV satellite programming was properly being displayed at the Restaurants. [Filing No. 79-9 at 4-5.] On June 3, 2014, Mr. Karlak visited Martinsville Texas Corral and observed six television sets, with four of them exhibiting DirecTV satellite programming for public viewing. [Filing No. 79-9 at 5.] The four televisions were displaying DirecTV channel 212 – NFL Network programming – and Mr. Karlak also observed a DirecTV receiver behind a television, a DirecTV remote control, a DirecTV information banner or black banner at the top of the screen, and a DirecTV receiver with identification number 029417397394. [Filing No. 79-9 at 5.] At the time of

4

Mr. Karlak's visit, there were other individuals (either customers or employees) in the restaurant. [Filing No. 79-3 at 00:37 seconds.][2]

On June 4, 2014, Mr. Karlak visited Shelbyville Texas Corral and observed two television sets, with one of them displaying DirecTV satellite programming for public viewing. [Filing No. 79-9 at 5.] The television was displaying DirecTV channel 206 – ESPN programming – and Mr. Karlak also observed a DirecTV receiver under a television, a partial DirecTV receiver with identification number 247171, and the black DirecTV information banner at the top of the screen. [Filing No. 79-9 at 5.] At the time of Mr. Karlak's visit, there were other individuals (either customers or employees) in the restaurant. [Filing No. 79-6 at 00:24 and 00:33 seconds.][3]

When DirecTV received the auditor's reports, it searched its records to determine whether the Restaurants had DirecTV commercial accounts and learned that they did not. [Filing No. 79-9 at 6.] DirecTV determined, however, that the receivers used in the Restaurants were associated with DirecTV residential account number 045448353, which is under the name Victor Spina for service at a residential address located at 785 East Timber Drive in Martinsville. [Filing No. 79-9 at 6.] Account number 045448353 was purchased at a residential rate. [Filing No. 79-9 at 6.]

The invoices that DirecTV provided for account number 045448353 were addressed to Victor Spina, "For Service at: 785 E. Timber Dr. Martinsville, IN 46151-8391." [Filing No. 105-1 at 3.] The invoices do not indicate whether the account is "residential" or "commercial" and, for the June 21, 2014 invoice, indicated that service was for ten televisions and totaled approximately $162 for monthly service.

DirecTV's billing records also indicate that account number 045448353 was in Victor

---

[2] Filing No. 79-3 is a video disc that was manually filed with the Court.
[3] Filing No. 79-6 is a video disc that was manually filed with the Court.

Spina's name, and list the address as 785 E. Timber Dr., Martinsville, IN. [Filing No. 79-8 at 2.] DirecTV's records list the following locations for the DirecTV receivers that are associated with account number 045448353: "living rm, office, kids rm, master bed, garage, basement, guest bed, kids rm, garage, and loft." [Filing No. 79-8 at 11-16.] Neither the invoices nor DirecTV's billing records list MCI as the account holder, or list the addresses of either of the Restaurants. [*See* Filing No. 105-1 at 3; Filing No. 79-8.]

On June 30, 2014, DirecTV discontinued programming service for account number 045448353. [Filing No. 79-9 at 6.]

**E. The Lawsuit**

DirecTV initiated this action on January 26, 2015, [Filing No. 1],[4] and filed the operative First Amended Complaint on February 6, 2015, [Filing No. 7]. In the Amended Complaint, DirecTV alleges claims against MCI and the Spinas for: (1) violations of the Federal Communications Act, 47 U.S.C. § 605(e)(3)(C); and (2) violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511.[5] [Filing No. 7 at 7-9.] DirecTV seeks a declaration that Defendants violated 47 U.S.C. § 605 and 18 U.S.C. § 2511; an injunction preventing Defendants from interfering with DirecTV's proprietary rights, intercepting, receiving, divulging, or displaying DirecTV's satellite programming without prior written consent of DirecTV, and further violations; statutory or actual damages; punitive damages; and attorneys' fees. [Filing No. 7 at 11.]

---

[4] DirecTV originally filed this lawsuit only as to the auditor's investigation at Shelbyville Texas Corral, and filed a separate lawsuit, 1:15-cv-00105-TWP-TAB, related to the auditor's investigation at Martinsville Texas Corral. The two lawsuits were consolidated under this case number on July 6, 2015. [Filing No. 33.]

[5] DirecTV also asserted a claim for civil conversion in the Amended Complaint, but the Court adopted the Magistrate Judge's Report and Recommendation which recommended granting Defendants' Motion to Dismiss as it related to the conversion claim. [Filing No. 43.]

### F. The Court's Order on the Cross-Motions for Summary Judgment

On August 30, 2016, the Court issued an Order which set forth the following rulings:[6]

- The Court granted in part DirecTV's Motion for Summary Judgment to the extent that it found that MCI is liable as a matter of law for violating § 605;

- The Court denied in part DirecTV's Motion for Summary Judgment to the extent that it found that genuine issues of material facts precluded summary judgment on DirecTV's vicarious liability claim against Victor Spina and William Spina under § 605; and

- The Court denied in its entirety Defendants' Cross-Motion for Summary Judgment, finding that:

  o MCI is liable as a matter of law for violating § 605;

  o Genuine issues of material fact preclude summary judgment on DirecTV's vicarious liability claim against Victor Spina and William Spina under § 605;

  o Genuine issues of material fact preclude summary judgment on DirecTV's claim against all Defendants for liability under § 2511; and

  o DirecTV does not assert a separate claim for certain types of damages and it is premature to rule on the propriety of those damages at the summary judgment stage.

[Filing No. 115.] Defendants filed the pending Motion for Reconsideration on September 29, 2016. [Filing No. 119.]

## II.
### STANDARD OF REVIEW

"Motions to reconsider 'are not replays of the main event.'" *Dominguez v. Lynch*, 612 F. App'x 388, 390 (7th Cir. 2015) (quoting *Khan v. Holder*, 766 F.3d 689, 696 (7th Cir. 2014)). A

---

[6] In the August 30, 2016 Order, the Court also denied a Motion for Sanctions filed by Defendants, finding that neither DirecTV nor its counsel had engaged in any sanctionable conduct relating to the second deposition of DirecTV's Rule 30(b)(6) witness. [Filing No. 115 at 2-14.] The Motion for Reconsideration does not relate to this portion of the Court's Order, but is focused only on certain aspects of the Court's ruling relating to the Cross-Motions for Summary Judgment.

7

motion to reconsider is only appropriate where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). Because such problems "rarely arise," a motion to reconsider "should be equally rare." *Id.* at 1191. The Court will analyze the pending motion pursuant to this standard.[7]

### III.
### DISCUSSION

Defendants raise two main arguments in support of their Motion for Reconsideration: (1) that the Court committed manifest error by granting summary judgment in favor of DirecTV on its claim under 47 U.S.C. § 605, because there was a genuine issue of fact regarding whether DirecTV authorized MCI's reception and/or display of DirecTV programming; and (2) that the Court committed manifest error in finding that DirecTV was "aggrieved" for purposes of its § 605 claim, because DirecTV did not designate evidence to support that finding. [Filing No. 119 at 3-7.] DirecTV disputes Defendants' contentions, and argues that Defendants' Motion for Reconsideration is untimely. The Court will consider the timeliness issue first, and will then consider Defendants' arguments.

---

[7] Plaintiffs move to alter or amend the judgment under Fed. R. Civ. P. 59. [*See* Filing No. 84 at 3.] Rule 59(e) allows a party to move the Court for reconsideration of a judgment within 28 days following the entry of judgment, and encompasses reconsideration of matters decided on the merits. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). Because no judgment has entered in this case, Rule 59 is not applicable.

### A. Timeliness of Motion for Reconsideration

As a preliminary matter, the Court addresses DirecTV's argument that Defendants' Motion for Reconsideration is untimely. Specifically, DirecTV argues that Fed. R. Civ. P. 59 requires that a motion to alter or amend a judgment be filed "no later than 28 days after the entry of the judgment." [Filing No. 121 at 4.] Here, the Court entered its Order on the Cross-Motions for Summary Judgment on August 30, 2016, [Filing No. 115], and Defendants filed their Motion for Reconsideration on September 29, 2016, [Filing No. 119] – more than 28 days later. Accordingly, DirecTV argues, Defendants' Motion for Reconsideration was untimely.

Defendants respond that the Court never entered a judgment, and therefore the 28-period never began to run. [Filing No. 125 at 5.] They also contend that Fed. R. Civ. P. 60 allows a motion for relief from judgment to be filed "within a reasonable time," but "no more than a year after the entry of the judgment or order or the date of the proceeding." [Filing No. 125 at 5.]

Defendants are correct that the 28-day deadline in Rule 59 upon which DirecTV relies only begins to run once the Court enters judgment. Here, no judgment has been entered. Thus, Defendants' Motion for Reconsideration was timely.

### B. The Court's Finding That MCI Was Not "Authorized"

In granting summary judgment in favor of DirecTV on its § 605 claim, the Court found that "the undisputed facts indicate that MCI did not have a commercial account with DirecTV, let alone any type of account…. Accordingly, MCI was not 'authorized' to receive DirecTV programming at the Restaurants through account number 045448353 – the only account Defendants rely on to support their argument." [Filing No. 115 at 32.] The Court further found that MCI was not authorized to divulge DirecTV programming, stating that "[o]ther courts that have considered this issue in a similar factual setting, where the programming was obtained through a residential

9

account and then divulged in a commercial setting, have found that a violation of § 605 occurred regardless of the defendant's intent or knowledge." [Filing No. 115 at 34.]  It noted that "what Mr. Spencer or the subcontractor who installed the DirecTV receivers at the Restaurants told MCI or the Spinas is irrelevant.  It is undisputed that MCI did not have a commercial account – or any account – with DirecTV, and that MCI was displaying DirecTV programming at the two restaurants on June 3 and June 4, 2014.  Accordingly, MCI is liable as a matter of law under § 605." [Filing No. 115 at 35-36.]

In support of their Motion for Reconsideration, Defendants argue that because they presented evidence that Mr. Spencer told William Spina that "the subscription package he signed us up for was proper and appropriate for the restaurant, and that we were authorized to receive and display to the public the DirecTV signals at the restaurant," MCI was "authorized to receive and display to the public the DirecTV signals at the restaurant." [Filing No. 119 at 3.]  Defendants contend that "it was manifest error for the Court to conclude that such authorization was not 'disputed,' and to make the 'finding' that MCI was not so authorized." [Filing No. 119 at 4.]

In response, DirecTV argues that what Mr. Spencer told William Spina is irrelevant, and that the Court correctly found that MCI's receipt and display of DirecTV programming was unauthorized because it is undisputed that Defendants did not have a commercial account with DirecTV.  [Filing No. 121 at 7-8.]

On reply, Defendants argue that the Court's summary judgment ruling is "internally inconsistent" because the Court found that "DirecTV's agent Craig Spencer was authorized by DirecTV to install the equipment in MCI's restaurant and to set up the billing account." [Filing No. 125 at 5.]  Defendants assert that § 605 does not predicate liability on the absence of an account, but

rather on "'divulging' a communication without being 'authorized' to do so." [Filing No. 125 at 7.]

The Court declines to reconsider its finding that MCI was not authorized to receive or display DirecTV programming. Defendants largely reiterate arguments made in connection with the Cross-Motions for Summary Judgment, and those rehashed arguments are not proper grounds for reconsideration. *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion"). Indeed, in the summary judgment Order the Court specifically addressed Defendants' argument that DirecTV representatives (*i.e.*, Mr. Spencer) told them that their receipt and display of DirecTV programming was authorized. The Court found that the undisputed evidence showed that MCI did not have a commercial account with DirecTV, and that what Mr. Spencer or the subcontractor who installed the DirecTV receivers at the Restaurants told MCI or the Spinas is irrelevant to the issue of whether MCI was authorized to receive and display DirecTV programming. [Filing No. 115 at 32-35.] The Court cited numerous cases to support its conclusion. [Filing No. 115 at 34-35.] Defendants appear to equate actual authorization with what they were told by Mr. Spencer. But § 605 "essentially provides for strict liability," *Joe Hand Promotions, Inc. v. Zani*, 2013 WL 5526524, *2 (N.D. Ill. 2013), and even if Mr. Spencer told Defendants that MCI was authorized to receive and display DirecTV programming in the Restaurants, it is undisputed that it was not – MCI did not have a commercial account with DirecTV. For the reasons relied upon in its earlier ruling, the Court declines to reconsider its finding that MCI was not authorized to receive or display DirecTV programming.

### C. The Court's Finding That DirecTV is an "Aggrieved" Party

In its August 30, 2016 Order, the Court found that DirecTV had shown it was a "person aggrieved" under § 605, relying on the Affidavit of Kent Mader (DirecTV's Vice President of Risk Management) which summarized the nature of DirecTV's programming (*e.g.*, that customers must pay to view the programming) and stated that "[t]he unauthorized use of DIRECTV programming through fraudulent conduct has a negative effect upon DIRECTV and lawful commercial customers. Furthermore, commercial misappropriation of DIRECTV residential programming results in significant loss of revenue and places legitimate commercial subscribers at a disadvantage by having to compete with businesses like Martinsville Texas Corral and Shelbyville Texas Corral who unlawfully acquire DIRECTV Satellite Programming without paying the commercial rates." [Filing No. 115 at 29 (quoting Filing No. 79-9 at 7).] The Court also cited two cases from within the Seventh Circuit holding that DirecTV was a "person aggrieved" under § 605. [Filing No. 115 at 29.]

In support of their motion, Defendants argue that DirecTV did not designate any evidence that it was aggrieved, and did not cite specifically to the Mader Affidavit. [Filing No. 119 at 4-5.] Defendants assert that the Court stated it would only "set forth and consider facts which are supported by [citations to admissible, record evidence]," so should not consider paragraph 7 of the Mader Affidavit since DirecTV did not specifically cite that paragraph.[8] [Filing No. 119 at 5.] Defendants also argue that the Court mischaracterized the Mader Affidavit, and criticizes the

---

[8] Defendants repeatedly refer to the Court's reliance on paragraph 7 of the Mader Affidavit. [*See, e.g.*, Filing No. 119 at 5 (Defendants stating that "[t]his Court 'found' that DirecTV was 'aggrieved' based on ¶ 7 of the affidavit of DirecTV's Kent Mader").] But the Court did not rely on paragraph 7 – it relied on paragraph 15, which appears on ECF page 7 of the Mader Affidavit.

Court's citation to other cases because they "do not comprise summary judgment evidence." [Filing No. 119 at 6-7.] Defendants contend that DirecTV is not aggrieved because Defendants paid their DirecTV invoices, and also argue that they did not address the Mader Affidavit because "DirecTV never designated as summary judgment evidence the part of the Mader [Affidavit] that the Court relied upon in finding that DirecTV was 'aggrieved.'" [Filing No. 119 at 6-7.]

DirecTV responds by arguing that "[t]he proposition that DIRECTV is not an aggrieved party is absurd," and that "DIRECTV's proprietary rights are at stake every time an unauthorized user displays DIRECTV programming." [Filing No. 121 at 9.] It contends that neither the local rules nor the federal rules prohibit the Court from looking at the record as a whole in evaluating a summary judgment motion. [Filing No. 121 at 9.] DirecTV also argues that the Court properly relied on other cases to support its finding that DirecTV was an aggrieved party. [Filing No. 121 at 11.] Finally, DirecTV asserts that Defendants already argued in connection with the Cross-Motions for Summary Judgment that they had paid their DirecTV invoices, and that the only invoices Defendants were paying related to a residential account in Victor Spina's name. [Filing No. 121 at 12.]

On reply, Defendants argue that they were "prejudiced by the Court's reliance on [paragraph] 7 of the affidavit of DirecTV's Kent Mader, as [they] never had a chance to challenge or contravene this uncited evidence." [Filing No. 125 at 10.] They also argue that paragraph 7 does not establish that DirecTV was aggrieved by MCI. [Filing No. 125 at 11.]

DirecTV argued in response to Defendants' Motion for Summary Judgment that it was an aggrieved party because it was denied subscription fees for commercial use of its programming, its sales revenues have been reduced through Defendants' unfair competition, and its proprietary rights in its programming have been impaired. [Filing No. 112 at 33.] The Court noted DirecTV's

13

arguments in its August 30, 2016 Order, and cited to paragraph 15 of the Mader Affidavit as support for those arguments. DirecTV submitted the Mader Affidavit in support of its Motion for Summary Judgment, and did not need to cite specifically to paragraph 15 in order for the Court to consider that paragraph. The Court's statement that it would only set forth and consider facts supported by citations to the record was meant to address the all-too-common situation where a party asserts a fact that has no support whatsoever in the record. Here, DirecTV's arguments regarding whether it was an aggrieved party were supported by the record evidence. While it is true that the Court need not "scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before [it]," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003), the Court also need not ignore record evidence simply because a party does not specifically cite to it. DirecTV relied upon the Mader Affidavit for other arguments in support of its Motion for Summary Judgment, and Defendants sought to exclude the Mader Affidavit from the Court's consideration. The existence of the Mader Affidavit, and its contents, was no surprise to Defendants, and any argument that they did not have an opportunity to dispute its contents is disingenuous.

Further, there is nothing erroneous about the Court's citation to other cases where courts found that DirecTV was an aggrieved party for purposes of § 605. Of course these cases do not constitute "summary judgment evidence," but they are instructive as they indicate that DirecTV's loss of revenue when Defendants paid for a residential account rather than a commercial account – as was the case here – is enough to make DirecTV an aggrieved party under § 605. The Court is perplexed as to why Defendants would argue that citation to factually similar cases is a manifest error.

Finally, Defendants already argued in connection with the Cross-Motions for Summary Judgment that DirecTV is not aggrieved because Defendants paid their DirecTV invoices. The Court considered and rejected this argument in its summary judgment Order, and will not consider it again here. The Court declines to reconsider its finding that DirecTV is an aggrieved party for purposes of its § 605 claim.

### D. Defendants' Submission of American Bar Association Article and Affidavits

The Court briefly addresses Defendants' submission of an American Bar Association article entitled "Who's the Pirate," and several affidavits from other lawsuits, with their reply brief in support of their Motion for Reconsideration. [*See* Filing No. 125-1; Filing No. 125-2; Filing No. 125-3; Filing No. 125-4; Filing No. 125-5.] Defendants contend that the article is "newly-discovered evidence that DirecTV's installers have repeatedly set up commercial businesses with 'residential' accounts," and that the affidavits – which were allegedly submitted in a class action against DirecTV – show that "DirecTV's installer installed the equipment in a commercial establishment and created a residential account without the knowledge of the customer." [Filing No. 125 at 2-3.]

The Court finds that the article and affidavits have no relevance to this case, and to the Court's findings on summary judgment. What DirecTV may have done while interacting with other individuals or businesses has no bearing on what happened in this case, and the Court declines to consider the article or the additional affidavits.

### IV.
#### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Reconsideration, [Filing No. 119].

Date: 1/4/2017

*[Signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**